# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| Aaron L. Espenscheid,<br>Gary Idler, and Ricardo Bolano,<br>on behalf of themselves and a<br>class of employees and/or<br>former employees similarly situated,<br>Plaintiffs,<br><br>v.<br><br>DirectSat USA, LLC and UniTek USA,<br>Defendants. | : : : : : : : : : : : : : | Case No. 09-cv-625 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Defendants DirectSat USA, LLC and UniTek USA, LLC (jointly, "Defendants"), hereby submit this Brief in Opposition to Plaintiffs' Motion for Conditional Certification.

## I.     INTRODUCTION

In connection with the Fair Labor Standards Act ("FLSA") claims asserted in their Complaint, Plaintiffs seek conditional certification of a collective action on behalf of thousands of present and former hourly employees of DirectSat pursuant to FLSA §216(b).  Under §216(b), in order for a court to certify a collective action, the court must first find that the employees are similarly situated.  Plaintiffs have not met that burden.  Indeed, Plaintiffs wholly overlook the undeniable fact that Plaintiffs will be unable to prove their case with evidence that is class-wide in nature.

To the contrary, if this Court attempts to adjudicate this action on a class-wide basis, this Court will be forced to resolve hundreds (if not thousands) of disparate factual disputes, each

involving its own set of documents, its own set of witnesses, and its own credibility determinations. Rather than deciding broad and general questions that would resolve this dispute as to the entire class of plaintiffs—which is the intended purpose of a FLSA collective action— resolution of **each** of the potentially 5,000 opt-in plaintiffs' claims will require this Court to engage in a detailed examination of what happened on a daily basis at approximately twenty-four locations scattered across a dozen states. Even more specifically, this Court will be forced to inquire into the time recording practices of more than 5,000 individuals to determine, *inter alia*, (1) whether these individuals worked during all of the time they claim to have worked, (2) whether these individuals recorded all of this time, and (3) how much time these individuals worked in a given week. For example, one of the named Plaintiffs, Aaron Espenscheid, admits that "[e]very time sheet [he] submitted contains inaccuracies[.]" Aff. of John P. Elliott at Ex. F., at Interrogatory Answer No. 18. These discrete inquiries are further complicated by the fact that the technicians at issue in this case work remotely, traveling alone from job to job. Thus, unlike cases that are actually fit for collective treatment Plaintiffs will not be able to rely on experiences of one individual to establish either the practices or experiences of another individual or the hours that other individuals work on a day to day basis.

Likewise, after conducting 5,000 minitrials concerning liability, this Court will still need to conduct another 5,000 minitrials to determine damages, as Plaintiffs' damage claims drastically vary. In fact, not only will there be great variance between individuals as to the number of hours allegedly worked, but due to fluctuating demand, the number of hours each individual worked in a given week will necessarily vary. Each individual's overtime and wage claims, therefore, will vary based on the state, location, customer demand, work volume, and the

productivity of each individual technician. Accordingly, there is simply no way for Plaintiffs to prove and no way for this Court to adjudicate this issue on a class-wide basis.

Pivotally, the issue raised is this Motion is **not** whether there was ever a breach of DirectSat's policy against employees working off-the-clock or whether some of the opt-in plaintiffs have legitimate claims under the FLSA. Rather, the issue is whether a collective action under §216(b) is an appropriate method for resolving such allegations. Because the plaintiffs are **not similarly situated**, collective treatment is not proper.

## II.    FACTUAL BACKGROUND

Plaintiffs' theory in this matter is two-pronged. First, Plaintiffs argue that Defendants' wage and overtime policy, as written, is not compliant with the FLSA because technicians are not paid for their non-productive work time (i.e., "for all time between their first principal work activity and their last principal work activity"). Pls.' Br. at 36-37. Second, Plaintiffs contend that Defendants had a "policy-not-to-follow" the written policy with respect to productive time worked. *Id.* at 37-38. To understand the fallacy of Plaintiffs' first argument and the fractured nature of their second, Defendants must first discuss their formal, FLSA-compliant, wage and overtime policy.

### A.    <u>Company Background</u>

DirectSat is a Delaware Limited Liability Company with its principal place of business in King of Prussia, Pennsylvania. Aff. of John P. Elliott at Ex. A, Elizabeth Downey Dep., Dec. 29, 2010, at 18, 25. DirectSat provides installation fulfillment service to DirectTV at approximately twenty-four locations scattered across more than a dozen states. *Id.* at 34. UniTek is DirectSat's parent company. *Id.* at 17 ("UniTek is the parent company. DirectSat is an independent

subsidiary."). UniTek is a Delaware Limited Liability Company with corporate offices located in Blue Bell, Pennsylvania. *Id.* at 18, 25.

The technicians who are involved in this case are non-exempt, hourly employees. Aff. of John P. Elliott at Ex. B, Yvette Shockman Dep. at 110-12.; *Id.* Ex. C, UniTek Employee Handbook at 25. This lawsuit centers on overtime and other payments allegedly owed to these installation technicians. Plaintiffs' claims hinge on a gross misunderstanding of the FLSA wage complaint and compensation policy applicable to DirectSat employees. Plaintiffs self-serving and misleading distinction between "non-productive" and "productive" time fails to analyze whether Defendants' written policy captures all time worked for purposes of calculating overtime and minimum wage. As set forth in the following sections, Defendants' wage and overtime policies are compliant with the FLSA and, as a consequence, all claims must be adjudicated on a fact specific, individual-by-individual basis.

### B.      The Job Rate System Generally

DirectSat pays their installation technicians based on job rates. Aff. of John P. Elliott at Ex. C, at 25; *see also* 29 C.F.R. § 778.112 (permitting job rate payment systems under the FLSA). In other words, the technicians are paid based on the quantity and type of work that they complete at a subscriber's home rather than receiving a typical hourly wage. Aff. of John P. Elliott at Ex. C., at 25. Each discrete task that is performed has a value assigned to it, and after performing the task, the employee is credited with the value assigned to that task. *Id.* A single trip to a subscriber's home or office can result in multiple and distinct jobs, each of which carries a separate job rate. By way of example, a technician may need to re-locate a satellite dish and also install an additional box. A different "job rate" is attached to each of these discrete tasks and the technician will receive compensation for the successful completion of each of these jobs.

*Id.*; *see also* Aff. of John P. Elliott at Ex. B, Yvette Shockman Dep., February 26, 2010, at 28-29. At the end of the week, the value of the jobs performed is aggregated to determine the technician's production value for the week. As discussed below, this production value is the basis for calculating wages, including overtime.

The rates applicable to each job are calculated by DirectSat based on the manner in which DirectSat itself is paid, that is, based on the contracts between DirectSat and its customer, DirectTV. Aff. of John P. Elliott at Ex. B, at 97-98. Stated simply, DirectSat pays its technicians a portion of what DirectTV pays to DirectSat. *Id.* (noting that "the CEO of DirectSat and the finance team determine what rates we will pay the technicians"). These rates vary depending on the particular market—*i.e.*, an installation may cost a subscriber more in New York than it does in parts of Pennsylvania. Aff. of John P. Elliott at Ex. B, at 220-21.

The precise rate paid to a particular technician is also determined by the "level" at which the technician is designated by DirectSat. Aff. of John P. Elliott at Ex. B, at 216-17 (noting that level determined rates). The higher a technician's level, the more money the technician will earn per job. For example, while a Level 1 technician may earn $10.00 per installation, a Level 3 technician would earn $15.00 for the same task.

**C.    Tracking Time Spent Working**

To ensure that its technicians are properly compensated in compliance with federal and state law, technicians' time is tracked on weekly time sheets that are collected at the local field offices and forwarded to payroll in Pennsylvania. Aff. of John P. Elliott at Ex. C, at 25. DirectSat instructs its technicians to "record the actual time worked" and further informs the technicians that "time worked" includes "the time [they] begin and end work." *Id.* Significantly, this time sheet reflects both productive and non-productive hours, meaning, that all time worked

is to be recorded. Aff. of John P. Elliott at Ex. B, at 142 (explaining that at all times relevant to this case technicians "were compensated" for non-productive work and that new time sheets simply "broke out" categories of non-productive work for ease of recording); *see also Id.* at 150 (noting that company policy is and has always been to compensate technicians for all of their time worked); *see also Id.* at 196 (stating that technicians should be compensated for "all work"). Employees are required to sign and verify their timesheets prior to submitting the final version at the end of the workweek. Aff. of John P. Elliott at Ex. D, UniTek Policy Booklet at 10 (describing timecard policy and procedure).[1]  Despite this policy, named Plaintiff Aaron Espenscheid admits that "[e]very time sheet [he] submitted contains inaccuracies because every time sheet omits unpaid hours." Aff. of John P. Elliott at Ex. F, Plaintiff's Answers to Defendants' Interrogatory No. 18. This policy is routinely conveyed to the technicians via their Project Managers and occasional memoranda that remind the technicians to record all of their time. Aff. of John P. Elliott at Ex. B, at 207-09. DirectSat "does not permit altering, falsifying, tampering with timesheets, or recording time on another Employee's timesheet." Aff. of John P. Elliott at Ex. C, at 25.

**D.     Calculation of an Employee's Effective Hourly Rate and Overtime Pay**

Technicians are required to seek approval for all overtime they work **prior to** crossing the forty-hour threshold. Aff. of John P. Elliott at Ex. C, at 25.  If the employee does not seek approval, however, it is DirectSat's policy to pay that employee the overtime that was earned. *Id.* The method of calculating overtime, while not complicated, requires additional discussion, as Plaintiffs' attempt at explaining the payment plan fails to adequately (or accurately) describe the policy.

---

[1] Employees are further instructed to maintain a copy of all timesheets for their personal records. Aff. of John P. Elliott at Ex. C, at 25.

If an installation technician works forty or less hours per week, which includes both productive and non-productive time, that employee is paid an amount equal to their "effective hourly rate" multiplied by the number of hours worked. To calculate the effective hourly rate, the payroll department takes the production value for each week and divides that value by the total number of productive and non-productive hours worked by the employee during the relevant week. Aff. of John P. Elliott at Ex. E, Shockman Memorandum, at 1. For example, if a technician has a production value of $1,200 for a given week and a total of 40 productive and non-productive hours, the effective hourly rate is $30.00 per hour (i.e., $1,200 / 40 hours = $30.00 per hour). Critically, in such a situation, the FLSA is not implicated, as the employee has not worked more than forty hours in a single week (and is therefore not entitled to overtime pay) and the employee has been compensated at a rate higher than the applicable minimum wage. The technician's gross pay for the week, therefore, is $1,200.

If an installation technician works more than forty hours in a single week, DirectSat pays that employee overtime equal to one and one half times the employee's effective hourly rate. Aff. of John P. Elliott at Ex. E, at 1. Again, to calculate the technician's effective regular rate, DirectSat totals the technician's production value and the total number of hours that the technician worked. *Id.* For example, if the technician's production value for the week is $1,200 and that technician has recorded 50 hours of productive and non-productive time, the technician's effective hourly rate is $24.00 per hour (i.e., $1,200 / 50 = $24.00 per hour). *Id.*

To calculate the technician's pay for the week, DirectSat multiplies the first forty hours (the non-overtime hours) by the effective rate ($24.00) to reach the employee's "Regular Wages." Any overtime hours are then multiplied by one and one half times the technician's

7

effective hourly rate (i.e., $24.00 * 1.5 = $36.00). Thus, using the numbers in the above example, the employee's check will be calculated as follows:

| | | | |
|---|---|---|---|
| Production Amount: | $1200.00 | | |
| Total Hours Worked: | 50 hours | | |
| Effective Hourly Rate: | $1200 / 50 | = | $24.00 per hour |
| Overtime Rate : | $24.00 * 1.5 | = | $36.00 per hour |
| Paycheck Calculation: | 40 hours * $24.00 | = | $960.00 (regular wages) |
| | 10 hours * 36.00 | = | $360.00 (overtime wages) |
| | $960.00 + 360.00 | = | 1320.00 (total wages) |

*Id.* This method of calculating overtime is compliant with the requirements of the FLSA. *See* 29 C.F.R. § 778.112. Thus, while the FLSA is implicated due to the number of hours worked in this second example, the FLSA requirements are satisfied as Defendants' policy captures both productive and non-productive time and as Defendants' policy calculates the effective hourly rate and the overtime hourly rate in compliance with the FLSA's regulations.

## III.   ARGUMENT

### A.   <u>Standard For Conditional Certification</u>

Courts should not conditionally certify an FLSA collective action unless the facts and the circumstances of the case illustrate that a class of similarly situated aggrieved employees exists. *Purdham v. Fairfax County Public Schools*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009) (*citing Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165, 170 (1989) (holding that the district court has discretion to facilitate notice to potential collective action members in "appropriate" cases)). The burden is on Plaintiffs to show a factual nexus between their situation and the situation of other current and former employees, sufficient for the Court to determine that they are "similarly situated." *Pereira v. Foot Locker, Inc.*, No. 07-cv-2157, 2009 U.S. Dist. LEXIS 84022, *10-11 (E.D. Pa. Sept. 15, 2009). The proper inquiry in this regard is whether Plaintiffs' proposed class consists of similarly situated employees who were collectively the victims of a single decision,

policy or plan that violates the law. *See Smith v. Sovereign Bancorp.* No. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003). Courts properly require plaintiffs to put forth evidence to satisfy this "similarly situated" standard to "avoid the 'stirring up' of litigation through unwarranted solicitation" and to prevent an employer from "be[ing] unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A-Com, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995) (internal quotation omitted); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (requiring plaintiffs to make "some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse").

Indeed, "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). For this reason, a court must take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against a FLSA claim involving a broadly defined collective group of employees. *Colozzi v. St. Josephs Hospital*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009). Neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if a court overlooks facts which generally suggest that a collective action is improper. *Saleen v. Waste Management, Inc.*, No. 08-4959, 2009 WL 1664451, *4 (D. Minn. June 15, 2009) (citing *West v. BorderFoods, Inc.*, No. 05-2525 2006 U.S. Dist. LEXIS 96963, 2006 WL 1892527, *2 (D. Minn. June 12, 2006)).

Accordingly, where a plaintiff cannot demonstrate that s/he is similarly situated to other current and former employees, courts will deny a request for conditional certification. *See, e.g.*, *Stanislaw v. Erie Ins. Co.*, No. 07-1078, 2009 WL 426641 (W.D. Pa. Feb. 20, 2009) (denying conditional certification where plaintiff offered "no first-hand evidence from any other employee alleging in their own words that these practices were regularly applied"); *Valcho v. Dallas County Hospital District*, 574 F. Supp. 2d 618 (N.D. Tex. 2008) (denying conditional certification to nurse who claimed hospital would deduct 30 minutes from the total time recorded for each shift for herself and those similarly situated); *Dudley v. Texas Waste Systems, Inc.*, No. SA-05-CA-0078-XR, 2005 WL 1140605 (W.D. Tex. May 16, 2005) (denying conditional certification in a case involving allegations about meal time being automatically deducted in a manner which deprived wages).

### B. Plaintiffs' Claims Require Individualized Inquiries that Are Not Suitable for Collective Treatment.

As noted above, Defendants have a formal policy that ensures that their employees are compensated for all "time worked." Plaintiffs take issue with this policy, contending (1) that the policy does not capture all non-productive time and (2) that there was an informal policy-not-to-follow the policy with respect to recording productive time. Notwithstanding Plaintiffs' problems with Defendants' lawful policy, conditional certification is not proper because even if Defendants' policies did violate the FLSA, ultimate liability will necessarily hinge on the individualized nature of each plaintiff's claim. Indeed, as framed by **Plaintiffs**, their claims are wholly individualized and will invariably require individualized inquires and thousands of mini-trials to determine whether specific individuals were denied pay by specific supervisors on particular days. *See, e.g.*, *Dudley*, 2005 U.S. Dist. Lexis 9168, at *6-7 (denying conditional certification in meal deduct case where "[a]ny analysis of lunch breaks will result in . . . hearing

individual testimony regarding whether [plaintiffs] regularly took lunch breaks . . . the dates each [plaintiff] actually worked through lunch . . . and whether any [plaintiff] advised management that they worked through their break and required compensation"); *England*, 370 F. Supp. 2d at 511 (denying certification and reasoning that "individual inquiries must predominate in this case because of the different locations, managers, and factual situations involved at each location"); *Lawrence v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 8445, *7 (E.D. Pa. 2004) (denying conditional certification because "the circumstances of [the] individual claims potentially vary too widely").

1. **Plaintiffs' Policy-Not-To-Follow The Lawful Policy Argument Will Result in Numerous and Disparate Factual Inquiries**

Plaintiffs contend that, in order to earn more money, they deliberately disregarded the formal wage and overtime policy. In other words, to make more money, Plaintiffs themselves disregarded the formal policy and altered their own time sheets. To justify collective treatment in a "policy-not-to-follow" a formal policy case, a plaintiff must present evidence that the "policy-not-to-follow" the formal policy derives from a corporate-wide decision not to follow the formal policy, as opposed to emanating from decisions by rogue managers and/or sporadic or fractured implementation of an otherwise lawful policy. Plaintiffs have presented no evidence of such a policy in this case and conditional certification must be denied accordingly.

*Thompson v. Speedway SuperAmerica, LLC*, No. 08-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009), is instructive. In *Thompson*, the court denied conditional certification due to the individualized nature of each plaintiff's claim. The *Thompson* defendants' wage policy required, as does Defendants' policy in this action, "all hourly associates be paid for the time spent working, scheduled or non-scheduled, on behalf of [the defendants]." *Id.* at *1. Thus, the "only formal policies" relevant to the plaintiff's allegations "require[d] that members of the putative

class be <u>paid</u> for those activities" at issue. *Id.* (emphasis in original). As Plaintiffs do in this case, the plaintiffs in *Thompson* submitted evidence from just a few of the thousands of potential class members. *Id.* at \*2. The Court reasoned that this evidence was insufficient to justify conditional certification. *Id.* Instead, the Court noted that, to justify conditional certification, the plaintiffs must submit evidence to demonstrate "that the reason why the employees were not compensated for these tasks is not because of human error or a rogue store manager, but because of a corporate decision to ignore [the] published policies." *Id.* Because—at most—the evidence offered applied to just a handful of locations, the *Thompson* Court concluded that the plaintiffs had not presented evidence sufficient to justify conditional certification. *Id.*; *see also Castle v. Wells Fargo Fin., Inc.*, No. 06-4347, 2008 WL 495705, \*5 (N.D. Cal. Feb. 20, 2008) (denying conditional certification where plaintiffs' evidence did not show that the applicable corporate policy was to deny overtime but, rather, where "[r]esolution of plaintiffs' claim would require individualized determinations and would necessitate testimony from individual employers and their supervisors about the schedules actually worked and whether managers were aware of the overtime hours worked").

Similarly, in *Pacheco*, the plaintiffs alleged that "management instituted a policy to ignore the written policy." 2009 WL 4348801, at\*6. While the plaintiffs in that case sought conditional certification of a class that included individuals working in each of the defendant's varied departments, the plaintiffs did not present representational evidence concerning the precise conditions and circumstances of each department. *Id.* (finding that the affidavits were littered with hearsay and speculation as to what occurred in many of the departments). Ultimately, the Court denied conditional certification "because there is a formal policy to pay employees [for all work], [and] any failures to follow that policy will be unique to specific

departments and supervisors." *Id.* at *7; *see also Hinojos v. Home Depot, Inc.*, No. 06-00108, 2006 WL 3712944, *3 (D. Nev. Dec. 1, 2006) (denying class certification where "resolution of plaintiffs' claims depends on the specific employment conditions in each store and department in which each class member worked and would likely require testimony from individual supervisors and other employees about the circumstances allegedly giving rise to the claimed violations").

Plaintiffs, on the other hand, have not presented the evidence necessary to establish, for the purposes of conditional certification, that a policy-not-to-follow the written policy exists. *See Freeman*, 256 F. Supp. 2d at 945 (reminding that "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *West*, 2006 WL 1892527, at *6 ("[A] limited sampling of employees does not support the Plaintiffs' assertions of widespread violations resulting from a common policy or plan."). At most, Plaintiffs rely on the specific circumstances of just a handful of individuals, who work for different supervisors at different facilities and in different states. Plaintiffs fail to present evidence from all of the departments or locations affected by the allegedly improper policy that would demonstrate that it was Defendants' policy not to enforce their policies. Rather, as admitted by named Plaintiff Espenscheid, "[e]mployees are expected to carry out the policies in the Employee Handbook and may be disciplined for violations of the policies." Aff. of John P. Elliott at Ex. F (Plaintiff's Answers to Defendants' Interrogatory No. 16).

This evidence falls woefully short of establishing that Defendants, in practice, had a policy of not following a formal policy. Accordingly, any analysis of whether these individuals were denied pay under the FLSA will focus not on whether there was a corporate-wide policy of non-payment, but, rather, on whether (1) the **individual** plaintiff performed tasks that

predominately benefited their employer during the day, (2) the **individual's direct** supervisor was aware of aware of this fact, and (3) despite such awareness, the **specific supervisor** failed to take action in accordance with the Formal Policy. *See, e.g., Pacheco*, 2009 WL 4348801, at *7; *Thompson*, 2009 WL 130069, at *2-4; *Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at *5; *Hinojos*, 2006 WL 3712944, at *3; *Dudley*, 2005 U.S. Dist. Lexis 9168, at *6-7. Indeed, Plaintiffs will also need to prove that any such "policy" is uniform and applicable to each of the distinct field offices at issue. Plaintiffs have not presented **any** evidence to suggest that this is the case. Such an individualized analysis runs directly counter to "the economy of scale" envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA. *Ledbetter*, 2007 U.S. Dist. LEXIS 10243, at *16; *see Pacheco*, 2009 WL 4348801, at *7; *Thompson*, 2009 WL 130069, at *2-4; *Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at *5; *Hinojos*, 2006 WL 3712944, at *3; *England*, 370 F. Supp. 2d at 511.

Accordingly, due to the alarming number of individuals, managers, and locations implicated by Plaintiffs' Motion, and the utter lack of evidence concerning a corporate-wide policy-to-violate-the-formal-policy, Plaintiffs' claims raise too many individualized inquiries to justify collective treatment. Therefore, the Court must deny Plaintiffs' Motion.

> **2. Plaintiffs' Non-Productive Time Theory Ignores Defendants' Lawful Wage and Overtime Policy and Necessarily Results in Individualized Inquiries.**

Next Plaintiffs argue that the technicians have been denied payment for non-productive time. This argument completely ignores the formal policy that mandates that employees are paid for all of their time worked. It further ignores the fact that the technicians have agreed and acknowledged that the job rates applicable to their productive work are intended to cover their non-productive work. Thus, Plaintiffs claim with respect to Defendants' non-productive work

time policy is without merit. Even assuming, *arguendo*, that Plaintiffs' claim has merit, Plaintiffs cannot escape the reality that proving this claim will require an individualized analysis of each of the named and opt-in Plaintiffs.

As is the case in the policy-not-to-follow the policy cases, adjudication of Plaintiffs' non-productive work claims will necessarily require individualized inquiries including, but not limited to the following:

- whether the <u>individual</u> plaintiff performed tasks that predominately benefited their employer;

- what precise tasks did the <u>individual</u> plaintiffs perform;

- which precise days did the employee allegedly perform "work" that was not compensated;

- how much time did the employee spend on these days performing the work that was apparently not compensated;

- whether the employee actually received payment for the services allegedly rendered;

- whether the employee recorded the time that they allegedly worked and, if not, why not;

- whether the Defendants were aware of this work; and

- whether, even assuming the individual can prove that they performed such work, the number of hours resulted in a minimum wage or overtime violation.

*See, e.g.*, *Pacheco*, 2009 WL 4348801, at \*7; *Thompson*, 2009 WL 130069, at \*2-4; *Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at \*5; *Hinojos*, 2006 WL 3712944, at \*3; *Dudley*, 2005 U.S. Dist. Lexis 9168, at \*6-7. Theses inquiries, which are unavoidable, eviscerate both the text and the policy of §216(b). *Ledbetter*, 2007 U.S. Dist. LEXIS 10243, at \*16; *see Pacheco*, 2009 WL 4348801, at \*7; *Thompson*, 2009 WL 130069, at \*2-4; *Castle v. Wells Fargo*

*Fin., Inc.*, 2008 WL 495705, at *5; *Hinojos*, 2006 WL 3712944, at *3; *England*, 370 F. Supp. 2d at 511.

Further, the individualized nature of Plaintiffs' claims is augmented by the fact that the technicians work remotely, *i.e.*, the technicians work out in the field alone, completing the work on their individual work orders at their individual job sites. In other words, quite unlike a donning and doffing case where the employer enjoys constant supervision over its employees and where other employees can testify concerning a group of individuals, here, each plaintiff (both named and opt-in) will have to testify as to their exact routine and to the type of work performed and the amount of time taken to perform such tasks. Moreover, the isolated nature of Plaintiffs individual employment environments will give rise to countless credibility determinations, challenging the factual accuracy of Plaintiffs' allegations. Defendants' right to confront witnesses and to present impeachment evidence will necessarily give rise to as many as 5,000 fact specific minitrials. It is hard to imagine a more individualized inquiry.

Accordingly, Plaintiffs' non-productive work claim (even if it exists) raises too many individualized inquiries to justify collective treatment. Therefore, the Court must deny Plaintiffs' Motion.

**D.      Plaintiffs Have Not Demonstrated That They Are Similarly Situated To Other Employees.**

Plaintiffs seek conditional certification of a collective action for over 5,000 individuals working approximately twenty-five locations throughout more that a dozen states. Plaintiffs have not demonstrated that they are similarly situated to this large number of individuals. In support of a conditional certification motion allegedly applicable to thousands of current and former employees engaged in a wide variety of jobs, Plaintiffs proffer just twenty-eight (28)

declarations, which is only approximately 0.6% of the proposed class.[2] "Such a limited sampling of employees does not support . . . the assertion of widespread violations resulting from a common policy or plan." *West v. Border Foods, Inc.*, 2006 WL 1892527, *6 (D. Minn. Jun. 12, 2006) (finding that plaintiffs did not present evidence sufficient to grant conditional certification where plaintiffs presented only six affidavits representing just 2.5% of the potential class); *see Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (denying class certification where plaintiffs only presented affidavits of 4% of the putative class of individuals affected and that such scant evidence was found not to demonstrate the existence of a "common policy or plan").

Plaintiffs' glaring lack of representational evidence falls far short of suggesting (let alone demonstrating) that Plaintiffs are similarly situated with the 5,000 other non-exempt individuals they seek to represent. *See, e.g., Horne*, 279 F. Supp. at 1235 (reasoning that "a plaintiff must demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected by alleged work policies in order for the court to certify a collective action which extends beyond the plaintiff's own work location"); *see also Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, *7-8 (E.D. La. July 2, 2004) (denying conditional certification where "members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal-Mart organization" and where "potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis").

---

[2] Many of these declarations are put forth by individuals beyond the two year statute of limitations.

In fact, while Plaintiffs claim that there exists a uniform policy-not-to-follow the formal policy, Plaintiffs have not even presented evidence addressing the employment circumstances at several of DirectSat's field offices. Without evidence concerning these field offices, Plaintiffs are left to rely on conclusory and speculative allegations that do not meet the applicable conditional certification standard. *See Hintergerger*, 2009 WL 3464134, at *6 (finding "no indication that [affiants] observations occurred outside" of their particular building and, consequently, declining to grant conditional certification with respect to any employees working at defendants' out-patient facilities); *Hamelin v. Faxton-St. Lukes Healthcare*, No. 08-1219, 2009 WL 2115212, *7-8 (N.D.N.Y. Jan, 26, 2009) (finding that Plaintiffs did not provide affidavit evidence from individuals working at each of the allegedly affected locations and, consequently, concluding that plaintiffs did not demonstrate that "health care workers at those facilities are subject to similar short staffing and, by virtue of attending to patient care needs, the need regularly to work through or during scheduled meal breaks, without compensation"); *Bernard v. Household Inter., Inc.*, 231 F. Supp. 2d 433, 436 (E.D. Va. 2002) (denying conditional certification with respect to certain facilities where affidavits failed to proffer "any specific allegations regarding practices in other offices—no names of employee or supervisors, and no indication that the problems alleged through first-hand knowledge in the two Virginia offices exist elsewhere").

In sum, Plaintiffs' proffer just a few declarations to support their request to certify a class of 5,000 individuals who perform numerous tasks for numerous managers at numerous locations in geographically distinct locations. The allegations do not reach all of DirectSat's locations and, therefore, at the least, cannot serve as a basis for certifying the entire class that Plaintiffs seek. *Hamelin*, 2009 WL 2115212, *8 (declining to grant conditional certification to at all of the

facilities suggested by Plaintiffs); *Hintergerger*, 2009 WL 3464134, *6 & n.13 (reminding that "conclusory allegations of 'system-wide' policies or practices must be at least minimally supported by a plaintiff's affidavit or declaration" and declining to grant conditional certification as to out-patient facilities). Accordingly, this Court must reject conditional certification of the collective action being sought by Plaintiffs.

### E. The Declarations Attached to Plaintiffs' Complaint Establish that Conditional Certification Is Not Proper

Not only have Plaintiffs failed to demonstrate Defendants' policies at specific geographic locations, but the affidavits Plaintiffs do submit clearly demonstrate that the proposed class members are not similarly situated. These affidavits further demonstrate that even if Defendants' policies do violate the FLSA, the time allegedly spent on any particular task varies so much, not merely from one technician to another, but in the daily activities of each individual on each particular day, that the Plaintiffs are not similarly situated and that class treatment of their claims is, therefore, not practical or proper.

Plaintiffs seek damages for a wide range of activities for which they claim they were not compensated. However, even a cursory review of the affidavits submitted by Plaintiffs show that to demonstrate liability and damages for even one individual plaintiff would require a detailed analysis of that technician's daily activity because the amount of time each individual technician spends on a particular activity varies greatly from day to day. For example, Marc Braniff, Bryan Bruheim, David Deserve, Mitch Hanson, Gary Idler and Jeremy Johnson all admit that their drive home from their last job, for which they claim they should be paid, took anywhere from "a few minutes up to a couple of hours." *See* Dkt. Entry 70 at ¶ 5; Dkt. Entry 73 at ¶ 3 (drive to and from work took anywhere from 30 minutes to 90 minutes each day); Dkt. Entry 75 at ¶ 5; Dkt. Entry 80 at ¶ 5; Dkt. Entry 81 at ¶ 5; Dkt. Entry 82 at ¶ 5. Richard Walker claimed his drive

home "averaged" from ten to forty-five minutes, but could take over an hour. Dkt. Entry 93 at ¶6. William Smith and Donald Broussard claim their drives home took anywhere from thirty minutes to two hours. Dkt. Entry 91 at ¶ 3; Dkt. Entry 71 at ¶ 3. Accordingly, given the admittedly disparate amount of time each individual technician spent on a particular activity on a particular day, to prove liability and damages, a plaintiff will have to prove how long it took to drive to their first job and how long it took to drive home from their last job for each and every day they worked. Given the complexities of demonstrating these damages for each individual, there is no way such damages could be adjudicated on a class wide basis.

Similarly, the amount of time that each affiant spent on a particular activity varies from affiant to affiant in a manner that demonstrates that the proposed class in not similarly situated. For example, many of the technicians who provided affidavits claimed that they were not paid for swapping equipment with other technicians. However, they all claim to have spent a disparate amount of time on that same activity. *See* Dkt. Entry 68 at ¶ 12 (Kenneth Boggs claiming spent 1 to 1.5 hours per week); Dkt. Entry 73 at ¶ 8 (Bryan Bruheim claiming he spent 15-20 minutes every other week); Dkt. Entry 77 at ¶ 12 (Steven Forrest claiming he spent 3-5 hours per week); Dkt. Entry 83 at ¶ 11 (James Long claiming he spent 1 to 1.5 hours per month). Accordingly, the technicians who claim not to have been paid for swapping equipment with other technicians allegedly spent anywhere from forty minutes per month to twenty hours per month, or somewhere in between, on that particular activity. Although claiming damages for the same activity, these persons clearly are not similarly situated.

Similarly, the time the affiants claimed to have spent daily on other particular activities varies greatly. For example, Mark Braniff claimed it "usually" took him 30 minutes per day to call customers and dispatch. Dkt. Entry 70 at ¶ 12. However, Donald Bruce claimed he spent

two hours each day performing the same activities. Dkt. Entry 72 at ¶ 9.[3]  Roney Martinez admitted that he called customers and dispatch while he was driving. Dkt. Entry 84 at ¶ 7. Brad McNeil claims that up until October of 2008 he spent two to three hours a day calling dispatch and that since October of 2008 he has spent forty-five to sixty minutes on that activity. Dkt. Entry 85 at ¶ 16.

It also took the affiants different amounts of time to load their truck every day. It allegedly took Dennis Warner ten minutes each day to load his equipment. Dkt. Entry 94 at ¶ 8. However, the same activity took **Richard Walker an hour and a half every day**. Dkt. Entry 93 at ¶ 5. It took James Long and hour and a half to two hours each day to load his van. Dkt. Entry 83 at ¶ 6. The differences in the time that it took each individual tech to load their van each day, which is time that Plaintiffs claim they worked but were not paid for, demonstrates they are not similarly situated and that this case should not be conditionally certified.

The vast disparity of time for which each individual technician claims he or she was not paid is highlighted by the affiants' estimation of the total hours they allegedly were not paid for each week by Defendants. Tyler Parker claims he was not paid for twenty hours per week. Dkt. Entry 86 at ¶ 24. Michael Smith claims that he was not paid for ten or eleven to twenty or twenty-one hours that he worked every week. Dkt. Entry 90 at ¶ 13, 14. Clinton Skeens alleges that he under reported his time by ten hours every week. Dkt. Entry 89 at ¶ 24. William Smith claimed that he usually under reported his time by five to seven hours per week. Dkt. Entry 91 at ¶ 14. Brad McNeil claimed that he under reported his hours by four to six hours per week. Dkt. Entry 85 at ¶ 26. Accordingly, the affidavits submitted by Plaintiffs demonstrate that

---

[3] Of course, if Mr. Bruce was on the phone with dispatch after his first job until the end of his last job, he was, as noted above, being paid for this time, assuming that he accurately recorded it.

Defendants' technicians are not similarly situated and, therefore, that conditional certification is not appropriate.

## IV.    CONCLUSION

For the reasons set forth above, this Court should deny Plaintiffs' Motion for Conditional Certification.[4]

                                                Respectfully submitted,

                                                /s/ John P. Elliott
OF COUNSEL:                                     Eric J. Bronstein
                                                John P. Elliott
ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.          Colin D. Dougherty
                                                Gregory S. Voshell
                                                Union Meeting Corp. Ctr.
                                                925 Harvest Dr., Suite 300
                                                Blue Bell, PA 19422
                                                (215) 977-1000

                                                Laura Skilton Verhoff
                                                Drew J. Cochrane
                                                Stafford RosenBaum LLP
                                                222 W. Washington Ave., Suite 900
                                                Madison Wisconsin 53701-1784
                                                (608) 256-0226
                                                Attorneys for Defendants

DATED:  March 29, 2010

---

[4] Should the Court grant conditional certification, Defendants have filed their Objections to Plaintiffs' Proposed Notice contemporaneous hereto and incorporate those objections herein.

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused the forgoing to be filed electronically with the

Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the

following:

Michael John Luebke
Robert Gingras
Gingras, Cates & Luebke, S.C.
8150 Excelsior Dr.
Madison, WI 53717
Attorney for Plaintiffs
Aaron L. Espenscheid

Michael J. Modl
Timothy D. Edwards
Axley Brynelson, LLP
P.O. Box 1767
Madison, WI 53701
Attorney for Plaintiffs
Aaron L. Espenscheid

*/s/ John P. Elliott*
John P. Elliott

DATED: March 29, 2010