UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Aaron L. Espenscheid, <br> Gary Idler, and Ricardo Bolano, <br> on behalf of themselves and a <br> class of employees and/or <br> former employees similarly situated, <br> Plaintiffs, <br><br> v. <br><br> DirectSat USA, LLC and UniTek USA, <br> Defendants. | Case No. 09-cv-625 |

---

### DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE OF COLLECTIVE ACTION

---

Defendants DirectSat USA, LLC and UniTek USA, LLC (jointly, "Defendants"), hereby submit these Objections to Plaintiffs' Proposed Notice of Collective Action.

## I.  INTRODUCTION

In *Hoffman-La Roche v. Sperling*, the Supreme Court instructed district courts to control the notice and opt-in stage of a FLSA collective action, concluding that "by monitoring the preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." 493 U.S. 165, 172 (1989).[1] By assuming this managerial role, district courts can "avoid the need to cancel consents obtained in an improper manner" and can "be assured that [a court-established] cutoff date was reasonable, rather than having to set a cutoff date based on a series of unauthorized communications or even gossip that might have been misleading." *Id.*

---

[1] *Hoffman-La Roche* involved claims under the Age Discrimination in Employment Act ("ADEA"). The ADEA incorporates FLSA § 216(b). *See Hoffman-La Roche*, 110 U.S. at 485 (reminding that ADEA is enforced through certain FLSA provisions, including § 216(b)).

Disregarding this Court's role in approving a neutral, objective and balanced notice form, Plaintiffs' counsel have presented to this Court a Notice Package that contains incomplete and incorrect statements of the law and numerous misleading statements designed to lure prospective plaintiffs into joining this action. As set forth in detail below, due to the staggering number of deficiencies, Plaintiffs' proposed Notice Package is incurably flawed and should be rejected by the Court.

## II. STANDARD OF REVIEW

The *Hoffman-La Roche* Court reasoned that when "exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." 493 U.S. at 174. Specifically, this Court's managerial role requires it to regulate the content of the notice form and the manner in which the Court-approved notice is sent to prospective opt-in plaintiffs. *See Gordon*, 2009 WL 3334784, at *12. The Court is also charged with setting and enforcing a cutoff date for opting-in "to avoid a never-ending certification process." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1036-37 (D. Minn. 2007).

Finally, the Court must ensure that Plaintiffs' counsel refrain from contacting (or otherwise notifying) potential opt-in plaintiffs through any means, including the internet, not pre-approved by this Court.[2] *See Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 09-379, 2009 WL 1515175, *6 (W.D. Pa. June 1, 2009) (issuing "cease and desist" order preventing the

---

[2] Precluding Plaintiffs and their counsel from contacting potential class members through means not approved by this Court is of particular concern in this case. Plaintiffs and their counsel have already contacted **at least** several dozen putative class members, convincing these individuals to provide affidavits in support of Plaintiffs' Motion for Conditional Certification. Plaintiffs, who have not disclosed the manner in which they contacted these individuals, must be prevented from making any additional contact as, if conditional certification is granted, the Court (and **not** Plaintiffs or their counsel) will assume a managerial role over the content of the notice and method of its distribution.

2

plaintiffs counsel from using "any form of notification not pre-approved by the court"); *see also Heitman v. City of Chicago*, No. 04-3304, 2004 WL 1718420, *2 (N.D. Ill. July 30, 2004) (striking consent forms because consent was procured via notice that was not approved by the court or the defendant).

## III. ARGUMENT

Plaintiffs' proposed Notice Package (the "Proposed Notice") is objectionable on multiple grounds. First, Plaintiffs' Proposed Notice is deceptive and misleading and includes numerous incomplete and/or inaccurate statements. Second, Plaintiffs' vague reference to "dissemination" intimates that Plaintiffs intend to distribute the Notice by means other than first class mail. Such a distribution method has been overwhelming criticized by courts addressing the issue. Third, Plaintiffs omit a deadline for the opt-in period. Lastly, Defendants request that this Court preclude Plaintiffs' counsel from contacting any proposed plaintiff in a manner not pre-approved by this Court. Defendants request leave from this Court to consult with Plaintiffs and to develop a mutually agreeable Notice and Consent form.

### A. **Defendants' Objections to the Misleading Content of the Proposed Notice.**

If conditional certification is granted by this Court, Plaintiffs should not be allowed to employ misleading tactics in their notice forms in an effort to artificially increase the size of the class. Plaintiffs' Proposed Notice in this case is misleading, deceptive, and inappropriate in several respects. Defendants object to the following misleading, inaccurate, and/or incomplete portions of Plaintiffs' Proposed Notice:

#### 1. **UniTek Does Not Employ Technicians**

UniTek is the parent company of DirectSat. It does not employ any individuals who are eligible to join the putative class of plaintiffs. Nonetheless, Plaintiffs have framed the class as

3

individuals who are or were employed by UniTek or DirectSat in the last three years. Such a class definition is deceptive and inaccurate. UniTek is a separate and distinct legal entity that does not now and has not ever employed the individuals who comprise the proposed class. Accordingly, this Court must require Plaintiffs to amend the language of their proposed notice to reflect this factual reality.

### 2. Plaintiffs' Notice Form Insufficiently Sets Forth Defendants' Position.

The text of Plaintiffs' Proposed Notice is biased in favor of Plaintiffs' position in this litigation. Plaintiffs seek to issue a Notice in which Defendants' denial of alleged FLSA violations does not appear until the tail-end of a paragraph on the bottom of the first page. Not only is the defense position largely inconspicuous, the description of Defendants' contentions is cursory at best. If a notification process is to proceed, Defendants' position in this case must be entitled to both better placement and more in depth treatment in the final notice. Defendants should be permitted to have an entire section of the notice dedicated to their position so that Defendants' position is not tactically placed in an unfavorable and subtly hidden location. Thus, Defendants specifically request leave to craft their own explanation of their position in this case. *See Kuznyetsov*, 2009 WL 2145297, at *3 (permitting Defendants to proffer their own explanation of their denial).

### 3. Plaintiffs' Proposed Notice Downplays The Burden Opt-in Plaintiffs May Face.

Plaintiffs' Proposed Notice downplays the burdens that opt-in plaintiffs must carry if they opt-in to a collective action. Opt-in plaintiffs will need to testify under oath during depositions and allow certain documentation to be used by Defendants' counsel, some of it of a personal nature, such as personnel records. Moreover, depending on their location, some opt-in plaintiffs may even be required to testify at trial. Accordingly, if a notice form is approved at all, it should

include a full description of the responsibilities attendant to participating in this action. *See Bah v. Shoe Mania, Inc.*, No. 08-9380, 2009 U.S. Dist. LEXIS 40803, *11 (S.D.N.Y. May 13, 2009) (requiring plaintiff to "modify the notice to inform the potential plaintiffs that, if they opt-in, they may be asked to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial and/or (4) pay litigation costs").

Plaintiffs proposed description merely states that individuals "may be required to participate in the discovery process." Pls.' Br. at 46. This sentence is deceptive because opt-in plaintiffs **will** have to participate in discovery. It is also under-inclusive, as it does not explain the type of discovery that is required and does not include the fact that plaintiffs may need to testify at trial or at a deposition. Accordingly, Plaintiffs proposed description of the discovery process is inherently flawed and inappropriate and it will not inform the recipient of the burdens that necessarily arise when participating in a collective action under the FLSA.

### 4. Plaintiffs' Disclosure Concerning Their Representation is Under-inclusive and Deceptive.

In the event that conditional certification is granted, a form of Notice should not include language, as proposed by Plaintiffs, that promotes the services of the two law firms representing Plaintiffs. Under the heading "Your Right to Participate in This Suit," Plaintiffs state in boldface that recipients of the letter **"are not required to pay any money to participate"** in the lawsuit. Pls.' Br. at 45 (emphasis in original). This statement is misleading in several respects. First, it intimates that Plaintiffs' attorneys have agreed to represent the putative plaintiffs gratuitously, which is not the case. This belief is not dispelled until several headings later, where Plaintiffs state at the end of a paragraph that they will "receive a part" of any settlement or judgment obtained. Pls.' Br. at 46 (under the heading "Effect of Joining This Suit"). Tellingly, this disclosure is not made in boldface, unlike the comment concerning money required to

participate. To avoid any mistaken belief on the part of an opt-in plaintiff concerning the costs of joining this lawsuit, Plaintiffs must be required to (1) de-emphasize or remove the comments concerning the costs of joining the lawsuit and (2) immediately follow any comments concerning the costs of joining this lawsuit with a precise description of the fee arrangement between Plaintiffs' attorneys and Plaintiffs. Without such changes, the recipient may not understand that any recovery they obtain will be reduced by an amount paid to Plaintiffs' attorneys.

Plaintiffs must also inform all prospective Plaintiffs that, if Defendants are successful, Defendants are entitled to recover their costs **from Plaintiffs**. Thus, all Plaintiffs, including those individuals who opt-in, may be required to shoulder the burden of Defendants costs, including deposition expenses. This reality is wholly absent from Plaintiffs' proposed notice and, therefore, the Notice does not fully inform prospective class members of the actual costs and risks of joining the action.

### 5. Plaintiffs Inaccurately Summarize the Protections of the FLSA

Plaintiffs misleadingly represent the protections afforded to individuals under the FLSA. Specifically, in the "Description of Lawsuit" portion of the Notice, Plaintiffs inaccurately state: "The FLSA requires that an employer pay both wages and overtime compensation for all work-related activities that are compensable under federal law." This statement is incomplete at best. The FLSA requires only that employers pay (1) the minimum wage and (2) overtime for hours worked in excess of 40. The FLSA **does not** require that an employer pay wages for "all work-related activities" as Plaintiffs deceptively suggest.

The inclusion of this language is aimed at recruiting individuals who may believe that they were not paid for all of the time that they worked, regardless of whether these individuals were paid overtime and minimum wages. These individuals, however, do not necessarily have

claims under the FLSA and, therefore, without accurate information concerning the protections of the FLSA and the relevant allegations of this lawsuit, recipients of this notice cannot make an intelligent and informed decision about whether to join this action. Plaintiffs again mislead recipients into believing that they would be joining a suit to recover unpaid "wages" in the "Your Right to Participate in This Suit" portion of the Notice. Again, such a vague reference to "wages" does not adequately describe the nature of the suit—Plaintiffs seek unpaid **minimum** wages and unpaid **overtime** and nothing more. Therefore, Plaintiffs' description of the FLSA and its protections is woefully inaccurate and misleading. Accordingly, this Court must prevent Plaintiffs from employing such language.

### 6. Plaintiffs' Deceptively Emphasize the Importance of Joining This Suit

On numerous occasions, Plaintiffs—in boldface—urge potential class members to quickly sign and return the Consent Form. Such tactics are designed to scare putative plaintiffs into joining this action. Plaintiffs first state that it is "**extremely important**" for individuals to return the Consent Form. Pls.' Br. at 45 (emphasis in original). There is simply no need to emphasize this language—Plaintiffs have included the date (to be filled in pursuant to this Court's Order) by which Plaintiffs must return their Consent Form if they seek to join. Recipients need only file their Consent Forms prior to this date to join this action—the use of the phrase "extremely important" is designed to startle recipients and prompt them into signing the form regardless of whether they believe they have a cognizable claim. Thus, the language is misleading and deceptive and defeats the informative purposes of the Notice packet. *See Witteman v. Wisconsin Bell*, 2010 WL 446033, *3 (W.D. Wis. Fed. 2, 2010) (Crabb, J.) (reminding that the "purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit").

Plaintiffs continue their scare tactic trend on the following page, urging putative plaintiffs to send in their Consent Forms based on the running statute of limitations. This paragraph, which is emphasized in its entirety, is designed to scare potential class members into joining this action for fear that their claims may be expiring. Such a tactic defeats the purpose of providing fair, balanced and objective notice of the action to the potential class members. This paragraph also fails to mention that Plaintiffs can stop the statute of limitations from running by filing their own lawsuit. Again, this omission is not surprising given that individual actions will reduce the amount of fees that Plaintiffs' attorneys may recover. At the least, this Court must require Plaintiffs to de-emphasize such inflammatory and inciting statements.

### 7. Plaintiffs Inappropriately Fail to Advise Recipients that They Are Free to Obtain Counsel

Plaintiffs fail to advise recipients that: (1) they can file their own lawsuit with their own attorney, or (2) join in this lawsuit with their own attorney. This shortcoming is not surprising, given that Plaintiffs' attorneys' fees will suffer if recipients find their own lawyers. Nonetheless, as this Court has recognized, Plaintiffs must clearly and fully explain the rights available to a potential plaintiff, including the right to obtain independent counsel. *See Witteman*, 2010 WL 446033, at *3. Thus, this Court must order Plaintiffs to include language that fully explains the rights retained by recipients of the Notice, including language that (1) explains that individuals can join this lawsuit with their own counsel or (2) explains that individuals can seek counsel and independently file their claims.

### 8. The "Further Information" Section is Superfluous

Plaintiffs include a section titled "Further Information." This section, however, merely repeats the language from the section directly preceding it—both sections simply state that if putative plaintiffs have additional questions, they can contact Plaintiffs' attorneys. Thus, the

inclusion of this language is either an oversight or a blatant effort to convince individuals to call and talk to Plaintiffs' counsel directly. Notwithstanding the true reason for its inclusion, the language is superfluous and unnecessary given that Plaintiffs' counsel inform recipients that they can contact counsel with questions in the preceding section of the Notice.[3]

### B. Defendants' Objections to Plaintiffs' Potentially Broad Distribution Requests.

Even when courts have granted conditional certification, courts reject attempts to have Notice sent by means other than first class mail and reject efforts to obtain information other than names and mailing addresses needed to mail the forms. Plaintiffs do not specify the manner in which they intend to distribute their notice, seeking instead—perhaps intentionally—to have this Court permit them broad latitude for "dissemination" of their Proposed Notice. Pls.' Br. at 42. Nonetheless, Defendants object to the extent that Plaintiffs are seeking to distribute notice by any means other than first class mail.

Any distribution other than through the use of first class mail is excessive and goes far beyond the well-established requirements for distributing "the best notice practicable under the circumstances." Fed.R.Civ.P 23(c)(2). Indeed, it is well-established that first-class mail is not only an adequate means, but the preferred method, of providing potential class members with "accurate and timely notice concerning the pendency of the collective action." *Hoffman-La Roche*, 493 U.S. at 170. As the *Kuznyetsov* Court explained,

> "In contrast [to first class mail], electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately

---

[3] Defendants do not challenge the inclusion of the disclaimer addressing the limited role this Court has in the distribution of notice. Such a disclaimer, however, should come sooner in the Notice.

9

> targeted audience received the intended notification and maximizes the integrity of the notice process."

2009 WL 1515175, at *6 (quoting *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630-31 (D. Colo. 2002) (addressing plaintiffs' request to notify potential class members by e-mail, posting on a website and first-class mail and holding that the electronic means of notifications were unnecessary and potentially problematic)) (alterations in original); *see also Karvaly v. e-Bay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (rejecting proposed settlement agreement under Rule 23 submitted by the parties, where the agreement's proposed notice provision did not provide the "best notice practicable", and concluding that electronic notice, although less expensive than notice by mail, was not an appropriate substitute because it "creates risks of distortion or misleading notification that are substantially reduced when first-class mail is used").

For the same reasons, Plaintiffs' unnamed and apparently not-yet-existing website should be precluded by this Court. By including reference to this unnamed website, Plaintiffs seek to circumvent the notice process by placing biased and potentially misleading information on the internet, without Court oversight. The purpose of developing notice is to ensure that Defendants and the Court have a chance to participate in developing the **only** notice that will be sent or made available to potential class members. *See Wood v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (finding it improper for plaintiff to issue notice without first permitting Defendants an opportunity to review the notice for accuracy). Posting information on a website is no different than sending an unauthorized notice—permitting Plaintiffs to operate their own, self-serving website, therefore, would circumvent this Court's authority and Seventh Circuit precedent. *Id.*

Therefore, to the extent that Plaintiffs' reference to "dissemination" includes distribution by any means other than first class mail, such a proposed distribution method is

grossly overbroad and has been flatly rejected by numerous courts. Accordingly, Defendants object to any such distribution method.

      C.      **This Court Should Order a Forty-Five Day Opt-In Period.**

Plaintiffs correctly acknowledge that the opt-in period must have a firm deadline, so that this Court can avoid "a never-ending certification process." *Nerland*, 564 F. Supp. 2d at 1036-37. Numerous courts have held that a forty-five day opt-in period for FLSA collective actions is appropriate. *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 WL 5263750, *6 (E.D. Wis. Dec. 18, 2008); *Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825, *3 (S.D. Ohio Aug. 2, 2006) (noting that "sixty (60) days is too long and would needlessly delay the litigation"); *Carmody v. Florida Ctr. for Recovery, Inc.*, 2006 WL 3666964, *4 (S.D. Fla. Nov. 8, 2006); *Champneys v. Ferguson Enters., Inc.*, 2003 WL 1562219, *7 (S.D. Ind. Mar. 11, 2003). A forty-five day period gives recipients plenty of time to read and consider the Notice and Consent form and ample time to decide whether to join the action. Moreover, the forty-five day opt-in period will permit both parties time to prepare for the decertification and summary judgment stages of this matter. Plaintiffs have presented no reason to deviate from a forty-five day period. Accordingly, this Court should enter a forty-five day period for opting-in to this action if conditional certification is granted.

      D.      **Defendants' Objections to the Three-Year Period Encompassed by Plaintiffs' Proposed Notice.**

Plaintiffs seek to send notice to individuals whose claims—even if cognizable—are barred by the FLSA's two year statute of limitations without justification. Under the FLSA, however, a two-year statute of limitations applies. 29 U.S.C. § 255(a). A three-year limitations period arises only where the plaintiff proves a FLSA violation was "willful." *Id.*

Plaintiffs have not proven a single violation of the FLSA at this stage, and they have made no showing that any violation was "willful". There is **no** basis for issuing notice to all individuals employed within the three year period prior to the filing of the Complaint. An employer acts "willfully" for purposes of the three-year statute of limitations if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[T]he showing needed for a finding of willful is demanding in that even if an employer acted unreasonably, if the employer's action was not reckless in determining its legal obligations under the FLSA, such action is not 'willful.'" *Duncan v. Brockway Standard, Inc.*, No. 1:90-CV-2867, 1992 WL 510256, *6 (N.D. Ga. Sept. 21, 1992); *see also Aly v. Butts County*, 841 F. Supp. 1199, 1201 (M.D. Ga. 1994). In this case, there is simply **no** evidence to support the claim that Defendants acted with "reckless disregard" toward their respective obligations under the FLSA. Thus, any class this Court conditionally certifies should be limited by the FLSA's two year statute of limitations.

### E. The Court Must Prohibit All Other Solicitation Other Than That Approved By This Court.

Defendants request that this Court prevent Plaintiffs' counsel from contacting putative members through any means other than the approved Notice, as any other contact would vitiate the Court's and the parties' time, efforts and obligation to ensure that the putative plaintiffs receive accurate and impartial information. Accordingly, Defendants seek an order restricting Plaintiffs and their counsel from soliciting opt-in class members in any manner not pre-approved by this Court.

Any unapproved contact by Plaintiffs' counsel with putative class members directly undermines the Court's "managerial responsibility to oversee the joinder of additional parties to

assure that the task is accomplished in an efficient and proper way." *See Pereira v. Foot Locker, Inc.*, No. 07-cv-2157, 2009 U.S. Dist. LEXIS 84022, *4 (E.D. Pa. Sept. 15, 2009) (quoting *Hoffman-La Roche*, 493 U.S. at 170-71). If Plaintiffs' counsel were to contact potential plaintiffs based solely upon their own unrestrained and biased opinion of what is "accurate and not misleading," this Court's efforts and obligations to oversee the notice process in accord with the Supreme Court's opinion in *Hoffman-La Roche* would be meaningless. For this same reason, Plaintiffs' request to include a Website is improper. This Court has not reviewed and approved the content of this website to determine its accuracy and to ensure that any website includes fair, balanced, and objective information. Moreover, any notice mailed to individuals will have all of the information necessary for the individuals to make an informed decision. There is no need to require Defendants and this Court to constantly monitor a website to determine whether any aspect of that website (even if approved) has changed, as Plaintiffs will have the ability to change the content of the website at any time.

Rather, this Court must "order Plaintiffs' counsel to immediately cease and desist any form of notification not pre-approved by the court." *Kuznyetsov*, 2009 WL 1515175, at *6. This Court must also direct Plaintiffs' counsel to discontinue any efforts to directly or indirectly contact and/or solicit putative plaintiffs in avenues separate and apart from any process that the Court explicitly approves.

## IV. CONCLUSION

For the reasons set forth above, this Court should reject Plaintiffs' proposed Notice of Collective Action and grant the parties fifteen (15) days to develop a mutually agreeable Notice and Consent package.

Respectfully submitted,

/s/ John P. Elliott

OF COUNSEL:

ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.

Eric J. Bronstein
John P. Elliott
Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corp. Ctr.
925 Harvest Dr., Suite 300
Blue Bell, PA 19422
(215) 977-1000

Laura Skilton Verhoff
Drew J. Cochrane
Stafford RosenBaum LLP
222 W. Washington Ave., Suite 900
Madison Wisconsin 53701-1784
(608) 256-0226
Attorneys for Defendants

DATED: March 29, 2010

# CERTIFICATE OF SERVICE

I hereby certify that on this date I caused the forgoing to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

>Michael John Luebke
>Robert Gingras
>Gingras, Cates & Luebke, S.C.
>8150 Excelsior Dr.
>Madison, WI 53717
>Attorney for Plaintiffs
>Aaron L. Espenscheid

>Michael J. Modl
>Timothy D. Edwards
>Axley Brynelson, LLP
>P.O. Box 1767
>Madison, WI 53701
>Attorney for Plaintiffs
>Aaron L. Espenscheid

>/s/ John P. Elliott
>John P. Elliott

DATED: March 29, 2010