IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON L. ESPENSCHEID,
GARY IDLER and RICARDO BOLANO,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,

                           OPINION AND ORDER

                                09-cv-625-bbc

                Plaintiffs,

        v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this proposed class and collective action for monetary and injunctive relief,

plaintiffs Aaron Espenscheid, Gary Idler and Ricardo Bolano contend that defendants

DirectSat USA, LLC and UniTek, LLC violated FLSA and certain wage and overtime

compensation laws of Wisconsin, Minnesota and Pennsylvania.  Plaintiffs bring this lawsuit

as a class action on behalf of four separate classes of installation technicians employed or

formerly employed by defendants: (1) a nationwide opt-in class for violations of the Fair

Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219; (2) a Wisconsin class for violations of

Wisconsin wage and overtime compensation laws; (3) a Minnesota class for violations of Minnesota wage and overtime compensation laws; and (4) a Pennsylvania class for violations of Pennsylvania wage and overtime compensation laws.  Plaintiffs intend to pursue their state law claims under Fed. R. Civ. P. 23 in the form of opt-out classes, while simultaneously prosecuting the FLSA claims pursuant to a 29 U.S.C. § 216(b) opt-in class.

This court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 over plaintiffs' FLSA claims.  Because at least one named plaintiff and defendants are citizens of different states and more than $5,000,000 is in dispute, jurisdiction over the FLSA, Wisconsin and Minnesota state law claims is present under 28 U.S.C. § 1332(d) (commonly known as the Class Action Fairness Act of 2005).  Also, this court has supplemental jurisdiction over plaintiffs' Pennsylvania state law claims under 28 U.S.C. § 1367(a).  Now before the court is defendants' motion to transfer this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) or, alternatively, to dismiss plaintiffs' state law claims because they are precluded, preempted or incompatible with the FLSA claims and fail to state claims upon which relief may be granted, dkt. #45.  Also before the court is defendants' motion for costs and attorneys' fees pursuant to Fed. R. Civ. P. 41(d), dkt. #49.

Because I conclude that the Eastern District of Pennsylvania is not clearly more convenient and transfer would not promote the interests of justice, I am denying defendants' motion to transfer.  Also, I conclude that plaintiffs' state law class action claims are not

2

incompatible with or preempted by their federal collective action claims or preempted by the FLSA and that plaintiffs have adequately pleaded their state law class action claims pursuant to Fed. R. Civ. P. 8. Thus, I am denying defendants' motion to dismiss. Finally, I conclude that plaintiffs must pay defendants costs that defendants incurred in defending the previously dismissed Minnesota and Pennsylvania actions.

When deciding whether the moving party has made the necessary showing for a transfer, a court may rely on the allegations of the complaint and may receive and weigh affidavits submitted by the parties. Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293-94 (7th Cir. 1989). In deciding a motion to dismiss, a court should consider only the facts contained in the plaintiff's complaint. General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). Thus, for the purpose of ruling on the pending motions, I draw the following facts from the amended complaint and the declarations submitted by the parties.

FACTS

A. Allegations of Fact in Amended Complaint

Defendants DirectSat USA, LLC and UniTek USA are citizens of Delaware and Pennsylvania. DirectSat USA is a subsidiary of UniTek USA. Defendants are engaged in the satellite installation business and perform installations and make service calls throughout

the United States.  They employ more than 1,500 installation technicians who are responsible for installing, upgrading, troubleshooting and maintaining defendants' installation of DirecTV's satellite equipment.

Plaintiff Aaron Espenscheid is a citizen of Wisconsin and resides in Beaver Dam, Wisconsin.  Plaintiff Espenscheid was employed in defendant DirectSat's Madison, Wisconsin office.  Plaintiff Gary Idler is a citizen of Minnesota and plaintiff Richard Bolano is a citizen of Pennsylvania.  Plaintiffs and putative class members were employed as installation technicians.

As employees of defendants, plaintiffs and putative class members were required to drive company-owned or personally-owned vehicles to and from various job sites to perform work related to DirectSat's installation of satellite televisions for DirecTV.  Pursuant to DirectSat's national policies, plaintiffs are directed to complete their assigned jobs "with minimal overtime."  To complete their assigned installation jobs, plaintiffs are required to complete a number of other tasks, such as traveling to their assigned jobs at the beginning of the day, traveling home from their last job at the end of the day, travel to and from a customer's home to perform service work on installations that were not completed successfully, completing work activity logs, reading work-related emails, reconciling and restocking equipment, printing out and reviewing work orders and attending mandatory work meetings. In addition, defendants' employee handbook requires plaintiffs to complete

4

daily vehicle inspections, attend mandatory work meetings, fulfill training requirements and clean and maintain their vehicles and tools.  Plaintiffs routinely start work early and end work late because otherwise, they cannot complete the required number of expected jobs per day without getting "written up" under defendants' performance policies and procedures. After plaintiffs complete their work at the final job site of each day, they are permitted to drive their own or defendants' vehicles to their personal residences.  Once there, defendants' policies require plaintiffs to unload various pieces of equipment from their work related vehicles into their personal residences.  At the start of each work day, plaintiffs must reload the work equipment back into their work vehicles.

Plaintiffs and the class members are not compensated for any of their "non-productive" work activities, including, among others, driving to and from work sites, loading and unloading tools into their vehicles and cleaning their vehicles.  Instead, they are compensated under a "piece rate," or flat fee, system in which they receive a set amount of compensation for each completed service call, depending on the nature of the services provided.  The "set amount" that each class member receives is tied to a "proficiency rating." Plaintiffs and class members are assigned to specific, numerically ranked levels of seniority or proficiency within each job category, typically ranging from 1-3.  Under this system, the higher the proficiency rating for plaintiff or the class member, the higher the "set amount" for each assigned job.  To achieve a higher proficiency rating and higher rate of pay per

5

completed job, class members are encouraged to complete more jobs per day but not to records all of the time they spend completing the jobs and other tasks. This is done with defendants' supervisors' knowledge and acquiescence. As a result, plaintiffs and the putative class members are not compensated for overtime hours for productive work.

B. Additional Facts Related to Defendants' Motion to Transfer and Motion for Costs

Defendants' headquarters are located in Montgomery County, Pennsylvania, which lies within the Eastern District of Pennsylvania. Defendants developed the duties for installation technicians and the employee handbook in Montgomery County. The duties and handbook are identical across the United States. Elizabeth Downey, Dan Yannantuono and Yvette Schockman are corporate employees responsible for setting and enforcing wage and compensation policies for defendants. They are located in Montgomery County, as are all of defendants' corporate witnesses. All of defendants' official payroll records, time sheets and electronic time capture are kept in Montgomery County, Pennsylvania. Defendant DirectSat has approximately 24 field offices throughout the country, including three in Wisconsin and three in Minnesota. Each field office has employees who hold the following positions: general manager, project manager, field supervisor, project administrator and installation technicians. Managers are responsible for implementing DirectSat's policies. Field supervisors are responsible for the supervision of installers, and installers provide their

timesheets to the project administrator at each local field office.  After technicians fill out their time sheets, the sheets are scanned, faxed or sent overnight to defendants' corporate headquarters in Montgomery County, Pennsylvania.  The electronic time system is accessible to field offices only for the purpose of imputing time; thus, the electronic system is not a storage system that can be accessed remotely.  There are no personnel files stored or kept in the field offices.  All official and complete personnel files are kept in Blue Bell, Pennsylvania, including all of the new hire paperwork, benefit information, corrective action and disciplinary action.

There are approximately 5,300 current and former DirectSat employees who may constitute the FLSA national class.  There are 401 current and former Wisconsin employees in the Wisconsin wage and hour class, 437 current and former Minnesota employees in the Minnesota wage and hour class and 790 current and former Pennsylvania employees in the Pennsylvania wage and hour class.

On July 28, 2008 plaintiff Bolano commenced an action against defendants in the Eastern District of Pennsylvania captioned Moore v. DirectSat USA, LLC, Doc. No. 08-03552.  In the Moore case, Bolano asserted claims under the FLSA and Pennsylvania wage laws and sought to bring the claims on behalf of a nationwide class of installation technicians.  Defendant DirectSat filed a motion to dismiss that the court granted as to Bolano's state law claims, concluding that state wage claims cannot be brought in the same

7

action as FLSA claims.  On April 30, 2009, the court dismissed the state claims without prejudice, indicating that they could be re-filed in a separate action.  In the <u>Moore</u> action, DirectSat also answered Bolano's complaint, prosecuted a cross-claim for indemnification and engaged in written discovery.

On November 12, 2009, counsel in the <u>Moore</u> action informed the court that it did not intend to pursue a collective class action.  On November 17, 2009, plaintiff Bolano and the other named plaintiffs in <u>Moore</u> filed a motion to voluntarily dismiss their claims.  In that motion, the Pennsylvania plaintiffs sought to "[preserve] such rights as they may have to pursue as collective or class members in actions initiated by others."  Defendant DirectSat objected to the dismissal, arguing that if the Pennsylvania plaintiffs were able to re-file their action, DirectSat would have to endure "duplicative" litigation costs, and that, therefore, the plaintiffs' remaining FLSA claim should be dismissed with prejudice.  On November 30, 2009, the court granted the motion to dismiss without prejudice and with each party bearing its own costs.

Plaintiff Idler was a named plaintiff in <u>Braniff v. DirectSat USA, LLC & UniTek USA, LLC</u>, Doc. No. 09-02168 (D. Minn.), which was filed in the District of Minnesota on August 19, 2009.  In <u>Braniff</u>, Idler and the other named plaintiffs asserted FLSA and state law claims against defendants DirectSat and UniTek, and sought to represent a nationwide class of installation technicians.  Defendants did not file an answer to the complaint, no

8

written discovery was exchanged and no depositions were taken.  On October 5, 2009, defendants filed a motion to dismiss or transfer the case to the Eastern District of Pennsylvania.  On November 23, 2009, plaintiffs and defendants in <u>Braniff</u> filed a joint stipulation for dismissal without prejudice and without costs.  The court entered an order dismissing the case without prejudice or costs on November 25, 2009.

The first complaint in the present case was filed on October 13, 2009.  On February 3, 2010, plaintiffs filed an amended complaint in this case, in which plaintiffs Bolano and Idler joined, asserting claims under Pennsylvania and Minnesota wage laws respectively, and seeking to represent a nationwide class of installation technicians.

OPINION

A.  <u>Motion to Transfer under 28 U.S.C. § 1404</u>

Under 28 U.S.C. § 1404(a), a court *may* transfer a case to another district where the action may have been brought if transfer serves the convenience of the parties and witnesses and will promote the interests of justice.  28 U.S.C. §1404(a); <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-20 (7th Cir. 1986).  The parties do not deny that venue is proper in both the Western District of Wisconsin and the Eastern District of Pennsylvania. Therefore, to determine whether transfer is appropriate, I will consider the convenience of the parties and the interests of justice in the context of other considerations, such as the situs

9

of material events, ease of access to sources of proof, whether consolidation is feasible and plaintiffs' choice of forum.  Coffey, 796 F.2d at 219 n .3, 221; Kelly v. Bluegreen Corp., 2008 WL 4962672, *1 (W.D. Wis. Nov. 19, 2008).

        In support of its motion to transfer, defendants contend that these plaintiffs' choice of forum deserves no deference; that this forum is convenient only for plaintiffs' counsel; that the Eastern District of Pennsylvania provides a much more convenient forum for defendants and relevant witnesses; and that transfer to that district would serve the interests of justice because delay would be minimal and no greater than the delay plaintiffs have already caused by their procedural maneuvering in this case.  I agree with defendant that some of the relevant factors weigh in favor of transferring this case to the Eastern District of Pennsylvania.  Only one of the named plaintiffs, Espenscheid, has relevant ties to the Western District of Wisconsin and he does not actually reside in it.  Moreover, one of the named plaintiffs, Bolano, lives in Philadelphia, Pennsylvania, defendants' headquarters are located in Montgomery County, Pennsylvania and several corporate witnesses with relevant information and documents such as time sheets and personnel files are located there. Finally, because plaintiffs have brought this action in the hopes of representing a proposed national class, their choice of forum is entitled to less deference than it would be in an individual action.  Earley v. BJ's Wholesale Club, Inc., 2007 WL 1624757, *2 (S.D.N.Y. June 4, 2007) (finding in purported FLSA nationwide collective action that a "plaintiff's

choice of forum is a less significant consideration in a (here, putative) class action than in an individual action" (internal quotation omitted)); <u>Freeman v. Hoffman-La Roche, Inc.</u>, 2007 WL 895282, *3 (S.D.N.Y. Mar. 21, 2007) (same).

On the other hand, it will be more convenient for named plaintiffs Espenscheid and Idler to travel from Wisconsin and Minnesota respectively to Madison, Wisconsin than to Pennsylvania. Also, it is not clear whether Wisconsin or Pennsylvania would be more convenient for non-corporate witnesses. Plaintiffs hope to represent a national class, and they have presented evidence that approximately 40% of the putative class members reside in Wisconsin, Illinois, Indiana, Michigan, Minnesota and Missouri and are likely closer to Madison, Wisconsin than Philadelphia, Pennsylvania. Plaintiffs contend that these potential class members, as well as their local field office supervisors, may be important witnesses in the case because they know whether class members were performing work without compensation and with the acquiescence of their supervisors. The remaining class members are scattered through the country, with approximately 36% of the national class members residing in east coast states and large concentrations of class members in Pennsylvania, California, Arizona and Nevada. Because the class members are so spread out around the country, it is difficult to conclude that either Wisconsin or Philadelphia would be substantially more convenient. Thus, I cannot conclude with certainty that the convenience factor weighs strongly for or against transfer.

11

I turn to the "interest of justice" analysis.  This analysis considers whether transfer promotes "systemic integrity and fairness," Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988) and "efficient administration of the court system," including whether transfer will help avoid duplicative lawsuits, Coffey, 796 F.2d at 221, and relative congestion of the court dockets.  Heller Financial, Inc., 883 F.2d at 1293.  Both parties have presented evidence and arguments regarding the relative speed and congestion of this court and the district court for the Eastern District of Pennsylvania.  Plaintiffs contend that this court will reach a decision on "conditional certification" of the FLSA nationwide class more quickly than the Eastern District of Pennsylvania because this court has fewer cases pending by judge (555 compared to 2,616 in Pennsylvania) and a shorter median time from filing to trial (12.3 months compared to 26 months in Pennsylvania).  Plaintiffs contend that it is important to reach a decision on conditional certification without the delay that would be caused by a transfer because in FLSA collective actions, potential class members must either file an opt-in consent form in a pending action or file a separate lawsuit before the two-year statute of limitations has run in order to preserve their claims.  29 U.S.C. § 256.  Thus, plaintiffs argue, keeping the case in this court would lead to a swifter decision on conditional certification, thereby allowing potential class members an opportunity to opt in to this action before the statute of limitations runs on their respective claims and decreasing the likelihood that they would instead file their own lawsuits.  This would diminish the

12

likelihood of duplicative litigation.

The reality of the situation is that briefing is nearly complete on plaintiffs' motion for conditional certification and plaintiffs have adduced no evidence suggesting that the Eastern District of Pennsylvania would delay in making a decision on the motion or require additional briefing. Also, despite the average time between filing and trial in this court, this case is not on an expedited schedule. A trial is scheduled in this case for June 6, 2011, approximately 18 months after the filing date, not 12 months. Further, this case has already been delayed by plaintiffs' decision to file an amended complaint and seek a motion for extension of time for submitting conditional certification materials. Thus, the relative speed of the courts' dockets does not weigh heavily for or against transfer, despite the fact that this case is a proposed FLSA collective action with statute of limitation concerns.

However, I conclude that transferring this case would not promote the interests of justice because transfer would promote duplicative litigation among, at the very least, the named parties in this case. As discussed more fully in the context of defendants' motion to dismiss below, this court permits simultaneous prosecution of state law Rule 23 class actions and collective actions under §216(b) of the FLSA, while the Eastern District of Pennsylvania prohibits such "hybrid" actions. Therefore, transfer of this case would result in the dismissal of the state wage and hour claim in Pennsylvania and the subsequent refiling of such claims in Wisconsin, Minnesota and Pennsylvania courts, an obvious waste of the courts' and

13

parties' resources.  Further, requiring the parties to litigate similar claims in different courts could cause confusion to potential class members.  Such inefficiencies do not promote the interests of justice

Upon weighing these factors, I conclude that transfer is inappropriate.  Although the Eastern District of Pennsylvania may be a more convenient forum for defendants and some potential class members, the Western District of Wisconsin is more convenient for two of the named plaintiffs and a large percentage of potential class members.  More important, transfer would require the unnecessary dismissal and re-filing of multiple lawsuits in multiple forums.   Therefore, defendant's motion to transfer will be denied.

B.  <u>Motion to Dismiss State Law Claims</u>

Defendants have moved to dismiss plaintiffs' state law claims, contending that plaintiffs should not be allowed to maintain a representative action involving both federal and state law wage claims because (1) the FLSA preempts the state law claims; (2) the procedural differences between the two types of claims make them incompatible; and (3) asserting the two types of claims violates the Rules Enabling Act.  The federal claims are governed by 29 U.S.C. § 216(b), which requires each plaintiff to file a consent with the court to become part of the suit (plaintiffs must "opt in"); the state law claims are governed by Fed. R. Civ. P. 23, which makes each class member who receives notice a plaintiff unless he

14

or she objects expressly (plaintiffs must "opt out").  Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004).

Defendants' first argument is that plaintiffs' state law claims are preempted by the FLSA on an "obstacle," or implied conflict preemption theory.   Under this theory, preemption exists when, under the circumstances of a particular case, the state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives' of Congress."  520 South Michigan Ave. Associates, Ltd. v. Shannon, 549 F.3d 1119, 1125 (7th Cir. 2008) (quoting Livadas v. Bradshaw, 512 U.S. 107, 120 (1994)).  A state law is preempted "if it interferes with the methods by which the federal statute was designed to reach this goal."  International Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987).  Thus, "[w]here a state statute conflicts with, or frustrates, federal law, the former must give way." CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 663 (1993).  The Supreme Court has stated that "the mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies."  English v. General Electric Co., 496 U.S. 72, 87 (1990).  Courts must look for "special features warranting preemption," id., such as the provision of exclusive remedies for enforcing rights expressly guaranteed by the federal statute, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990).

Defendants contend that plaintiffs' state claims are preempted because the FLSA provides exclusive remedies for violations of its mandates.  Thus, defendants contend that

15

because plaintiffs' state law claims are grounded on the same factual and legal predicate as their FLSA claims, the remedies, procedures and other enforcement mechanisms that Congress established in the FLSA would be obstructed if plaintiffs were allowed to seek state remedies for the same employer conduct.

Whether federal law preempts state law is a question of congressional intent. English, 496 U.S. at 78-79. Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA mandates that covered workers be paid a minimum wage and receive overtime compensation. Id. at §§ 206, 207. The FLSA was not intended to completely override the states' traditional role in protecting the health and safety of their working citizens, as demonstrated by the FLSA's "savings clause," 29 U.S.C. § 218(a), which expressly allows states to provide workers more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself. 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . .").

The FLSA's enforcement scheme includes the provision of criminal penalties for willful violations, the designation of the Secretary of Labor to supervise payment of unpaid

16

wages due and to bring actions for unpaid wages, liquidated damages and injunctive relief and authorization for workers to file private actions to recover unpaid wages, liquidated damages, costs and attorney fees.  29 U.S.C. §§ 215-217.  Defendants contend that the remedies provided in the FLSA are the exclusive remedies for violations of its mandates, and cites several cases to support this contention.  E.g., Anderson v. Sara Lee Corp., 508 F.3d 181, 193-94 (4th Cir. 2007) (holding that FLSA preempts state law remedies for violations of FLSA requirements); Roman v. Maietta Construction, Inc., 147 F.3d 71, 76 (1st Cir. 1998); Lopez v. Flight Services & Systems, Inc., 2008 WL 203028, at *5, 7 (W.D.N.Y. Jan 23, 2008); Choimbol v. Fairfield Resorts, Inc., 2006 WL 2631791, at *4-6 (E.D. Va. Sept. 11, 2006).  Though it is a popular question among district courts right now, the Court of Appeals for the Seventh Circuit has not considered whether the FLSA preempts state wage law claims.  However, several courts, including this one, have rejected the argument asserted by defendants, concluding that the FLSA does not preempt state law claims for wages and overtime compensation.  E.g., Avery v. City of Talladega, Ala., 24 F.3d 1337, 1348 (11th Cir. 1994) (allowing claim for breach of contract coterminous with FLSA claim); Guzman v. VLM, 2008 WL 597186, at *10 (E.D.N.Y. March 2, 2008); Thorpe v. Abbott Laboratories, Inc., 534 F. Supp. 2d 1120, 1124 (N.D. Cal. 2008); Sjoblom v. Charter Communications, LLC, 2007 WL 4560541, at *5-6 (W.D. Wis. Dec. 19, 2007).

I am persuaded by the reasoning by the courts concluding that the FLSA does not

17

preempt state wage law claims.  Although the FLSA savings clause does not specifically refer to remedies, the savings clause indicates that Congress did not intend to foreclose states from providing alternative remedies for violations of wage and overtime laws.  Thus, although some courts, such as the court of appeals in <u>Anderson</u>, 508 F.3d at 193, have focused on the fact that the FLSA does not "explicitly authorize states to create alternative remedies for FLSA violations," it is also true that the FLSA does not explicitly forbid states from doing so.  In light of the savings clause, the better conclusion is that the FLSA does not provide the exclusive remedy for violations of its mandates.  <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 564 F. Supp. 2d 870, 884 (N.D. Iowa 2008) (holding that because the FLSA allows states to provide greater rights to its citizens, state wage claims are not preempted by FLSA); <u>see also</u> <u>Klein v. Ryan Beck Holdings, Inc.</u>, 2007 WL 2059828, *5-6 (S.D.N.Y. July 20, 2007) (FLSA "does not guarantee that employers will never face traditional class actions pursuant to state employment law."); <u>McLaughlin v. Liberty Mutual Insurance Co.</u>, 224 F.R.D. 304, 308 (D. Mass. 2004) ("Nothing in the [FLSA] limits available remedies under state law.")  Because the FLSA does not provide the exclusive remedy for its violations, enforcing plaintiffs' state law claims does not "interfere" or "conflict" with, "frustrate" or "stand as an obstacle" to the goals of the FLSA, namely, to eliminate unhealthy and unsafe labor conditions.   It may be true that proving plaintiffs' state law claims will also establish an FLSA violation.  However, under a conflict preemption analysis, this duplication does not

18

mean that plaintiffs' state law claims are preempted by the FLSA.

Defendants' second argument is that the opt-out procedure of Rule 23 interferes irreconcilably with the opt-in procedure of § 216(b).  Thus, defendants contend, allowing both state and federal wage claims to proceed in the same action creates a situation in which unnamed plaintiffs who do not opt in to the FLSA collective action may have their FLSA rights adjudicated under the guise of state law in direct contravention of their federally established right not to take part in the § 216(b) collective action.  In other words, adjudication of state claims in an opt-out class could have collateral estoppel and res judicata effects on unnamed class members who try to bring FLSA claims later.  Some appellate and district courts have agreed with defendants' argument.  E.g., De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 310 (3d Cir. 2003); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 70-71 (E.D. Pa. 2009); Burkhart-Deal v. Citifinancial, Inc., 2008 WL 2357735, at *2 (W.D. Pa. June 5, 2008); Warner v. Orleans Home Builders, Inc., 550 F. Supp. 2d 583, 588 (E.D. Pa. 2008); Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 451-52 (W.D. Pa. 2007). As with the preemption issue discussed above, the Court of Appeals for the Seventh Circuit has not yet determined whether a representative action involving both federal and state law wage claims may proceed.  In fact, there is a split among district judges throughout the Seventh Circuit on the issue.  Compare, e.g.,Musch v. Domtar Industries, Inc., 252 F.R.D. 456, 463 (W.D. Wis. 2008) (certifying FLSA collective action and Rule 23 class of state

19

wage claims), <u>Jonites v. Exelon Corp.</u>, 2006 WL 2873198, *2-6 (N.D. Ill. Oct. 4, 2006) (certifying FLSA collective action and Rule 23 class of Illinois state claims), <u>and</u> <u>Ladegaard v. Hard Rock Concrete Cutters, Inc.</u>, 2000 WL 1774091, *7-8 (N.D. Ill. Dec. 1, 2000) (same), <u>with</u> <u>Ervin v. OS Restaurant Services, Inc.</u>, 2009 WL 1904544, *2-3 (N.D. Ill. July 1, 2009) (holding Rule 23 and FLSA collection actions incompatible), <u>Riddle v. National Security Agency, Inc.</u>, 2007 WL 2746597, *3 (N.D. Ill. Sept. 13, 2007) (certifying FLSA collective action but denying class certification of Illinois law claims), <u>and</u> <u>McClain v. Leona's Pizzeria, Inc.</u>, 222 F.R.D. 574, 677 (N.D. Ill, 2004) (holding that Rule 23 state law class would be incompatible with FLSA collective action).

Defendants' incompatibility argument is a familiar one in this district and has been rejected numerous times by this court, as well as other courts.  <u>Spoerle v. Kraft Foods Global, Inc.</u>, 253 F.R.D. 434, 438 (W.D. Wis. 2008); <u>Sjoblom,</u> 2007 WL 4560541, at *3-5; <u>see also</u> <u>Perkins v. Southern New England Telephone Co.</u>, 2009 WL 350604, at *3 (D. Conn. Feb. 12, 2009) (holding that FLSA opt-in collective action and state wage law class action can coexist); <u>Esparza v. Two Jinn, Inc.</u>, 2009 WL 2912657, at *3 (C.D. Cal. Sept. 9, 2009) (same); <u>Osby v. Citigroup, Inc.</u>, 2008 WL 2074102, *2-3 (W.D. Mo. May 14, 2008) (same); <u>Salazar v. Agriprocessors, Inc.</u>, 527 F. Supp. 2d 873, 880-86 (N.D. Iowa 2007) (same).

I will adhere to the position I adopted in <u>Sjoblom</u> and <u>Spoerle</u> because as I explained

20

in those cases, it makes little sense from the standpoint of judicial economy to require separate causes of action for two sets of nearly identical claims, especially when a court has independent jurisdiction under the Class Action Fairness Act. Spoerle, 253 F.R.D. at 438. Also, allowing a state opt-out class to proceed alongside an FLSA opt-in class is not impermissible under the language of the FLSA. Sjoblom, 2007 WL 4560541, at 5-6. In enacting the opt-in requirement of § 216(b), Congress sought to limit the scope of collective actions under federal law. However, nothing in the statute addresses state wage law claims, such as whether federal courts may exercise supplemental jurisdiction over them or whether federal courts may certify them as class actions. By its plain terms, § 216(b) does not apply to state wage law claims and does not indicate that Congress was attempting to exercise the complete or exclusive regulation of the payment of employees' wages to the exclusion of state law remedies. As discussed above, Congress did not intend to override the states' traditional role in protecting the health and safety of their citizens, as demonstrated by the FLSA's "savings clause," 29 U.S.C. § 218(a). An opt-out class under Rule 23 is the federal procedure usually applicable to claims seeking monetary relief on behalf of similarly situated individuals, and there is simply no basis for inferring that the FLSA modifies this procedure for any claims other than those brought pursuant to its provisions.

Further, I am not persuaded by defendants' concern that principles of res judicata could lead an absent Rule 23 class member's FLSA claim to be adjudicated even though the

21

class member did not opt in to the FLSA collective action.   Defendants contend that this concern is real and advises against proceeding with FLSA and state wage claims in the same action.   However, principles of res judicata apply to any class action, whether it is a pure Rule 23 state law class action or one containing a simultaneous FLSA claim.   If this res judicata possibility prevents a Rule 23 class action from being brought in a case in which an FLSA claim is brought simultaneously with a state law claim, it would also prevent Rule 23 class actions (or state opt-out actions) in cases in which FLSA claims could have been asserted based on the same set of facts, even if they were not made in fact.   As discussed above, I do not interpret 29 U.S.C. § 216(b) to sweep so broadly.

Finally, the plain text of 28 U.S.C. § 1367, providing for federal courts' exercise of supplemental jurisdiction over state law claims, indicates that Congress intended state law claims to go forward with federal law claims when the claims involved are sufficiently related. Perkins, 2009 WL 350604, at *3.   The parties agree that plaintiffs' state and federal claims are closely related.   Thus, they are exactly the types of claims that Congress intended to be brought in the same case.   Of course, plaintiffs must still meet the requirements for collective action and class action certification.   If they do, the court will take up the challenges inherent in maintaining both actions in one suit.   The inherent challenges, however, are not a reason to deny, dismiss or limit plaintiffs' state law claims.   After all, plaintiffs would still be in the same opt-in versus opt-out predicament even if they brought their state law claims

22

in another court or action.

Defendants' final argument is that the inherent conflict between § 216(b) and Rule 23 violates the Rules Enabling Act, 28 U.S.C. § 2072(b).  The Rules Enabling Act prohibits a court from applying a rule of practice and procedure where such application would have the effect of "abridg[ing], enlarg[ing] or modify[ing] any substantive right."  Rule 23 is a procedural rule.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 612-13 (1997) (treating Rule 23 as a rule of procedure under the Rules Enabling Act).  Defendants contend that § 216(b) creates substantive rights, including an employee's right to have his or her FLSA claims litigated only with his or her express written consent, and the right of an employer to not face burdensome representative actions.  Defendants contend that by proceeding with state and federal collective actions at the same time, Rule 23 abridges the substantive rights created by § 216(b) because once the state law claims are adjudicated, res judicata will bar any further litigation by those individuals seeking to assert FLSA claims.

I rejected a similar argument grounded on the Rules Enabling Act in Sjoblom, 2007 WL 4560541, *5-6.  The reason this argument is unpersuasive is that it relies on the somewhat counter-intuitive proposition that although the opt-out requirement of Rule 23 is "procedural," the opt-in requirement of the FLSA is "substantive," and that therefore the Rules Enabling Act requires the former to yield to the latter.  It is "more natural to see the opt-in provisions of the FLSA, like the class action rules they resemble, simply as procedural

23

mechanisms for vindication of the substantive rights provided by the FLSA." <u>Damassia v.</u>
<u>Duane Reade, Inc.</u>, 250 F.R.D. 152, 164-65 (S.D.N.Y. 2008) (holding that the opt-in
procedures of FLSA are procedural, not substantive); <u>Sjoblom</u>, 2007 WL 4560541, at *5-6
(concluding that the opt-in provisions of § 216(b) are not clearly substantive; <u>Westerfield</u>
<u>v. Washington Mutual Bank</u>, 2007 WL 2162989, at *1 (E.D.N.Y. July 26, 2007) ("Section
216(b) by its terms governs procedural rights.").   In any event, I have also concluded
previously that "[e]ven if the right to opt in is substantive, that right is not modified or
abridged in any way by permitting a state law opt-out class to proceed alongside the federal
opt-in collective action in the same case." <u>Sjoblom</u>, 2007 WL 4560541, at *6.  This is
because the right conferred on an employee by the § 216(b) opt-in requirement is the right
not to "be a party plaintiff to [an FLSA collective] action unless he gives his consent in
writing to become such a party." 29 U.S.C. § 216(b).  The certification of a Rule 23 class
does not affect an employee's ability to opt in or not to an FLSA collective action.  Thus,
such certification does not "abridge, enlarge or modify" the rights conferred by the FLSA,
whether those rights are substantive or procedural.  <u>Damassia</u>, 250 F.R.D. at 164; <u>see also</u>
<u>Guzman</u>, 2008 WL 597186, at *10 (rejecting argument that Rules Enabling Act precludes
class action for state law wage claim); <u>Klein</u>, 2007 WL 2059828, at *6 (same).  Similarly,
the right conferred on an employer by the opt-in requirement is not the expansive right to
be free of the burden of representative actions generally, but rather, the right to be free of

24

the burden of representative actions specifically for violations of the FLSA. Klein, 2007 WL 2059828, at *6 ("The FLSA guarantees merely that all collective actions brought *pursuant to it* be affirmatively opted into. It does not guarantee that employers will never face traditional class actions pursuant to state employment law.") (emphasis in original). By its own terms, the FLSA opt-in requirement does not confer rights on employers of employees with respect to the manner of litigation of state law wage claims. Accordingly, the Rules Enabling Act presents no barrier to proceeding with both claims in this action.

For these reasons, I conclude that plaintiffs may maintain federal and state law wage claims in the same lawsuit.

### C. Motion to Dismiss for Failure to State a Claim

In addition to the arguments asserted above, defendants contend that plaintiffs' claims under the Pennsylvania Wage Payment and Collective Law (WPCL) and the Minnesota wage law must be dismissed because plaintiffs have failed to state a claim upon which relief can be granted. With respect to plaintiffs' Minnesota FLSA claim, defendants contend that plaintiffs have pleaded no facts to support their bathroom and meal break claims. Under MFLSA § 177.253, all employees must receive "adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom." Similarly, under § 177.254, employers "must permit each employee who is working for eight

25

or more consecutive hours sufficient time to eat a meal." Defendants contend that "[t]here are a total of zero factual allegations" to support plaintiffs' claims under these provisions. Dfts.' Br., dkt. #46 at 34. However, plaintiffs allege in their amended complaint that defendants "fail[ed] to allow plaintiffs to take their allowed rest and/or meal breaks." Dkt. #39, at 21. This is sufficient to state a claim under § 177.253 and § 177.254.

With respect to plaintiffs' Pennsylvania WPCL claim, defendants contend that plaintiffs have failed to plead the existence of an agreement under which they are entitled to wages. The Pennsylvania WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." Signora v. Liberty Travel, Inc., 886 A.2d 284, 296 (Pa. Super. Ct. 2005). Thus, the existence of a contract is "the predicate for the WPCL action." De Asencio, 342 F.3d at 305. Defendants contend that because plaintiffs do not allege in their amended complaint that they, or any member of the proposed class, are owed unpaid compensation under any express or implied contract with defendants, plaintiffs cannot establish their right to relief.

Under Fed. R. Civ. P. 8, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the "notice pleading" of Rule 8 does not require "detailed factual allegations" supporting each element of a claim, it is not enough for a pleader to make "[t]hreadbare recitals of the elements of a cause of

26

action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).  The pleader must provide specific allegations that, if true, make plaintiff's claim for relief more than speculative, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), which means it must be more than speculative to believe that additional discovery will establish each element of a claim.  <u>Riley v. Vilsack</u>, 665 F. Supp. 2d 994, 1004 (W.D. Wis. 2009).  In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, the court should construe all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiffs' favor.  <u>Savory v. Lyons</u>, 469 F.3d 667, 670 (7th Cir. 2006).

I disagree with defendants that plaintiffs have not pleaded sufficient facts to make their claim for relief plausible.  Plaintiffs allege that the putative class members have or had an employment relationship with defendants, that class members completed work on behalf of defendants that was an indispensable part of their employment, that class members were compensated or not compensated according to policies and practices of defendants and that class members are subject to defendants' employee handbook.  Such allegations are sufficient to allow a reasonable inference to be drawn that there was an employment contract between plaintiffs and defendants and that additional discovery will establish the required elements of plaintiffs' WPCL claims.  <u>Engstrom v. John Nuveen & Co.</u>, 668 F. Supp. 953, 957 (E.D. Pa. 1987) ("[E]very employment relationship is a contractual relationship."); <u>Miles v. G. C.</u>

27

Murphy Co. Inc., 48 Pa. D. & C.3d 151, 158 (Pa. Comm. Pl. 1988) (same).  Thus, plaintiffs' amended complaint provides adequate notice to defendants of the WPCL claims and will not be dismissed.

D.  Motion for Costs and Attorneys' Fees Pursuant to Fed. R. Civ. P. 41(d)

Defendants contend that because plaintiff Bolano and other named plaintiffs voluntarily dismissed a Pennsylvania action that asserted the same claims as those raised in this action, defendants are entitled to costs and fees incurred in defending the claims in the Pennsylvania case.  Moore v. DirectSat USA, LLC, Doc. No. 08-03552 (E.D. Pa.).  These costs include those incurred in the preparation of defendants' motion to dismiss, answer, cross-claim and in written discovery.  Similarly, defendants contend that because plaintiff Idler and other named plaintiffs voluntarily dismissed a Minnesota action that asserted the same claims as those raised in this action, Braniff v. DirectSat USA, LLC & UniTek USA, LLC, Doc. No. 09-02168, defendants are entitled to fees and costs spent in preparing a motion to dismiss or transfer in that case.

Fed. R. Civ. P. 41(d) provides:

COSTS OF A PREVIOUSLY DISMISSED ACTION.  If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and

28

(2) may stay the proceedings until the plaintiff has complied.

Under the language of Rule 41(d), the decision whether to impose costs is solely within the discretion of the trial court.  However, a court may not award attorneys fees as part of its costs under Rule 41(d) unless the substantive statute that formed the basis of the original suit allows for the recovery of such fees as costs or the court finds that the plaintiff acted in bad faith.  Esposito v. Piatrowski, 223 F.3d 497, 500 n.5, 501 (7th Cir. 2000).  The purpose of Rule 41(d) is to prevent forum shopping and vexatious litigation by requiring plaintiffs to shoulder the costs incurred by a defendant defending against the previously filed action.  Id. at 501.

In response to defendants' motion for costs, plaintiffs assert several arguments, none of which are persuasive.  First, plaintiffs contend that defendants are not entitled to fees or costs under Rule 41(d) because this action was pending at the time the Moore and Braniff actions were dismissed.  This argument is disingenuous.  Although the initial complaint in this case preceded dismissal of the Moore and Braniff actions, plaintiffs Idler and Bolano did not join in and assert their Minnesota and Pennsylvania claims until they had dismissed their previous actions and plaintiffs had filed a superseding amended complaint.

Plaintiffs also argue that costs should not be awarded because the Minnesota and Pennsylvania cases were dismissed explicitly without prejudice and costs.  Whether the previous cases were dismissed without prejudice and costs is irrelevant to a Rule 41(d)

29

analysis.  If the cases had been dismissed with prejudice and costs, Rule 41(d) would be unnecessary.  Although the Minnesota and Pennsylvania courts were in the position to determine the terms of the dismissals, they had no occasion to consider an after-judgment refiling in another court.

Finally, plaintiffs argue that plaintiffs Bolano and Idler had good reasons for the dismissal of the Minnesota and Pennsylvania actions.  With respect to plaintiff Bolano, his state law claims had been dismissed without prejudice (the court specifically held that plaintiffs could refile the state claims as a separate action), and his attorney had informed the court that he was not going to file a motion for conditional certification of the FLSA claim.  By dismissing the Pennsylvania claim and joining this action, plaintiff Bolano is able to assert all of his claims in one action, including the claims that he was specifically allowed to refile, with counsel who have agreed to represent national and state classes.  Similarly, plaintiff Idler dismissed the Minnesota action after defendants filed a motion to transfer that case to Pennsylvania, where Idler would not have been able to assert his state law claims.  By dismissing the Minnesota action and joining this action, Idler is able to assert all of his claims in one forum.  Plaintiffs contend that their good reasons for the actions they took show that they did not act in bad faith and were not seeking to cause vexatious litigation by voluntarily dismissing their previous actions.

Neither Rule 41(d) or the relevant case law requires a defendant to show bad faith

30

on the part of the plaintiff to recover costs, as the district court pointed out in <u>Esquivel v.</u>
<u>Arau</u>, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996).  However, some courts have held it
permissible to take into consideration the circumstances of the case, including plaintiffs'
motive in dismissing the prior action and whether costs are necessary to prevent prejudice
to defendants.  <u>E.g.</u>, <u>id.</u>, <u>Wason Ranch Corp. v. Hecla Mining Co.</u>, 2008 WL 906110, at *17
(D. Colo. Mar. 31, 2008) (declining to award costs under 41(d) where plaintiff's motive for
dismissing prior action was to cure procedural defect in notice of intent to sue); <u>Loubier v.</u>
<u>Modern Acoustics, Inc.</u>, 178 F.R.D. 17, 22 (D. Conn. 1998); <u>Heckett v. Proctor & Gamble</u>
<u>Co.</u>, 2008 WL 538444, at *3 (S.D. Cal. Feb. 27, 2008).

Defendants characterize plaintiffs' motives for dismissing their previous actions and
refiling in this court as forum shopping.  It is not unlikely that plaintiff Idler was motivated
to avoid a transfer to Pennsylvania and subsequent dismissal of any state law claims.
Similarly, plaintiff Bolano had suffered a legal setback in Pennsylvania because his state law
claims had been dismissed.  By dismissing the Pennsylvania action, he was able to refile all
of his claims in this court.  Plaintiffs' choices have consolidated what could have been three
or four actions in different courts and states into one action.  Although this could be
characterized as promoting judicial efficiency, I agree with defendants that it is also an
attempt to gain a tactical advantage by dismissing and refiling suit.  Such motivations are
precisely what Rule 41(d) seeks to deter.  <u>Rogers v. Wal-Mart Stores, Inc.</u>, 230 F.3d 868,

874 (6th Cir. 2000) ("Rule 41(d) is also intended to prevent attempts to gain any tactical advantage by dismissing and refiling the suit.") (internal quotations omitted); see also Siepel v. Bank of America, N.A., 239 F.R.D. 558, 564 (E.D. Mo. 2006) (imposing costs where plaintiffs had filed numerous cases and then voluntarily dismissed them in order to avoid court-imposed deadlines and unfavorable rulings).  Under these circumstances, I conclude that plaintiffs should be required to pay defendants' costs for the previous Pennsylvania and Minnesota actions.  However, defendants are not entitled to attorney fees because none of the laws on which plaintiffs' claims are based authorize an award of attorney fees to a prevailing defendant and there is no evidence that plaintiffs' claims are frivolous or that they were brought in bad faith.  Esposito, 223 F.3d at 501.  Defendants may have until April 19, 2010 to submit evidence establishing the costs incurred in defending the Minnesota and Pennsylvania actions.  Plaintiffs may have until April 26, 2010 to file any objections. Finally, because this is a proposed collective action with statute of limitations concerns and briefing is nearly complete on plaintiffs' motion for conditional certification, I will not stay the case pending plaintiffs' payment of costs.


ORDER

IT IS ORDERED that

1.  The motion to dismiss or transfer, dkt. #45, filed by defendants DirectSat USA,

LLC and UniTek, LLC is DENIED.

2.  Defendants' motion for costs and fees pursuant to Fed. R. Civ. P. 41(d), dkt. #49, is GRANTED.  Defendants may have until April 19, 2010 to submit evidence establishing the costs incurred in defending the Minnesota and Pennsylvania actions.  Plaintiffs may have until April 26, 2010 to file any objections.

Entered this 12th day of April, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge