IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON L. ESPENSCHEID,
GARY IDLER and MICHAEL CLAY,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,

OPINION AND ORDER

09-cv-625-bbc

Plaintiffs,

v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary and injunctive relief under the Fair Labor Standards

Act (FLSA), 29 U.S.C. §§ 201-219, and wage and overtime compensation laws of Wisconsin,

Minnesota and Pennsylvania.  Plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay

contend that defendants DirectSat USA, LLC and UniTek, LLC violated the FLSA and state

law by not compensating them for certain activities related to their jobs as installation

1

technicians.[1]  Defendants deny that they violated federal and state wage and overtime compensation laws, assert thirty-four affirmative defenses and have filed three counterclaims against named plaintiffs and opt-in plaintiffs for misrepresentation, unjust enrichment and detrimental reliance.   On June 4, 2010, I granted plaintiffs' motion for conditional certification of an FLSA nationwide class of installation technicians, but stayed a decision on the final form of the notice that will be distributed to putative class members because the parties dispute whether potential opt-in plaintiffs should receive notice of defendants' counterclaims and plaintiffs had filed a motion to dismiss defendants' counterclaims that could moot the issue.  Now that the parties have completed briefing on plaintiffs' motion to dismiss I can rule on the motion and the final form of the notice.

Although it might appear at first that defendants' counterclaims relate to the claims plaintiffs assert in this lawsuit and should be resolved in it, a closer looks shows a number of reasons why the counterclaims should not be made a part of this suit.  As state law claims, their resolution will involve consideration of state law and, given the number of potential plaintiffs and their geographic diversity, there could be a number of different state laws at issue.   Keeping these claims in the suit will complicate its resolution, without any

---

[1]  Although Espenscheid, Idler and Clay are counterclaim defendants in the context of this motion, I will continue to refer to them as "plaintiffs" and putative class members as opt-in plaintiffs and I will continue to refer to DirectSat and UniTek as "defendants."

concomitant advantage. In effect, the counterclaims would predominate over plaintiffs' claims within the meaning of 28 U.S.C. § 1367 if allowed to proceed in the same lawsuit. Defendants will still be able to put the plaintiffs to their proof that they have been injured in fact by defendants' alleged violation of the Fair Labor Standards Act, but they will not be allowed to take over the litigation. I decline to exercise supplemental jurisdiction over the counterclaims and, accordingly, will grant plaintiffs' motion to dismiss.

For the purpose of deciding this motion, I find that defendants have fairly alleged the following allegations of fact.

ALLEGATIONS OF FACT

Plaintiffs are current and former installation technicians who worked for DirectSat installing satellite television service. DirectSat used a job rate formula to pay plaintiffs for the work they performed. The job rate formula compensates installation technicians for the number of installations and other jobs performed during a given week and pays a higher rate to installation technicians who demonstrate efficiency.

Installation technicians are classified into three or more levels on the basis of their respective experience, performance and efficiency, among other things. The job rate assigned to each discrete job varies, depending on an installation technician's respective level. The higher the level, the greater amount of money for the job that technician receives.

3

Installation technicians who are more efficient receive more jobs each week than inefficient installation technicians, which increases the total amount of pay for each two-week pay period. At the end of each week, the value of the jobs performed is aggregated to determine the technician's production value for the week.

For payroll and benefit purposes, all of DirectSat's installation technicians, including plaintiffs, are required to record the actual time they work. DirectSat instructs all installation technicians, including plaintiffs, to record the actual time worked and tells them that the time worked includes the time they begin work and end work and all time in between.

DirectSat's installation technicians are responsible for submitting time sheets and for insuring that the information provided on their timesheets is recorded accurately and honestly. After submitting the weekly time-sheets to their field offices, project administrators at the respective field offices input the time reported by plaintiffs into DirectSat's internal time-accounting program. Every two weeks, after the project administrators input each installation technician's time for a given week, the hours for the particular field office and for all installation technicians working at the particular field office are released to UniTek Global Services' Payroll Department, which performs the final payroll functions for DirectSat.

The payroll department reviews the number of hours that installation technicians

4

purport to work and the total amount of production that each such individual accumulated during the particular pay period and determines each employee's effective hourly rate. To calculate the effective hourly rate, the payroll department takes the production value for each week and divides that value by the total number of hours worked during a given week as reported by all installation technicians. In addition to determining each installation technician's pay for a particular pay period, the effective hourly rate also provides DirectSat evidence of each installation technician's efficiency.

In a declaration, dkt. #76, ¶ 15, plaintiff Espenscheid admits that he underreported the number of hours he worked each week on his weekly time sheets in order to appear more efficient and asserts that other technicians also underreported their hours. Espenscheid also asserts that other technicians are "similarly situated" to him. By appearing more efficient than they actually were, Espenscheid and the opt-in plaintiffs were promoted to higher technician levels and paid higher job rates than they would have been if all their hours worked were accurately reported. Also, plaintiffs were assigned to work and were paid for jobs to which they would not otherwise have been assigned.

OPINION

Defendants DirectSat and UniTek assert claims for misrepresentation, unjust enrichment and detrimental reliance against the named plaintiffs and any plaintiffs who opt

5

in to the FLSA collective action, contending that plaintiffs made false, fraudulent, negligent and reckless statements of material fact by submitting weekly time sheets that contained false and incorrect representations of the time they actually worked and that defendants relied on the time sheets to pay plaintiffs higher and additional wages than they were entitled. Plaintiffs contend that the counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367(c) because they will predominate over the FLSA collective action and state claims, that the counterclaims do not satisfy Fed. R. Civ. P. 8(a) or Fed. R. Civ. P. 9(b) and that they were filed for a retaliatory purpose, hoping to discourage potential opt-in plaintiffs from joining the lawsuit. In response, defendants contend that their claims satisfy the pleading requirements of Rule 8 and Rule 9. They deny that they filed their counterclaims to retaliate against opt-in plaintiffs, saying that the claims are compulsory under Fed. R. Civ. P. 13(a), which provides that a claim is compulsory (and thus cannot be raised in future proceedings) if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Because I agree with plaintiffs that defendants' counterclaims will likely overwhelm plaintiffs' claims and will undermine the purpose and benefits of an FLSA collective action, I am declining to exercise supplemental jurisdiction over defendants' counterclaims. Thus, it is unnecessary to decide whether defendants' claims satisfy the requirements of Rule 8 and Rule 9.

A.  Supplemental Jurisdiction over Defendants' Counterclaims

This court has jurisdiction over plaintiffs' FLSA claim pursuant to federal-question jurisdiction under 28 U.S.C. § 1331.  Defendants' counterclaims, however, arise under state law.  In determining whether jurisdiction exists over counterclaims, the majority of courts decide first whether the counterclaim is permissive or compulsory within the definition of Rule 13.  Wright, Miller & Kane, Federal Practice & Procedure, § 1414, at 116-17 (2010); e.g., Markbreiter v. Barry L. Feinberg, M.D., P.C., 2010 WL 334887, *1-2 (S.D.N.Y. Jan. 29, 2010); Goings v. Advanced Systems, Inc. v. Suncoast, 2008 WL 4195889, *2-3 (M.D. Fla. Sept. 12, 2008); Willams v. Long, 558 F. Supp. 2d 601, 603 (D. Md. 2008).  If the counterclaim is compulsory under Rule 13, courts usually conclude that it falls under the purview of the supplemental jurisdiction statute, 28 U.S.C. § 1367, and that they should exercise jurisdiction over it because the counterclaim-plaintiff may otherwise lose the opportunity to be heard on that claim.  Baker v. Gold Seal Liquors, 417 U.S. 467, 469 n. 1 (1974); see also Zambrana v. Geminis Envios Corp., 2008 WL 2397624, *3, n. 2. (S.D. Fla. June 10, 2008).  However, if the counterclaim is merely permissive, it does not fall within the scope of supplemental jurisdiction and must have an independent basis for jurisdiction.  Wright, Miller & Kane, § 1422, at 202; e.g., Cortes v. Distribuidora Monterrey Corp., 2008 WL 5203719, *1-2 (N.D. Tex. Dec. 11, 2008) (citing Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357, 1359-60 (5th Cir. 1979).

7

However, the Court of Appeals for the Seventh Circuit has instructed district courts to apply 28 U.S.C. § 1367 to determine whether they have jurisdiction over counterclaims, regardless whether the counterclaims are compulsory or permissive.  Channell v. Citicorp National Services, Inc., 89 F.3d 379, 384-86 (7th Cir. 1996); Rothman v. Emory University, 123 F.3d 446, 454 (7th Cir. 1997); Leipzig v. AIG Life Insurance Co., 362 F.3d 406, 410 (7th Cir. 2004) (dictum); Spaulding Moving & Storage, Inc. v. National Forwarding Co., Inc., 2008 WL 781929, *2 (N.D. Ill. Mar. 20, 2008).  28 U.S.C. § 1367(a) provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(a)'s requirement that the counterclaim be so related to the original complaint that they form the same case or controversy may be satisfied even by a "loose factual connection between the claims," so long as the complaint and counterclaim derive from the same common nucleus of operative facts.  Sanchez & Daniels v. Koresko, 503 F.3d 610, 614 (7th Cir. 2007) (internal quotations omitted); Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995).

I agree with defendants that their counterclaims are part of the same case or controversy as plaintiffs' FLSA claims.  Plaintiffs contend that they performed work for which they were not compensated, while defendants contend that plaintiffs were over-

8

compensated for the same work.  This factual connection is enough to support the exercise

of supplemental jurisdiction under § 1367(a).  However, even where the requirements of §

1367(a) are met, a court may decline supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); Channell, 89 F.3d at 386; Murphy v. Florida Keys Electric Cooperative

Association, Inc., 329 F.3d 1311, 1320 (11th Cir. 2003) (affirming district court's dismissal

of counterclaims under 28 U.S.C. § 1367(c)(3)); Tops Markets, Inc. v. Quality Markets,

Inc., 142 F.3d 90, 103 (2d Cir. 1998) (same); Robledo v. City of Chicago, 252 F.R.D. 639,

641 (N.D. Ill. 2008) (dismissing counterclaims under § 1367(c)(2) and (4)); Sparrow v.

Mazda American Credit, 385 F. Supp. 2d 1063, 1070-71 (E.D. Cal. 2005) (dismissing

counterclaim under § 1367(c)(4)); Wright, Miller & Kane, Federal Practice & Procedure,

vol. 6, ch. 4, § 1414, at 118-19 (2010) ("[U]nder the supplemental-jurisdiction statute the

court has discretion to decline jurisdiction in certain circumstances, such as if the

counterclaim substantially predominates over the main claim.").  Two of these exceptions

apply in this case.

     First, defendants' counterclaims will substantially predominate over plaintiffs' claims.

28 U.S.C. § 1367(c)(2).  Defendants have filed counterclaims against the named plaintiffs

and each plaintiff who opts in to the collection action. Although it is impossible to know at this point the exact number of plaintiffs who will opt in to the FLSA nationwide class, the putative class includes more than 5,000 current or former installation technicians working at approximately 25 locations throughout the country. Plaintiffs have already submitted declarations from 28 putative class members who may consider joining the lawsuit. Defendants' counterclaims would require analyzing every time sheet submitted by each opt-in plaintiff, determining whether the time sheets were falsified, who committed the falsification, whether such falsification was intentional, reckless or negligent, whether defendants relied upon the alleged misrepresentation and whether defendants suffered damages. In contrast, the main issue in plaintiffs' FLSA and state wage claims is whether defendants company-wide piece-rate pay system, which applies to all installation technicians, is lawful. Thus, defendants' counterclaims, which will necessarily require highly individualized determinations from the outset of this case, would overwhelm plaintiffs' claims if allowed to proceed in the same lawsuit.

In addition, it is unclear at this time whether defendants' counterclaims could be resolved under one state's laws regarding unjust enrichment, misrepresentation and detrimental reliance, or whether the counterclaims would require the application of laws from  each state in which an opt-in plaintiff worked or lives. In their motion to dismiss, plaintiffs contend that the substantive law of the state in which the opt-in class members

10

reside will control defendants' counterclaims, though they cite to no law in support of this assertion.  In response, defendants criticize plaintiffs' failure to engage in a proper choice of law analysis and contend that because no individuals have opted in to this action, "there is no way to know what states may have an interest in the application of their respective law." Defs.' Br., dkt. #130, at 3.  Defendants admit that "the choice-of-law issue in a case like this is relatively novel and complex and will likely require briefing," id. at 14, n. 8, but contend that the choice of law discussion is premature and should not bar the exercise of supplemental jurisdiction in this case.

The parties dispute which state law governs defendants' counterclaims and whether the choice of law issue would require briefing at some future time.  Thus, regardless whether the law of one state or the law of multiple states will apply to defendants' counterclaims, I am persuaded that if defendants' counterclaims are allowed to proceed in this lawsuit, the counterclaims and related issues, such as choice of law, will predominate over plaintiffs' FLSA claims.  Other district courts have reached the same conclusion in FLSA cases.  E.g., Villareal v. El Chile, Inc., 601 F. Supp. 2d 1011, 1020 (N.D. Ill. 2009) (concluding that supplemental jurisdiction over defendants' counterclaim would be "contrary to the FLSA's purpose" because the counterclaim "ha[d] the potential to predominate over the FLSA claim and significantly delay its resolution"); Dawson v. Office Depot, Inc., 2009 WL 789662, at *2 (S.D. Fla. March 23, 2009) (declining supplemental jurisdiction over counterclaims in

11

an FLSA case that "would otherwise predominate over the federal claims . . . and obscure their significance"); Dowell v. Kidz R 4 Uz, Inc., 2008 WL 4613049, at *2 (D. M. Fla. Oct. 14, 2008) (declining jurisdiction over counterclaim in FLSA action where counterclaim would substantially predominate over FLSA claim); Bullion v. Ramsaran, 2008 WL 2704438, at *3 (S.D. Fla. July 7, 2008) (same); Strom v. Strom Closures,Inc., 2008 WL 489363, *5 (N.D. Ill. Feb. 20, 2008) (same); see also Robledo, 252 F.R.D. at 641 (dismissing counterclaims that would predominate over plaintiffs' procedural due process claims).

Moreover, I conclude that this case also presents "exceptional circumstances" in which there are "compelling reasons" for declining supplemental jurisdiction.  28 U.S.C. § 1367(c)(4).  It is troubling that defendants have sued only those installation technicians who opt in to the collective action, rather than a defendant class of installation technicians or individual technicians against whom defendants have a factual basis to assert their claims. Defendants state that they were "required" to sue the opt-in plaintiffs at this time because the opt-in plaintiffs are "opposing parties" within the meaning of Rule 13 and defendants did not want to forfeit any possible claims against them.  However, there are no opt-in plaintiffs at this time and thus, only the named plaintiffs are "opposing parties."  Also, defendants do not explain in their response why they limited their claims to opt-in plaintiffs. It is not accurate, as defendants contend, that opt-in plaintiffs are by definition claiming

entitlement to payment for underreported hours. The definition of the class conditionally certified by this court does not require class members to have underreported their hours. For example, one putative class members declared that although he rarely took a lunch break, "someone" recorded a one-hour lunch break on his time sheet everyday. Dkt. #67. Further, defendants' counterclaims against the opt-in plaintiffs are based solely on plaintiff Espenscheid's declaration that he underreported his hours and his assertion that opt-in members are "similarly situated" to him. Defendants have not explained how Espenscheid's declaration provides justification, or even a factual basis, for suing opt-in plaintiffs. Defendants' failure to offer adequate factual or legal justification for their decision to target only opt-in plaintiffs lends support to plaintiffs' contention that defendants' counterclaims are intended to chill participation in the FLSA collective action.

In any event, regardless whether defendants are making an intentional attempt to chill participation in the collective action, their counterclaims and related proposed notice would certainly have that effect. In essence, the proposed notice says to potential class members: if you join this lawsuit, you will be sued and will potentially owe money to defendants but if you do not join this lawsuit, you will be safe from suit. The purpose of the FLSA is to allow workers to assert their rights to be paid a minimum wage and receive overtime compensation. Defendants' counterclaims discourage workers from asserting those rights. Cf. Sparrow, 385 F. Supp. 2d at 1071 ("Strong policy reasons exist to prevent the

13

chilling effect of trying [Fair Debt Collection Practices Act] claims in the same case as state law claims for collection of the underlying debt.")

Finally, by discouraging participation in the collective action, defendants' counterclaims would nullify the objectives of collective actions generally. Collective actions promote judicial economy, United States Parole Commission v. Geraghty, 445 U.S. 388, 402-3 (1980), provide access to judicial relief for small claimants, Guaranty National Bank, Jackson, Mississippi v. Rover, 445 U.S. 326, 338 (1980), and deter unlawful conduct, Matter of American Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988). In many cases, allowing counterclaims to proceed within the context of the original lawsuit will also increase judicial efficiency by resolving all of the parties' disputes in one forum. In this case however, allowing defendants' counterclaims to proceed would undermine judicial economy and the goals of collective actions by increasing complexity, creating management difficulties, fragmenting the case into several individual disputes and discouraging participation. Thus, I conclude that it would be more appropriate in this case for defendants to assert their counterclaims independently, either against individual technicians or a class of defendant technicians. Defendants have not suggested that they would be unable to assert their claims in another forum.

In sum, I conclude that defendants' counterclaims would predominate over plaintiffs' claims and that there are exceptional circumstances that weigh heavily against the exercise

14

of supplemental jurisdiction in this case. Accordingly, I will grant plaintiffs' motion to dismiss defendants' counterclaims.

## B. Form of the Notice

In the June 4, 2010 order granting conditional certification to a nationwide FLSA class, I resolved most of the parties' disputes regarding the content of the notice that will be distributed to potential class members, but reserved ruling on the final form of the notice pending a decision on plaintiffs' motion to dismiss defendants' counterclaims. Because I am dismissing defendants' counterclaims, it is not necessary to include information about counterclaims in the notice. Thus, the final form of the notice that is approved for distribution to potential class members is attached to this order, and plaintiffs may send the notice to all DirectSat and UniTek current and former employees by the methods authorized in the June 4 order.

## ORDER

IT IS ORDERED that

1. The motion to dismiss defendants DirectSat USA, LLC's and UniTek, LLC's counterclaims, dkt. #123, filed by plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay is GRANTED. Defendants' claims for unjust enrichment, misrepresentation and detrimental

reliance are DISMISSED without prejudice under 28 U.S.C. § 1367(c).

2.  Plaintiffs are authorized to distribute the attached notice and consent form by the methods authorized in the June 4, 2010 order.

Entered this 29th day of June, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON L. ESPENSCHEID,
GARY IDLER and MICHAEL CLAY,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,

Case No. 09-cv-625-bbc

Plaintiffs,

v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Important Notice to Potential Class Members

To:        All Current and Former Technicians, including all pay levels of POV and COV
           Technicians (hereinafter, "Technicians"), employed by DirectSat USA, LLC or
           UniTek USA, LLC since October 13, 2006.

From:      Robert J. Gingras, Esq. and Michael J. Modl, Esq.

Re:        Fair Labor Standards Act Claims Against DirectSat USA, LLC, and UniTek USA,
           LLC.

## 1.  Purpose of Notice

This Notice is to inform you about a lawsuit in which you are potentially eligible to participate; how
your rights under the Fair Labor Standards Act ("FLSA") may be affected by this lawsuit; and to
inform you of how to join in this lawsuit, should you choose to do so. You have been sent this Notice
because there is reason to believe that sometime during the period from October 13, 2006, to the
present you were employed by DirectSat USA, LLC or UniTek USA, LLC as an installation

17

technician. Thus, if you presently or have previously worked as a technician, you may be "similarly situated" to the plaintiffs and may participate in this lawsuit if you timely opt in and consent to join this action.

Please note that this Notice is only for the purpose of determining the identity of those persons who wish to be involved in this action. This Notice does not mean that you have a valid claim or that you are entitled to any monetary recovery. Any such determination must still be made by the court.

## 2. Description of the Lawsuit

A lawsuit has been brought by Aaron Espenscheid, Gary Idler and Michael Clay ("plaintiffs") against DirectSat USA, LLC, and UniTek USA, LLC (collectively referred to as "defendants") in the United States District Court for the Western District of Wisconsin (Case No. 09-CV-625). The lawsuit alleges that defendants violated the Fair Labor Standards Act (FLSA) by failing to pay wages and/or overtime compensation to plaintiffs and other allegedly similarly situated installation technicians employed by DirectSat USA, LLC or UniTek USA, LLC since October 13, 2006. Defendants deny plaintiffs' allegations that they violated the FLSA and contend that they properly compensated employees for all compensable working time.

The FLSA requires that an employer pay minimum wages for all work performed on an employer's behalf and pay overtime compensation for hours worked in excess of 40 hours per week. In terms of overtime, the FLSA requires that for all hours over forty per week that an employee works, the employer must compensate the employee at the rate of one-and-one-half times his or her regular hourly rate, subject to certain exceptions. Plaintiffs are suing to recover wages and overtime compensation for the period from October 13, 2006, to the present and for similarly situated individuals for the period from October 13, 2006, to the present, including liquidated damages, costs, and attorneys' fees.

## 3. Who is Sending this Notice

We are the lawyers representing Aaron Espenscheid, Gary Idler and Michael Clay and other potential class members who timely consent to join this lawsuit. We are from the law firms of Gingras, Cates & Luebke and Axley Brynelson, LLP. We prepared and sent this Notice to you. Although the judge in this case allowed us to send you this Notice, the judge has expressed no opinion about Messrs. Espenscheid, Idler and Clay's claims, DirectSat USA, LLC or UniTek USA, LLC's defenses or whether Messrs. Espenscheid, Idler and Clay or any other DirectSat USA, LLC or UniTek USA, LLC employees are entitled to recover any monies in this action.

18

**4.  Your Right to Participate in This Suit**

If you believe that DirectSat USA, LLC or UniTek USA, LLC has failed to properly compensate you with either wages or overtime compensation, you have the right to participate in this lawsuit.  To do this, you must sign, date, and mail the attached Consent to Become Party Plaintiff form to plaintiffs' attorney (see Section 5 below).  It is entirely your own decision whether to participate in this lawsuit. You are not required to take any action unless you so desire, and **you are not required to pay any money to participate.**

**5.  How and When to Join This Suit**

Enclosed you will find a Consent to Become Party Plaintiff Form ("Consent Form"). If you choose to join this lawsuit, and thus participate in any recovery that may result from this lawsuit, it is **extremely important** that you read, sign, and return the Consent Form. The Consent Form is pre-addressed and postage-paid for your convenience. Should the enclosed form become lost or misplaced, please contact plaintiffs' lawyers listed on page four of this Notice.

The signed Consent Form must be postmarked by _____.  **If your signed Consent Form is not postmarked by _____, you will not participate in any recovery obtained against defendants in this lawsuit.**

**It also is <u>very important</u> that you return the Consent Form <u>as early as possible</u> because the statute of limitations clock is running as to how far back you may be eligible for unpaid wages and overtime compensation.  Thus, if you decide to join the lawsuit, the longer you take to return the form, the more likely it is that the amount of your potential recovery will be reduced, <u>especially if you no longer work for DirectSat USA, LLC or UniTek USA, LLC.</u>**

If you have any questions about filling out or sending in the Consent Form, you may contact plaintiffs' lawyers listed on the final page of this Notice.

**6.  Retaliation Prohibited**

**<u>The law prohibits anyone, including your employer, from discriminating or retaliating against you for taking part in this case or because you have exercised your rights under the Fair Labor Standards Act.</u>**

19

### 7.  Effect of Joining This Suit

If you choose to join in this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable. You will also be bound by - and may share in - any settlement that may be reached on behalf of the class.  While this lawsuit is pending, individuals who opt in may be required to provide information or documents, appear for a deposition, testify at trial or otherwise participate in this action.  By joining this lawsuit, you designate Aaron Espenscheid, Gary Idler and Michael Clay, the representative plaintiffs, as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation and to look out for the best interests of the class, and all other matters pertaining to this lawsuit. The decisions and agreements made and entered into by Aaron Espenscheid, Gary Idler and Michael Clay will be binding on you if you join this lawsuit.

The representative plaintiffs in this lawsuit have entered into a contingency fee agreement with plaintiffs' lawyers, which means that if there is no recovery, there will be no attorneys fees or costs chargeable to you from plaintiffs' lawyers. If there is a recovery, plaintiffs' lawyers will receive a part of any settlement obtained or money judgment entered in favor of all members of the class, subject to the discretion of the court.

### 8.  No Legal Effect in Not Joining This Suit

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement of the Fair Labor Standards Act claims in this case, whether favorable or unfavorable to the class.  You will not be entitled to share any amounts recovered by the class. You will be free to file your own lawsuit, if you wish to do so.

### 9.  Right to Consult With Us

If you want to talk with us about this lawsuit, please feel free to call, write or e-mail us from your personal (not work) e-mail account during non-working time:

<div style="display:flex">

Atty. Robert J. Gingras
GINGRAS, CATES & LUEBKE
8150 Excelsior Drive
Madison, WI 53717
Tel: (888) 357-7661
Fax: (608) 833-2874
E-mail: gingras@gcllawyers.com

Atty. Michael J. Modl
AXLEY BRYNELSON, LLP
2 East Mifflin Street
Madison, WI 53703
Tel: (800) 368-5661
Fax: (608) 257-5444
E-mail: mmodl@axley.com

</div>

20

**10. Further Information**

Further information about this Notice or the lawsuit may be obtained from plaintiffs' attorney at the addresses, telephone numbers, facsimile numbers, or e-mail addresses identified above, or on the Internet at _____ Please see the website for information and updates on the lawsuit.

> THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN, HONORABLE BARBARA B. CRABB, DISTRICT JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR THE DEFENDANTS' DEFENSES.
>
> PLEASE DO NOT CONTACT THE COURT FOR ANY REASON.

21

## CONSENT TO JOIN COLLECTIVE ACTION
## (FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(b))

I, _____, hereby consent to opt in to and become a party plaintiff to the collective action entitled *Espenscheid v. DirectSat USA, LLC, and UniTek USA, LLC.* I understand and agree that by joining in this action, I will be bound by any adjudication of the Court in this action.

I understand the lawsuit includes allegations that DirectSat USA, LLC, and UniTek USA, LLC have failed to properly pay current and former Installation Technicians, including all pay levels for COV and POV Technicians, for all hours worked, including overtime. I am, or was, employed by DirectSat USA, LLC, and UniTek USA, LLC during some or all of the period from October 13, 2006, to the present. This lawsuit has been brought on my behalf and on the behalf of all similarly situated employees of DirectSat USA, LLC, and UniTek USA, LLC, pursuant to Section 16(b) of the Fair Labor Standards Act. I understand that the lawsuit seeks to recover unpaid wages, overtime compensation, liquidated damages, attorneys' fees, costs and other relief.

I support the proposed appointment of Gingras, Cates & Luebke and Axley Brynelson, LLP, as attorneys for the class and agree to be represented by these attorneys for this action. I understand that these attorneys are being retained on a contingency fee basis, which means that if there is no recovery, I will not be responsible for paying plaintiff's attorneys' fees, costs or expenses. I understand that by joining this lawsuit I have agreed to designate plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, and to look out for the best interests of the class. These decisions and agreements made and entered into by plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay on behalf of the class will be binding on me if I join this lawsuit. If the plaintiffs prevail, the attorneys for the class will ask the court to determine or approve the amount of attorneys' fees and costs they are entitled to receive.

Signature: _____    Date: _____

Printed Name: _____    Address: _____

Home Phone: _____    E-Mail: _____

Cell Phone: _____    Alternate E-Mail: _____

PLEASE RETURN BY _____, TO THE FOLLOWING: