THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

AARON ESPENSCHEID,
GARY IDLER, and
MICHAEL CLAY,
on behalf of themselves and a class
of employees and/or former employees
similarly situated,

        Plaintiffs,

v.                                                                Case No. 09-cv-625

DIRECTSAT USA, LLC,
and
UNITEK USA, LLC,

        Defendants.
_____

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO AMEND THIS COURT'S
FEBRUARY 10, 2011 ORDER TO INCLUDE A CERTIFICATION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**
_____

## INTRODUCTION

In an effort to delay the completion of this case, Defendants have moved this Court to amend its February 10, 2011 Opinion and Order (Dkt. # 387), requesting certification for interlocutory review pursuant to 28 U.S.C. 1292(b). DirectSat /Unitek make this motion knowing that the Court had the authority to certify its Order for interlocutory review *sua sponte* if it felt 28 U.S.C. § 1292(b) called for it. Regardless, DirectSat /Unitek seek a finding that the Court's order involved controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal would materially advance the ultimate termination of the litigation. Defendants

seek certification of three questions; however, because the first and second questions are simply variations of each other, the motion actually seeks certification on two issues: 1) did the Court apply the correct legal standard in determining that the technicians were similarly situated? and 2) does the Court's ruling violate the Due Process and Reexamination Clauses of the Constitution?

DirectSat/Unitek's delay tactic has been tried by other defendants in similar situations, and it has usually (and rightfully) ended in defeat. In this case, the Court's order did not involve a controlling question of law. Moreover, there is no substantial ground for difference of opinion. As DirectSat/Unitek themselves observed, this Court has dealt with a myriad of FLSA collective action cases, and in each of them, the similarly situated test must be applied. Given the routine nature of the application of the similarly situated test, there is simply no ground for difference of opinion, "substantial" or not. Finally, an interlocutory appeal on these issues does not materially advance the ultimate termination of the litigation.

DirectSat/Unitek must meet a very high burden to achieve certification under Section 1292(b). For the reasons that follow, they have failed to meet that burden.

## ARGUMENT

I. *Under 28 U.S.C. sec. 1292(b), interlocutory appeal is drastic relief that is within the Court's discretion to deny.*

Defendants are seeking interlocutory relief pursuant to 28 U.S.C. § 1292(b), which states:

> **(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the

> ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*See* 28 U.S.C. § 1292(b).

Courts should only certify an issue for interlocutory review in the rarest of cases.[1] A moving party must satisfy all three requirements on each question to be entitled to sec. 1292(b) certification. *Craig v. Rite Aid Corporation*, 2010 WL 1994888, at *2 (M.D.Pa.). The moving party bears the burden on all three elements of the test. *Craig*, at *2. Whether to grant relief under sec. 1292(b) rests in the discretion of the trial court. *Genentech, Inc. v. Novo Nordisk A/S*, 907 F.Supp. 97 (S.D.N.Y.1995), *Ofori v. Central Parking System*, 2010 WL 335498, at *2 (E.D.N.Y.). Courts are to exercise great care in making a sec. 1292(b) certification. *Santiago v. Pinello*, 647 F.Supp.2d 239 (E.D.N.Y., 2009), *Craig*, at *2. Section 1292(b) relief is a rare exception to the final judgment rule that generally prohibits piecemeal appeals. *Santiago*, 647 F.Supp.2d at 243, *Ofori*, at *2, *Craig*, at *2. Interlocutory review should not be used as a vehicle merely to provide

---

[1] During the pendency of the certification briefing, Defendants clearly should have known that certification of a class action determination, affirmative or negative, is not a final order appealable under 28 U.S.C. § 1291. And given the Court's order on conditional certification, it should have known the parameters of the issue when it moved to decertify the class. Defendants should have known that if they did not prevail in their efforts to decertify the FLSA claims, they could only obtain interlocutory review of the decertification decision if the Court, in its discretion, actually certified the issue for interlocutory appeal purposes pursuant to 28 U.S.C. § 1292(b). To preserve this request, they should have sought certification to interlocutory appeal as an alternative to victory. Defendants should be estopped from now seeking this remedy from the Court after learning of the Court's decision.

3

review of difficult rulings in hard cases. *U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966).

>    II.   *The criteria necessary to warrant relief under the statute are not present in this case.*

An interlocutory appeal should not be permitted unless the order under attack involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance ultimate termination of the litigation. *Gottesman v. General Motors Corporation*, 268 F. 2d 194, 196 (2nd Cir. 1959). *See also*, *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 849 F. 2d 761, 764 (2nd Cir. 1988), on remand, *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 689 F.Supp. 351 (S.D. N.Y. 1988); *Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.*, 317 F. 2d 741, 742 (4th Cir. 1963).

>    A.   <u>The Court's decision did not involve a controlling question of law or implicate DirectSat/Unitek's constitutional rights.</u>.

To meet the controlling law standard, DirectSat/Unitek's question on appeal must be a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Santiago*, 647 F.Supp.2d at 243, *Ofori*, at *2. A favorable ruling on appeal for the defendant must also terminate the action. *Santiago*, 647 F.Supp.2d at 243. That is, a controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal. *Pereira v. Foot Locker, Inc.*, 2010 WL 300027, at *3. (E.D.Pa.). Where the court's decision is conditional and may be altered or amended before a decision on the merits, the decision

4

is not a controlling question of law to be reviewed under Section 1292(b). *Pereira*, at *4.[1] The *Periera* court held:

> If the district court has qualms about determining a class, because it has a serious question whether it is applying the correct criteria to the facts of the case, it should not certify for Section 1292(b) consideration without stating persuasive reasons why the particular class action question is so unusual as to demand the intervention of an appellate court.

*Pereira*, at *4.

The Court's rulings on the similarly situated issue do not involve controlling issues of law because the Court's order is still subject to amendment, as the Court itself noted. In fact, the Court already has in place mechanisms to handle each of the potential issues raised by the Defendants. The Court held:

> It is conceivable that as this case develops further or reaches the damages phase, it may become unmanageable in its current form. If the case proves to be unmanageable, I reserve the right to reconsider the issue of decertification of the FLSA collective action and any or all of the state law classes. . . . In addition, it may become necessary to modify these classes and subclasses for purposes of trial and damages calculations in particular. As the trial nears, I will direct the parties to submit proposed trial plans describing how and whether the FLSA subclasses and state law classes should be modified further and how many representative witnesses will be necessary to address each subclaim.

Dckt. No. 387, at 54. In addition to the trial plans and subclasses, the Court will also use bifurcation to deal with the issues raised by the defendants. Given these precautions, there is simply no reason to certify these issues for an interlocutory appeal.

---

[1] DirectSat/Unitek's motion fails completely at this early stage of the test. Not only has the Court invited input to redefine the subclasses if necessary – making the decision subject to amendment and alteration – the Court's decision on summary judgment has not yet been issued. That decision could impact the class definitions, making an interlocutory appeal unnecessary and rendering the Court's decision on certification non-controlling.

Moreover, the Court's determination on the similarly situated issues was a mixed finding of law and fact that does not present a controlling issue of law. The factual component of the similarly situated analysis was easy for the Court to complete. This case involves just one position – the technicians – and all of them are non-exempt, hourly employees responsible for installing, upgrading and servicing DirecTV equipment. Dckt. No. 387, at 5. The technicians all work under the same national policies and practices. Dckt. No. 387, at 6. With respect to each technician, his pay did not start until he arrived at the first customer job and ended when he finished his last customer job. Dckt. No. 387, at 6. All the technicians were paid under the same pay policies. Dckt. No. 387, at 11. These factual findings preclude Section 1292(b) certification.

Finally, neither the due process clause nor the reexamination clause are implicated by the Court's order.

> 1. The Court's ruling that the technicians were similarly situated did not involve a controlling issue of law.

DirectSat/Unitek claim that the question of whether the technicians are similarly situated involves a controlling question of law. Similar attempts to win interlocutory appeal over a district court's finding of similarly situated plaintiffs in FLSA collective actions have failed. *Pereira*, at *5, *Santiago*, 647 F.Supp.2d at 243, *Fenton v. Farmers*, 2010 WL 10066523 (D.Minn.), *Ofori*, at *2. The same result should follow here.

For an opt-in class to be created under FLSA, an employee need only show that he is suing his employer for himself and on behalf of other employees similarly situated; plaintiffs need show only that their positions are similar, not identical, to positions held by putative class members. Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b). The Eleventh Circuit Court of Appeals has stated that "[t]o maintain

6

an opt-in class action under § 216(b), plaintiffs must demonstrate that they are 'similarly situated.' " *Id.* at 1217 (citations omitted). "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.' " *Id.* (quoting *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.1996)) (citations omitted). The "'similarly situated requirement' [of § 216(b)] is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Id.* at 1219 (quoting *Grayson,* 79 F.3d at 1095).

Before delving into whether the similarly situated test is controlling law in this context, it is important to point out what precisely the plaintiff has to prove, to avoid mistaking the part (the similarly situated subtest) for the whole (the violation of the FLSA). As a foundational matter, mixed questions of law and fact are not appropriate for certification under Section 2192(b). *Freeman v. NBC*, 1993 WL 524858 at *2 (S.D.N.Y.). While the Court's overall determination that the technicians were similarly situated is a legal ruling, what the technicians did, and when they did it, is a question of fact, not law. *Anderson v. Cagle's Inc.,* 488 F.3d 945, 954 (11th Cir. 2007) (affirming decision to decertify based on conclusion "that the district court's view of the evidence is reasonable, and its findings, therefore, are not clearly erroneous"); *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1208 (11th Cir. 2001) (noting that decertification decision is one where the court "makes a factual determination on the similarly situated question"). Accordingly, the Court's order is not appropriate for interlocutory review.

    2.    <u>The Court's decision with respect to subclasses does not involve a controlling issue of constitutional law.</u>

DirectSat/Unitek argue that certification is warranted because the Court's decision implicates the Due Process and Reexamination Clauses of the United States Constitution.

7

Specifically, DirectSat/Unitek claim that the technicians' membership in the particular subclasses cannot be determined without individualized inquiry on liability. For the reasons that follow, the motion for certification should be denied because neither the Due Process Clause nor the Reexamination Clause apply.

DirectSat/Unitek's constitutional concerns are based on a mischaracterization of the Court's framing of the liability issues. The Court certified three subclasses. Dckt. No. 387, at 25, 53-54. First, the court certified a subclass of technicians who were under-compensated for work performed during the work day ["the inside the window subclass"]. Dckt. No. 387, at 26. Second, the Court certified a subclass of technicians who were not compensated for work they did before the first customer job and after the last customer job ["the outside the window subclass"]. Dckt. No. 387, at 26-27. Third, the Court certified a subclass whose regular and overtime wages for nonproductive work were calculated improperly ["the nonproductive work/miscalculation subclass"]. Dckt. No. 387, at 27.

The Court did not state, nor did does the law require, that the technicians must prove subclass membership for each opt-in plaintiff at the liability stage of the case. A primary liability question will be whether Defendants' national policies and practices led the technicians to perform compensable work, with Defendants' knowledge, without paying them for it. Dckt. No. 387, at 28. With respect to the inside the window subclass, a primary questions will be whether the unlawful practice was prevalent and involved more than just a few managers and technicians who failed to follow company policies; no individualized analysis would be necessary during the liability phase of the case. Dckt. No. 387, at 31. Similarly, for the "outside the window/miscalculation" subclass, a

8

primary question will be whether DirectSat/Unitek successfully implemented nationwide policies that required off-the-clock work at the beginning and end of the day. Dckt. No. 387, at 32. Likewise, for the nonproductive work subclass, plaintiffs must prove they were (under) paid under the same piece rate system for their nonproductive time. Dckt. No. 387, at 35.

Due Process is not controlling with respect to liability issues because there is no need to allocate the technicians into subclasses at that phase. The question is the existence of an unlawful policy, and the widespread enforcement of said policy, with respect to each of the subclasses. Nothing precludes DirectSat/Unitek from prosecuting any of their affirmative defenses at the liability phase. No part of the liability findings would require a reexamination of any issue in the damages phase of the case.

Defendants argue otherwise, but the cases they cite are not applicable. At page 6 of their brief, DirectSat/Unitek argue as follows: "To establish a right to unpaid wages for off-the-clock work, each individual technician must show that he or she performed uncompensated work." (Emphasis in original). At page 7 of their brief, DirectSat/Unitek claim, in the absence of any controlling authority whatsoever: "Defendants are not liable unless the particular opt-in plaintiff in fact was subject to any 'practices found unlawful.'" (emphasis in original). At page 6, DirectSat/Unitek cite to three cases: *Lugo v. Farmer's Pride, Inc.*, 737 F.Supp.2d 291 (E.D. Penn., 2010); *Powell v. Carey Intern., Inc.*, 483 F.Supp.2d 1168, 1182 (S.D. Fla., 2007) and *Colindres v. QuietFlex Mfg.*, 427 F.Supp.2d 737, 753-756 (S.D. Tex. 2006). Neither *Powell* nor *Colindres* were collective action cases, nor do they hold that representative proof was not an acceptable method of proof or that proof of predominant unlawful policies could not lead to liability under the

FLSA. The *Lugo* decision is a collective action case, but it does not state that to prove liability under the FLSA, plaintiffs must prove that each opt-in plaintiff has an individual claim. The liability phase of the case does not require individualized analysis. As such, the defendant is able to prosecute its affirmative defenses on liability and due process issues are not controlling. Likewise, because determination of membership to subclasses is not part of the liability phase of the case, the Reexamination Clause is irrelevant.

Notably, Defendants ignore the applicable substantive law that frames this case. An employer is liable under the FLSA if it knew, either actually or constructively, that an employee performed compensable work without pay. *Cunningham v. Gibson Electric Co., Inc.*, 43 F.Supp.2d 965, 975 (N.D. Ill.1999) (citations omitted). An employer who knows an employee is working overtime cannot allow the employee to work without compensation even if the employee does not report the overtime work. *Cunningham* at 43 F.Supp.2d at 975. The knowledge by supervisors of unreported hours worked is imputed to the employer. *Id.* at 975. Moreover, where an employer claims lack of knowledge of hours being worked, but the evidence supports an inference of deliberate ignorance, the proper conclusion is that the employer knew about the overtime hours. *Id.* at 976, *citing Reich v. Department of Conservation & Natural Resources,* 28 F.3d 1076, 1082 (11th Cir.1994). An employer, like DirectSat, who is armed with knowledge that an employee is or was working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981).

If it is necessary to consider the size of the subclasses in the liability phase, due process is not implicated because the Court has made a factual determination that the subclass members are similarly situated. As the court in *Wilson v. Guardian Angel Nursing, Inc.*, 2008 WL 4890589 (M.D. Tenn.) held:

> It is well settled that where the plaintiffs in [a] FLSA collective action are similarly situated, liability as to the entire class may be established by representative proof that may include testimony of a small number of plaintiffs and/or documentary evidence establishing factual circumstances generally applicable to the entire class of plaintiffs.

*Wilson*, at *6 (citations omitted). Accordingly, given the Court's factual findings, any due process concerns raised by DirectSat/Unitek could be addressed through the use of representative proof.

As for the damages phase of the case, the Due Process Clause is not controlling either. The Court dealt squarely with this issue in its decision:

> Plaintiffs' claims, however, involve a limited number of issues and focus on company-wide practices and policies, namely, whether defendants have a nationwide policy and practice of encouraging or condoning underreporting of hours worked during the work day and whether defendants' policies fail to compensate technicians for work done off the clock. These common liability-related questions can be resolved in collective trial even though there are some individualized questions. In addition, "[defendants' due process] rights must be balanced with the rights of the plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court." Wilks, 2006 WL 2821700, at *8.
>
> Defendants' concerns are manageable through bifurcation and the creation of subclasses. I have no doubt that it will be challenging to resolve plaintiffs' claims, even on a bifurcated and subclass basis. However, I am persuaded that a collective action is the most efficient method of addressing these claims without infringing the parties' due process rights. Alvarez, 605 F.3d at 450 ("Sifting through the subclaims of each of the myriad plaintiffs is an unenviable task. But plaintiffs are nonetheless entitled to their day in court.") Therefore, I will deny the defendants' motion to decertify plaintiffs' FLSA claims that fall within the subclasses identified above.

Dckt. No. 387, at 38-39.  The court has identified a method of trying this case that properly balances the due process rights of all involved.  The Due Process Clause is no more controlling in this case than it would be in any certified collective action under the FLSA.  For these reasons and those set forth earlier in this brief, DirectSat/Unitek's request for certification on the grounds that the Due Process Clause and the Reexamination Clause are controlling should be denied.

>    A.    There is no substantial ground for difference of opinion on any of the issues raised by the Defendants.

Disagreement among courts outside the circuit does not establish "substantial ground for difference of opinion" required to support interlocutory appeal.  *Ryan, Beck & Co., LLC v. Fakih*, 275 F.Supp. 2d 393, 398 (E.D. N.Y. 2003).  The mere fact that there are no cases on point does not create substantial grounds for difference of opinion that would justify permission for an interlocutory appeal.  *Barrett v. Burt*, 250 F.Supp. 904, 907 (S.D. Iowa 1966), *DeKeyser v. Thyssenkrupp*, 2009 WL 750278 (E.D.Wis.).  If a difference of opinion exists, it must be a difference of opinion on the legal standard itself; it cannot be a difference of opinion about how a legal standard applies to the facts of a particular case.  *Freeman*, at *2.  In this case, DirectSat/Unitek have not identified *any* difference of opinion with respect to the legal standard to apply when determining if employees are similarly situated, nor have they shown any difference of opinion on the due process and reexamination issues.[2]  They argue instead that the facts of this case

---

[2]  The Court spent several pages of its opinion discussing this issue, ultimately relying, in part, on *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), to conclude that plaintiffs in a FLSA collective action need not be situated *identically*. (Dkt. # 387 at pp. 24) (emphasis in original).  While the Seventh Circuit Court of Appeals may not have decided that issue as of the time of this Court's opinion, the defendants in

12

demand a legal standard favorable to them. That is not a ground for granting an interlocutory appeal.

### B. Interlocutory appeal will not materially advance the litigation.

Immediate appeal is considered to "advance the ultimate termination of the litigation" with respect to a controlling question of law, but only if the appeal promises to advance the time for trial or shorten the time required for trial; courts place particular emphasis on the importance of this last factor. *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F.Supp. 2d 305, 310 (S.D. N.Y. 2007), *affirmed Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104 (2nd Cir. 2008). Where a positive outcome on appeal for the movant is possible to result in continuation of the litigation, the movant cannot claim under Section 1292(b) that an interlocutory appeal will materially advance the litigation. *Freeman*, at *3. In *Waupaca*, the district court denied the motion for Section 1292(b) relief because a decision favorable to the movant would not necessarily have extinguished any of the plaintiff's claims. *Waupaca*, at *3. In this case, the Court of Appeals could rule that the district court's subclasses are inappropriate as DirectSat/Unitek suggest, but remand the case to the district court to either try the case as one class or to redefine the subclasses. Accordingly, an interlocutory appeal would not materially advance the resolution of the case. *See also Ofori*, at *2, *Wilson v. Guardian Angel Nursing*, 2008 WL 4890589 (M.D.Tenn).

---

*Morgan* did appeal the 11th Circuit's decision to the United States Supreme Court. The writ of *certiorari* was denied. *Morgan v. Family Dollar Stores, Inc.*, 130 S.Ct. 59 (2009). Had the "similarly situated" issue been of such difference of opinion, as Defendants suggest, clearly the U.S. Supreme Court would have dealt with the issue.

## **CONCLUSION**

In sum, the issues raised by the Defendants would be present in any FLSA case where a district court certified a class of this size. There is nothing unique or unusual about them. For these reasons, and those set forth above, Defendants' motion to certify should be denied.

Respectfully Submitted this 4th day of March, 2011.

| | |
|---|---|
| GINGRAS, CATES & LUEBKE | AXLEY BRYNELSON, LLP |
| s/ Robert Gingras | s/ Michael J. Modl |
| Robert J. Gingras | Michael J. Modl |
| Michael Luebke | Timothy D. Edwards |
| Attorneys for Plaintiffs | 2 E. Mifflin Street, Suite 200 |
| 8150 Excelsior Drive | Madison, WI 53703 |
| Madison, WI 53701-1808 | (608) 257-5661 |
| (608) 833-2632 | mmodl@axley.com |
| gingras@gcllawyers.com | tedwards@axley.com |
| luebke@gcllawyers.com | |