UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AARON ESPENSCHEID,
GARY IDLER, and MICHAEL CLAY,
on behalf of themselves and a
class of employees and/or
former employees similarly situated,
    Plaintiffs,

v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,
    Defendants.

Case No. 09-cv-625

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
## FOR NON-BIFURCATED TRIAL

Defendants, through the undersigned counsel, submit this response to Plaintiffs' Motion for Non-Bifurcated Trial. Other than general and vague statements that they intend to prove their case "representationally," Plaintiffs have not proposed any viable, realistic plan for proving their case at trial—bifurcated or not. Consequently, for this and other reasons, Defendants are unable to agree with Plaintiffs' instant request to undo the bifurcation as presently postured.[1]

Plaintiffs' instant Motion is one of many recent piecemeal attempts Plaintiffs are making

---

[1] Plaintiffs recently submitted a proposed "trial plan" that completely disregards this Court's certification decision, including the Court's creation of subclasses, as if the Court never issued the opinion. After Defendants objected to Plaintiffs' unilateral disregard for the Court's Order in their "trial plan," Plaintiffs filed their own proposed plan on April 21, 2011. Then, apparently recognizing they would be held accountable for ignoring the certification decision, Plaintiffs filed this Motion (on April 26, 2011), seeking to "unbifurcate" this trial and a second Motion (on April 29, 2011), seeking to eliminate the subclasses. These Motions represent a concerted effort upend the protections the Court deemed necessary at the certification stage. Moreover, Plaintiffs filed these motions despite having represented to the Seventh Circuit that the Court's certification decision was proper because the court "creat[ed] discrete subclasses to address DirectSat's alleged concerns," Doc. No. 446-1, at 1, because these subclasses were properly "divided based on discrete claims for class members," id. at 10, and because Plaintiffs could allocate technicians to proper subclasses based on "objective criteria," id. at 6.

to undo the portions of the Court's certification opinion that they now deem inconvenient or unfavorable, despite the fact that this Court went to great lengths to attempt to specifically address the obvious "class" and due process concerns posed by this case. Notwithstanding Defendants' position that the case should not be certified at all, this Court issued an extensive fifty-six page opinion, which crafted subclasses and bifurcated the trial to address the inherent due process, manageability, typicality, and predominance problems highlighted by Defendants. See Doc. No. 387 at 39 (reasoning that "Defendants' concerns are manageable through bifurcation and the creation of subclasses"). Plaintiffs' attempt to now seek an effective reversal of this Court's class certification decision is improper. And, it is troubling that when it was strategically advantageous for Plaintiffs, they assured the Seventh Circuit that they were fully prepared to try the case in the manner established by this Court.

Rather than try this action in the manner dictated by the Court's decision, Plaintiffs now ask this Court to allow them to try the case in a manner that will certainly violate due process and Rule 23, notwithstanding Plaintiffs' sole justification for disregarding the Court's certification decision is their newfound strategy that a non-bifurcated trial is more convenient or less costly for Plaintiffs. The instant Motion and Plaintiffs' parallel attempt to have the Court eliminate the sub-classes this Court crafted, flatly ignore the Court's certification order and the Scheduling Order that has governed since the outset of this case.

Plaintiffs have been ordered to present a viable trial plan advising Defendants and the Court of the specific plan for how they intend to prove their case—within the strictures ordered by the Court in its certification decision, including the Court's definition of the classes and the bifurcation direction. Upon receipt of a proper trial plan from Plaintiffs, Defendants can respond in more detail through an amended trial plan. At this point, however, Plaintiffs have not

provided any trial plan that comports with the Court's certification decision or its express directives at summary judgment. Consequently, Defendants cannot agree to Plaintiffs' illusory and amorphous proposal set forth in Plaintiffs' instant Motion.

## ARGUMENT

Plaintiffs' Motion ignores the fact that this Court certified this matter in part because it believed that bifurcation could address many of the manageability and constitutional concerns Defendants raised in their certification and decertification papers. Id. Rather than explain how these concerns are met in a non-bifurcated setting, Plaintiffs instead craft two irrelevant arguments, namely, that Defendants previously opposed bifurcation and that bifurcation is too costly for Plaintiffs' counsel. Neither of these arguments explains how Plaintiffs are intending to proceed at trial, how they plan to prove both liability and damages, or how their non-existent plan comports with Rule 23 and due process.

1. Plaintiffs argue that Defendants previously challenged the Court's decision to bifurcate the adjudication of liability and damages. Plaintiffs intentionally omit, however, the basis of the objections Defendants raised with the Seventh Circuit and this Court. Defendants interpreted the Court's certification opinion as requiring different juries to adjudicate the issues of liability and damages.[2] Many of the factual and legal issues in this case overlap. For example, as this Court recognized at summary judgment, to establish liability, Plaintiffs must first show the number of hours they worked, whether that number of hours exceeds the relevant overtime threshold for the

---

[2] Defendants initially read the Court's certification opinion as requiring individualized proof of damages (which could have resulted in more than just two juries). In any event, Plaintiffs have not conducted any individualized damage analysis. Instead, Plaintiffs are attempting to rely upon an unworkable model that is premised on "averages," which is inherently defective for many reasons, not the least of which is that "averages" could potentially "cheat" a subset of the class and award "windfalls" to others. See Doc. No. 493-1, 3. In any event, under this "averages" method, which does not take individuality into account at all, Plaintiffs as a class are unable to show that they worked a single hour of uncompensated overtime.

technicians, and whether the technicians were compensated for that overtime. See Doc. No 485 at 55-57; see also Lugo v. Farmer's Pride Inc., ---F. Supp. 2d---, 2010 WL 3370809 at *22 (E.D. Pa. 2010); Powell v. Carey Intern., Inc., 483 F. Supp. 2d 1168, 1182 (S.D. Fla. 2007); Colindres v. QuietFlex Mfg., 427 F. Supp. 2d 737, 753-756 (S.D. Tex. 2006). Whether technicians were compensated for premium hours will, of course, also impact any damages analysis. The Seventh Amendment does not permit the bifurcation of such closely related issues, where the finder of fact will vary. In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1302-04 (7th Cir. 1995).

In addressing this argument, this Court reasoned that Defendants' Seventh Amendment concerns would be alleviated by using a single jury for both the liability and the damages phases. See Doc. No. 451 at 6. Specifically, the Court reasoned that "bifurcation of the trial into separate stages does not mean that different juries would be deciding each stage; the stages would be presented to only one jury panel." Id. The Court reaffirmed the use of a single jury in its summary judgment decision, stating that "[i]f necessary, the damages phase of the trial could take place the week of August 8, 2011, with the same jury." Doc. No. 485 at 70 (emphasis added). Plaintiffs' citation to Defendants' previous Seventh Amendment arguments, therefore, is nothing more than a red herring that ignores the steps that this Court has taken to explain its certification decision and to address the Seventh Amendment arguments raised by Defendants.

2. Plaintiffs also argue that a non-bifurcated trial will save counsel money in duplicative costs. This argument is irrelevant to the issues before the Court. The question of bifurcation in this context relates to Defendants' constitutional concerns and to the requirements of Rule 23. The question of costs has no bearing to whether Defendants' due process rights will be violated, and should not inform this Court's decision on bifurcation.[3] Plaintiffs do not explain how a non-

---

[3] Indeed, the question of costs is relevant only to the adequacy of class counsel under Rule 23(a)(4), and Plaintiffs have already represented to the Court that they would be capable of handling the

4

bifurcated trial is more manageable than a bifurcated trial nor do they explain how they will prove their case in a manner that comports with the relevant federal case law in a non-bifurcated setting.[4]

Further, at every important stage of this case, Plaintiffs couched Defendants' arguments as relating only to "damages," contending that "damages" issues could be addressed at a damages phase of this case. For example, when engaging several of Defendants' certification concerns, Plaintiffs argued that liability-specific differences between the class members were merely "damages" questions that could be addressed in a class setting. See Doc. No. 356 at 27, 41, 49, 68. The Court apparently relied on Plaintiffs'' representations when it reasoned that Defendants concerns may be manageable through bifurcation. Finding it more advantageous to switch positions, Plaintiffs now seek to lump everything together in an effort to mask the countless individualized questions relevant to liability and damages that plague this case. Plaintiffs, in effect, now concede that the individuality of each technician's claim <u>relates to both liability and damages</u>.

Likewise, Plaintiffs also attempted to avoid summary judgment by arguing that

---

costs associated with representing a class of individuals. And, when moving for certification, Plaintiffs were already aware that this Court's Scheduling Order called for bifurcation.

[4] Plaintiffs note that they will be required to pay their "expert" to fly to Madison twice if the case remains bifurcated. (Mot. at 2.) As the Court will soon learn in full, <u>Plaintiffs' counsel in Madison—not Plaintiffs' proposed expert</u>—prepared the damages expert report calculations in their entirety. <u>Plaintiffs' counsel and paralegals</u> generated all of the data, analyzed all of the data, prepared all of the newly disclosed exhibits attached to the "revised" report, and performed all of the calculations in the damages report. Plaintiffs' proposed expert, Dr. David Lewin, admitted this in his deposition. In fact, Dr. Lewin was unable to discern which exhibits reflected which data and he could not even replicate the math Plaintiffs' counsel were attempting to pass off as Dr. Lewin's work product. Further, he was unable to answer questions about his report without literally reading the report—verbatim—into the record. Defendants do not anticipate that this Court will allow Dr. Lewin to testify, given that the report is not his work product. Consequently, Plaintiffs' concern about duplicative expert fees lacks merit and masks the serious issues associated with their decision to prepare Dr. Lewin's report in its entirety and their corresponding decision to otherwise withhold from disclosure the data/analysis they possessed/performed, until the eve of Dr. Lewin's deposition in violation of this Court's Scheduling Order and the Federal Rules.

Defendants' motion focused on damages issues that would be resolved in the damages phase of this case. Doc. No. 396. For example, Plaintiffs stated that they would account for the applicable statute of limitations at the damages phase of this case. In fact, Plaintiffs conceded that "[a]pplying the statute of limitations to FLSA opt-in class members will require individualized inquiries," but promised that "their proposed trial plan[] would address the issue of damages." Doc. No. 396 at 12. Neither Plaintiffs' trial plan nor their initial damages report, however, engages these issues. Indeed, in Plaintiffs' original "expert" damages report—the one served on March 11, 2011—Plaintiffs do not address individuals who did not complete training, the statute of limitations, the payment change on October 4, 2009, or non-technician worktime. Thus, despite representing to the Court and Defendants just weeks before their expert report was due that it would account for these various factors, Plaintiffs' report is silent on these issues.

Now, without a specific plan for how to establish either liability or damages, Plaintiffs disregard these representations and their burdens by invoking an undeveloped argument that it may cost them some unknown additional sum to try this case. The Court should disregard Plaintiffs' vague "costs" argument, as it is not germane to the substantive issues now before the Court, including the Court's certification decision and its manner for dealing with the due process concerns posed by treating this case as a class action.

3. Defendants' position is clear: Plaintiffs need to proffer a trial plan that demonstrates their ability to try this case in accordance with Rule 23, due process, and this Court's certification opinion. Defendants' Trial Plan does not "unequivocally reject[]" a non-bifurcated trial.[5] Instead, it simply highlights the fact that Plaintiffs have not provided any plan for trying

---

[5] Plaintiffs continue resorting to ad hominem attacks trying to portray Defendants as obstructionist and non-cooperative. However, Plaintiffs initiated this case and defined it economically (through their inflated and unsupportable demand) and strategically (by filing numerous discovery motions, including a spoliation motion that was denied). As Plaintiffs bear the burden of proof on the

this case whatsoever, and that it is therefore impossible to evaluate (much less agree to) their proposals. This Court ordered Plaintiffs to provide a specific trial plan, one that included the number of representative witnesses for each of the subclasses that the Court created. Plaintiffs are ignoring this direction, and they are now filing piecemeal motions aimed at eliminating the procedural protections that this Court deemed necessary for certification.

As stated in Defendants' trial plan, Defendants intend to begin trial on June 6, 2011 and they are prepared to proceed as long as the trial takes or the Court's schedule allows. Defendants take issue only with Plaintiffs' attempt to eliminate the protections this Court deemed necessary, their shifting positions on substantive issues, and their attempt to gloss over their burden of proving damages—a burden that Plaintiffs routinely used to their advantage in opposing Defendants' arguments throughout this case. Plaintiffs must now demonstrate how they intend to prove (with <u>admissible</u> evidence) this case at trial in a manner that comports with all federal requirements.

---

claims they brought in the jurisdiction they chose, Defendants' decision to exercise their due process rights and the protections afforded them under the Federal Rules is not unreasonable, but is instead a necessary response to Plaintiffs' claims and tactics.

## CONCLUSION

Defendants cannot evaluate Plaintiffs' proposals because Plaintiffs have not actually set forth a plan for trial. Simply stating that they will prove their case representationally does not provide any insight into how they intend to prove their case, and it eliminates Defendants' ability to assess the propriety of their proposed non-bifurcated trial. Defendants, of course, will review any actual plan that Plaintiffs proffer and respond accordingly. As stated by Plaintiffs, however, Defendants oppose their request for a non-bifurcated trial.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Colin D. Dougherty* |
| OF COUNSEL: | Eric J. Bronstein |
|  | John P. Elliott |
| ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C. | Colin D. Dougherty |
|  | Gregory S. Voshell |
|  | Union Meeting Corp. Ctr. |
|  | 925 Harvest Dr., Suite 300 |
|  | Blue Bell, PA 19422 |
|  | (215) 977-1000 |
|  |  |
|  | Laura Skilton Verhoff |
|  | Drew J. Cochrane |
| STAFFORD ROSENBAUM LLP | 222 W. Washington Ave., Suite 900 |
|  | Madison, Wisconsin 53701-1784 |
|  | (608) 256-0226 |
|  |  |
| DATED: May 3, 2011 | *Counsel for Defendants* |

8