IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON L. ESPENSCHEID,
GARY IDLER and MICHAEL CLAY,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,

ORDER

09-cv-625-bbc

Plaintiffs,

v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and a class action under the wage and overtime compensation laws of Wisconsin, Minnesota and Pennsylvania. The case is scheduled for trial on June 6, 2011. In an order dated April 11, 2011, I granted in part and denied in part the motions for summary judgment filed by plaintiffs and defendants. In the same order, I instructed the parties to file a proposed trial plan addressing several trial management issues. My hope was that the joint trial plan would help manage the trial in an efficient manner. In response to the order,

the parties have filed separate and quite different proposed trial plans. Dkt. # 487 (Dfts.' plan) and dkt. #490 (Plts.' plan). In addition, plaintiffs have filed a motion for a non-bifurcated trial, dkt. #495, a motion to alter or amend the class definitions, dkt. #521, a trial brief regarding the use of representative proof at trial, dkt. #497, and a motion for leave to supplement their damages expert report, dkt. #486. For its part, defendants have filed a motion for reconsideration of the court's denial of its motion to strike plaintiffs' expert report, dkt. #492. The parties are still briefing the motions related to the expert report.

I will turn first to plaintiffs' motion to alter or amend the class definitions because each of plaintiffs' additional submissions assumes that the motion to amend the class definitions will be granted. (For example, plaintiffs' trial plan assumes there are no separate subclasses in the case.)

Initially, plaintiffs brought this action on behalf of four separate classes of installation technicians employed or formerly employed by defendants: (1) a nationwide opt-in class for violations of the FLSA; (2) a Wisconsin class for violations of Wisconsin wage and overtime compensation laws; (3) a Minnesota class for violations of Minnesota wage and overtime compensation laws; and (4) a Pennsylvania class for violations of Pennsylvania wage and overtime compensation laws. After this court conditionally certified the FLSA class and plaintiffs had issued notices to potential FLSA class members, defendants filed a motion for decertification of the FLSA class. In addition, defendants opposed class certification of

plaintiffs' state law claims. Defendants' primary argument for decertification was that the opt-in class members were not similarly situated. The class members testified to varying employment experiences and asserted different theories of liability. Notwithstanding these individual differences, I concluded that the case could proceed as a collective and class action if plaintiffs' claims were divided into three subclasses for the purposes of summary judgment and trial. In an order dated February 10, 2011, I certified the following subclasses: (1) plaintiffs who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day; (2) plaintiffs who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day; and (3) plaintiffs whose regular and overtime wages for nonproductive work were calculated improperly. I certified similar subclasses for plaintiffs' state law claims. I concluded that dividing plaintiffs into these classes alleviated defendants' due process concerns, but I noted that it may become necessary to modify the subclasses for purposes of trial and damages calculations in particular.

Now, two-and-a-half months after the court created subclasses and two weeks after it issued a summary judgment opinion referring specifically to those subclasses, plaintiffs contend that although the classes are "a helpful way to examine defendants' liability for violations of state and federal wage law," plaintiffs "always intended" that the lawsuit would

consist of one class of technicians. Plaintiffs contend that the subclasses are not necessary because it does not matter when in the work day a technician worked particular uncompensated hours or what type of uncompensated work was performed, so long as every class member has a claim for uncompensated or miscalculated overtime. In addition, without providing specifics, plaintiffs contend that the subclasses will not be an effective approach for trial management and will make presentation of evidence at trial unnecessarily difficult. Thus, plaintiffs propose an FLSA class comprising "current and former technicians who were employed by defendants during the relevant three year time period who performed piece-rate work and who were not compensated properly for all overtime hours worked." They propose similar state law classes. Plaintiffs contend that they can establish liability through the testimony of representative witnesses as well as other evidence.

I will deny plaintiffs' motion. In deciding defendants' motion for decertification of the collective action, I agreed with defendants that the opt-in plaintiffs were asserting different theories of liability based on their varied employment experiences and that each theory raised distinct issues as to liability, damages and possible defenses that defendants could assert.

For example, some plaintiffs assert that they performed tasks outside the official work window for which they were not compensated. At summary judgment, I concluded that plaintiffs asserting this subclaim had established that they performed work outside the work

window that defendants knew or should have known plaintiffs were performing. However, at trial, plaintiffs in this subclass must establish whether they recorded and were paid for this time, the frequency and duration of these tasks and the temporal relationship between the performance of such activities and the individual's daily commutes. Additionally, these plaintiffs will have to establish that any uncompensated time was overtime. Because most of the work in this category occurred at home, plaintiffs asserting this subclaim will most likely rely on testimonial and documentary evidence to prove their claims.

Not all plaintiffs contend that they performed tasks outside the work window for which they were not compensated. Some plaintiffs contend only that they underreported the hours they spent performing installation and service jobs during the official work window. Although plaintiffs in this subclass contend that defendants owe them overtime compensation, the elements of their claims are different than those of the plaintiffs who worked outside the work window. These plaintiffs must show that they underreported their time by writing fewer hours on their timesheets than they actually worked, perhaps by recording lunch breaks on their timesheets when they did not actually take a bona fide meal break. Plaintiffs in this subclass will likely rely on GPS and payroll data to show that they recorded and were paid for less time than they actually worked.

Given the different issues involved in each of these claims, plaintiffs cannot lump everyone together into one large class. It is clear from the evidence in the record thus far

that not every opt-in plaintiff asserts both types of claims. Also, there is no indication in the record that those technicians who are owed overtime for work performed outside the window are owed amounts of overtime similar to those who underreported their hours or that a witness asserting a claim under one subclass could be "representative" of an absent technician who is asserting a different theory of liability. Finally, although plaintiffs contend that the most significant question is whether defendants enacted unlawful policies that led to the overtime violations, the relevant policies at issue are different depending on the type of claim being asserted. In sum, grouping all plaintiffs together in one class ignores the many complex issues remaining in this case. Therefore, I will deny plaintiffs' request to modify the subclasses.

Also, I will deny plaintiffs' motion for a non-bifurcated trial, dkt. #495. Although plaintiffs make a good point that the evidence on liability and damages may overlap significantly, plaintiffs have not explained adequately how the overlapping evidence would be presented in a non-bifurcated trial or how specific-damage related issues will be addressed. (I note that plaintiffs' current position regarding overlapping issues appears to be a change from the arguments they made in favor of certification and summary judgment, where they contended that defendants were focusing on "damages" arguments that could be decided later.) Plaintiffs say only that they plan on calling a representative sample of class members and an expert witness who will testify as to liability and damages. However, this plan

assumes that plaintiffs can group all of the plaintiffs into one class and does not explain adequately how plaintiffs will prove liability and damages for each subclass or how they will deal with individuals who, for example, did not complete training or who received workers' compensation. In other words, without a more specific plan, I will not agree to bifurcation of the case. However, I am open to considering the issue again if plaintiffs can provide a more concrete trial plan.

On that note, plaintiffs' current trial plan is inadequate. The trial plan assumes that there are no subclasses and fails to identify the particular issues that must be proven with respect to each subclass. In addition, although I agree with plaintiffs that they may use representative proof to establish liability in a class action, plaintiffs should identify how many representative witnesses they intend to use for each subclass.

Finally, although I will not issue a decision on plaintiffs' motion to supplement their expert report or defendants' motion for reconsideration of its motion to strike the report until the parties have completed briefing the motions, I will note that my initial review of plaintiffs' report reveals several potential problems. Setting aside the issue whether plaintiffs have revised their report improperly, neither plaintiffs' initial report nor their supplemental report identifies any objective criteria or other method that can be used to determine which absent class members belong in which class, if any. The expert report seems to take no account of the subclasses and instead, groups all plaintiffs together and creates an "average"

technician, rather than an "average" technician for each subclass. In responding to defendants' motion to strike and opposition to plaintiffs' motion to supplement, plaintiffs should explain not only why they believe the report has been supplemented properly, but also whether the report takes adequate consideration of the subclasses.

ORDER

IT IS ORDERED that

1. The motion for a non-bifurcated trial, dkt. #495, filed by plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay is DENIED without prejudice.

2. Plaintiffs' motion to alter or amend the class definitions, dkt. #521, is DENIED.

3. Plaintiffs are directed to file a revised trial plan that addresses the concerns expressed in this order.

Entered this 6th day of May, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge