IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON L. ESPENSCHEID,
GARY IDLER and MICHAEL CLAY,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,

                               OPINION and ORDER

                               09-cv-625-bbc

             Plaintiffs,

    v.

DIRECTSAT USA, LLC and
UNITEK USA, LLC,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and a class action under the wage and overtime compensation laws of Wisconsin, Minnesota and Pennsylvania. The case is scheduled for trial on June 6, 2011. As the case is currently structured, there are twelve subclasses for which plaintiffs must establish liability and damages. Specifically, the following three subclasses have been certified with respect to plaintiffs' FLSA claims: (1) plaintiffs who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between

1

their first and last installation or service job of the day; (2) plaintiffs who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day; and (3) plaintiffs whose overtime wages for nonproductive work were calculated improperly. Similar classes were certified for plaintiffs' state law claims.

Now before the court is plaintiffs' motion to supplement their damages expert report. Dkt. #486. In addition, the plaintiffs have responded to the court's questions regarding whether its damages expert report gives sufficient consideration to the subclasses at issue in this case. Also before the court is defendants' motion for reconsideration of its motion to strike plaintiffs' damages expert report for failure to comply with Fed. R. Civ. P. 26(a)(2)(B). Dkt. #492.

Plaintiffs have not shown that their supplemental report is proper. In particular, they do not explain why certain information was not disclosed to defendants sooner and do not provide an adequate explanation for the modifications that the expert made to the second report, Therefore, I will deny plaintiffs' motion to supplement. In addition, because plaintiffs' initial report does not comply with Rule 26(a)(2)(B) and the supplement did not correct the problems or mitigate the prejudice suffered by defendants, I will grant defendants' motion for reconsideration and strike the report.

Finally, I am not persuaded that plaintiffs' plan for establishing liability and damages

2

at trial gives consideration to the distinct claims of the opt-in plaintiffs and class members or provides adequate protection to the due process rights of all the parties. Rather, it seems that the varied employment experiences of the plaintiffs and class members have caused this collective and class action to become unmanageable. At this stage, I am prepared to decertify the classes unless plaintiffs can show cause why it should not be decertified.

BACKGROUND

Plaintiffs served their damages expert report on March 11, 2011. On March 15, 2011, defendants filed a motion to strike the report for failure to comply with Fed. R. Civ. P. 26(a)(2)(B). Dkt. #452. Defendants contended that plaintiffs' expert, Dr. Lewin, had (1) failed to identify the technicians whose data he analyzed; (2) failed to identify specifically what facts and data he used in reaching his conclusions; (3) failed to identify what declarations he used, what information he used from them and how he "randomly" selected those declarations; (4) failed to include any information about his qualifications; and (6) failed to include a statement of the compensation to be paid for his involvement in the case. Plaintiffs responded that although the information was not included in the report, they had given all of the information to defendants through discovery or in connection with Lewin's liability expert report.

In an order dated April 11, 2011, dkt. #485, I denied defendants' motion to strike

3

but noted that the report was lacking in certain information, such as the specific data on which Lewin relied to form his opinions and information regarding his rate of pay, his participation in other cases and his credentials. I noted that plaintiffs could not remedy the deficiencies in a piecemeal fashion by sending defendants separate bits of information as plaintiffs discovered it. Instead, plaintiffs should ask leave of the court to supplement their report. In addition, I directed plaintiffs to provide updated information to defendants regarding Lewin's previous work as an expert and compensation in this case by April 21, 2011.

On April 21, 2011, plaintiffs filed a three-page motion for leave to supplement Dr. Lewin's damages expert report, dkt. #486, stating that they were providing defendants information regarding Lewin's qualifications, rate of pay and prior testimony. In addition, plaintiffs stated that Lewin had modified a number of his calculations in light of the court's April 11, 2011 summary judgment ruling. Plaintiffs did not file the supplemented report with their motion.

Defendants filed a brief in opposition to plaintiffs' motion to supplement, together with a motion for reconsideration of their motion to strike plaintiffs' expert report. Dkt. #492. Defendants attached plaintiffs' proposed supplemental report, pointed out several differences between the original and supplemental report and argued that the new report is not a supplement but an improper rebuttal to defendants' own expert report and includes

4

a substantial amount of previously undisclosed information and calculations. In addition, defendants contended that the new report, like the original, failed to provide the bases for some of the opinions proffered by Dr. Lewin. Defendants say that they received the supplemental report and its two boxes of exhibits on April 22, six days before they were scheduled to depose Dr. Lewin on April 28.

In an order dated May 6, 2011, dkt. #549, I directed plaintiffs to explain why they believed their expert report had been supplemented properly. In addition, I instructed plaintiff to address whether their damages expert report gives adequate consideration to the subclasses and the variety of employment experiences of the plaintiffs and absent class members. (The subclass issue had been raised by plaintiffs in their motion to eliminate the subclasses, which I denied in the May 6 order.) Upon my review of plaintiffs' original and supplemental expert report, it appeared that neither report identified any objective criteria or other method to be used at trial to determine which absent class members belong in which class, if any. Rather, Dr. Lewin grouped all of the plaintiffs together and created an "average" technician to represent the claims of every opt-in plaintiff and absent class member. Plaintiffs responded to the May 6 order on May 9. Dkt. #588.

5

OPINION

A. Plaintiffs' Motion to Supplement Dr. Lewin's Damages Expert Report and Defendants' Motion to Strike the Report

In defendants' original motion to strike Dr. Lewin's expert damages report, they contended that the report does not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B). Under that rule, an expert report must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witnesses in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B).

One of the reasons I denied defendants' motion to strike Lewin's damages expert report was because plaintiffs contended that defendants already possessed the information Lewin used to form his opinions. Plts.' Br. in Opp. to Dfts.' Mot. to Stk., dkt. #460, at 5 ("[Defendants] have been provided all of the information upon which Dr. Lewin relied in authoring his damages report.") Thus, although Rule 26 requires that the report itself contain the information, defendants would suffer no prejudice if plaintiffs were given the opportunity to supplement the report with information defendants possessed already. However, according to the scheduling order in this case, any supplement to plaintiffs' expert report must be "limited to matters raised in an expert's first report." Dkt. #20, at 2. Plaintiffs cannot file a rebuttal report to defendants' damages report at this stage. Id. ("There shall

6

be no third round of rebuttal expert reports.")

Plaintiffs contend that their supplemental report dated April 21, 2011 is proper because it contains no new analysis and merely identifies the specific data and information that Dr. Lewin used to generate his initial expert report. In addition, they say, the modified calculations in the supplemental report were necessary in light of the court's summary judgment rulings regarding plaintiffs' gap-time claim, commuting claim and claims that are barred by the Portal-to-Portal Act. Thus, they assert, the modified calculations are not a rebuttal to defendants' expert damages report.

However, defendants have pointed to several problems with plaintiffs' supplemental report. First, the supplemental report contains six exhibits with thousands of pages of information, none of which were part of Lewin's initial damages report and some of which was not disclosed previously to defendants. Although defendants had declarations, depositions and raw GPS and payroll data in their possession, defendants did not have an adequate explanation of the way Dr. Lewin had used that data and the initial report did not provide much help. Dfts.' Resp. to Plts.' Mot. to Supp., dkt. #512, at 3-4. Lewin's initial report provided only vague references to the information on which he had relied to form his opinions. For example, he stated that he had reviewed data from 53 technicians, without identifying the technicians or the specific data he reviewed. Dkt. #453-1, at 2. In addition, the initial report contains calculations of the average hours worked each week, the average

7

hours recorded each week and the average amount of dollars paid each week, without identifying the specific information used to reach these averages. Defendants contend that even with all the new information, they still cannot determine how the numbers in the first damages report were derived.

Moreover, when defendants questioned Dr. Lewin during his April 28, 2011 deposition regarding some of the exhibits that were included with the supplemental report, he could not explain the exhibits or calculations. Lewin conceded that he did not perform many of the calculations or analyses that form the basis for the supplemental report; rather, plaintiffs' counsel had done them. Dkt. #540, at 69, 74-80, 131-36, 154-55, 177-79. (This testimony raises questions about the reliability of the expert report and whether Lewin is qualified to testify concerning its contents. Defendants have filed a motion in limine to preclude the report on reliability grounds, dkt. #576, to which plaintiffs have not yet responded.) I cannot conclude that supplementation of these exhibits and calculations is proper without more explanation from plaintiffs regarding these exhibits or calculations, including when these calculations were performed, how the information was used in preparing the initial expert report and why it was not disclosed to defendants earlier.

Also, plaintiffs have not explained the differences between the two reports. Defendants have provided a red-line comparison of the two reports, highlighting modifications in the supplemental report that are not obvious responses to the summary

8

judgment ruling. Dkt. #493-5. For example, in plaintiffs' original report, Lewin stated that the number of weeks worked by each technician was 33. Dkt. #493-1, at 6. In their revised version, Lewin states state that the average number of weeks worked is 46.4. Dkt. #493-4, at 11. It is not clear how this change relates to the summary judgment ruling. (During his deposition, Dr. Lewin was unable to explain why the number of work weeks changed between the first and second reports.) Also, in his original report, Dr. Lewin did not address the change in pay structure that occurred after October 2009 or the fact that Minnesota requires overtime only after 48 hours of work. Neither of these issues was addressed directly by the summary judgment ruling, yet Lewin's new report addresses both issues. In sum, plaintiffs have not shown that their supplemental report is proper supplementation. The report includes several exhibits and calculations not disclosed previously, raises new matters not raised in the initial report or the summary judgment opinion and provides modifications that are not explained adequately by plaintiffs or Dr. Lewin. Although some of the supplementation may be proper, plaintiffs make no attempt to distinguish between the proper and improper supplementation. Therefore, I am denying plaintiffs' motion to supplement its expert report.

With respect to the initial report, defendants have shown that it does not comply with Rule 26(a)(2)(B) and that they have been prejudiced by the late disclosure of exhibits and calculations. If defendants had received the exhibits and calculations used to create Dr.

9

Lewin's damages report sooner, their own expert could have responded to those calculations and defendants could have had more than six days to review the exhibits and prepare for Dr. Lewin's deposition. As it turned out, defendants had only a short amount of time to review and attempt to understand Lewin's first and second reports and they still have been unable to account for some of the calculations in the initial report. Because the report fails to comply with Rule 26(a)(2)(B), I am granting defendants' motion for reconsideration and striking the expert damages report.

B. Failure of the Expert Report to Consider the Subclasses

Without an expert damages report, plaintiffs cannot establish damages in this case. It is possible that some of the problems with plaintiffs' expert damages report and untimely disclosures could be remedied. For example, if plaintiffs were to provide a more sufficient explanation of the modifications in its report and the reasons for its untimely disclosures, it may be possible to strike only portions of the report. Additionally, any prejudice to defendants could be mitigated by allowing defendants' expert to submit another rebuttal to the supplemental report. (Of course, this would not remedy the potential problems raised in defendants' motion in limine regarding the report's reliability and Lewin's ability to testify regarding the report.)

However, even if the Rule 26(a)(2)(B) problems with the report could be fixed, the

10

question remains whether the report takes adequate consideration of the subclasses at issue in this case. In the May 6, 2011 order, I noted concern with the Dr. Lewin's apparent grouping of all class members into each subclass, regardless what claims those individuals actually possess and regardless what individual and claim-specific defenses defendants are entitled to assert. I directed plaintiffs to address this issue and, in particular, identify whether the reports contain any process or methods by which plaintiffs can group absent class members and opt-in plaintiffs into the appropriate classes.

Unfortunately, plaintiffs have not offered a sufficient response to this concern. They contend that their "ability to show who belongs in each class is severely curtailed" because "[d]efendants have no records of who performed nonproductive work activities outside the window . . . [or] who performed uncompensated productive time within the window." Plts.' Br., dkt. #588, at 11. Although it is true that defendants do not have GPS records for every technician and do not have any records of the time technicians spent working at home, opt-in plaintiffs and class members should know whether *they* performed work activities outside the window, whether *they* underreported the time they spent performing installations and whether *they* received overtime compensation. Plaintiffs must know which claims they are asserting in order to prove defendants' liability for those claims. It is not defendants' burden to show whether and how plaintiffs' rights have been violated.

Plaintiffs cite Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946)

11

in support of their argument that they are not required to determine which plaintiffs and class members have claims in the particular subclasses. However, <u>Anderson</u> does not relieve plaintiffs of their burden of proving their case. In that case, the Supreme Court stated that plaintiffs in an FLSA action have the "burden of proving that [they] performed work for which [they were] not properly compensated." <u>Id.</u> at 687. The Court added that in some situations, however, it may be impossible for an employee to prove the *amount* of uncompensated work because the employer's records are "inaccurate or inadequate and the employee cannot offer convincing substitutes." <u>Id.</u> In such a situation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" <u>Id.</u> "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." <u>Id.</u>

     The rule in <u>Anderson</u> applies after the employee has proved that he is entitled to damages by "prov[ing] that he has performed work and has not been paid in accordance with the statute." <u>Id.</u> <u>Anderson</u> does not lower or eliminate plaintiffs' burden of proving that they have in fact performed work for which they were improperly compensated. Thus, although plaintiffs may be able to rely on <u>Anderson</u> to establish the amount of time for

12

which they are owed compensation, plaintiffs must first prove that they are owed compensation.

I have explained previously that plaintiffs cannot group all class members and opt-in plaintiffs together into one class to establish liability because the experiences and claims of the class members vary too widely. Some opt-in plaintiffs claim that defendants' piece-rate and efficiency policies caused them to underreport time spent performing installation and service calls. Other class members contend that defendants' timekeeping, vehicle and cell phone policies required them to perform work at home for which they were not paid. The evidence in the record thus far shows that not all plaintiffs have both types of claims and that the evidence, arguments and defenses related to each claim differ. However, plaintiffs' liability and damages model assumes either that all plaintiffs are asserting both types of claims or that a plaintiff asserting one type of claim is representative of a plaintiff asserting a different claim. In sum, the theory set forth in plaintiffs' expert damages report does not accurately capture the distinct issues represented by each subclass.

Plaintiffs' failure to respond sufficiently to the court's concerns suggests that the factual variances and distinct claims of the class members and opt-in plaintiffs have proved to be too difficult to manage collectively. If this is true, then it would inappropriate for the case to proceed further as a collective or class action. Courts have an obligation to allow cases to proceed on a collective basis only if the due process rights of all parties can be

13

protected. In addition, courts must consider whether a class can be managed coherently without prejudicing any party or becoming particularly burdensome to a jury. Frye v. Baptist Memorial Hospital, Inc., 2010 WL 3862591, *9 (W.D. Tenn. Sept. 27, 2010); Reyes v. Texas EZPawn, LP, 2007 WL 101808, *6 (S.D. Tex. Jan. 8, 2007). Usually, that means that collective treatment is appropriate only if liability can be established as to the entire class or subclass. Lugo v. Farmer's Pride, 737 F. Supp. 2d 291, 303 (E.D. Pa. 2010); Lusardi v. Xerox Corp., 118 F.R.D. 351, 370-71 (D.N.J. 1987).

Under plaintiffs' current plan, they cannot establish liability or damages fairly on a class or subclass basis. If the case were tried collectively according to plaintiffs' proposed model, the jury could reach a verdict for defendants because plaintiffs would have difficulty establishing that all absent class members had similar employment experiences and were affected by defendants' policies and practices in the same way. However, a verdict for defendants would be unfair to those plaintiffs who were denied pay under at least one of the subclaims. Similarly, if a jury reached a verdict for plaintiffs under plaintiffs' proposed liability and damages model, this would be unfair to defendants, who would be deemed liable to the entire collective-action class when they may not have undercompensated all individual members of the class or undercompensated them in the same manner.

I explained in the order certifying the collective and class actions that it may become necessary to modify or decertify the classes in this case if they prove to be unmanageable.

14

Blihovde v. St. Croix County, 219 F.R.D. 607, 614 (W.D. Wis. 2003) (district court "can decertify the class at any time before a decision on the merits") (citing Fed. R. Civ. P. 23(c)(1) and Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 896 (7th Cir. 1981)); see also In re School Asbestos Litigation, 789 F.2d 996, 1011 (3d Cir. 1986) ("When, and if, the district court is convinced that the litigation cannot be managed, decertification is proper."); Walker v. Bankers Life & Casualty Co., 2008 WL 2883614, *9 (N.D. Ill. July 28, 2008) ("If certification is later deemed improvident at any time during the course of litigation, a court may decertify the class."). At this stage, it appears that the classes are unmanageable as they are currently structured and that the class and collective actions should be decertified in order to protect the due process rights of all parties.

 I will give the parties one week to respond to this order and show cause why this collective and class action should not be decertified. There may be certain issues that can be adjudicated on a class-wide basis, such as whether technicians and defendants had reached an agreement that the piece-rate system was intended to compensate them for their nonproductive time and whether defendants' overtime calculation method was legal. If the parties believe that some distinct issues can and should go forward on a class-wide basis, they should say so. However, if I am not persuaded that class treatment would be efficient and promote the interests of justice, I will decertify the collective and class actions.

15

ORDER

IT IS ORDERED that

1. Plaintiffs' motion for leave to supplement Dr. Lewin's damages expert report, dkt. #486, is DENIED.

2. Defendants' motion for reconsideration of its motion to strike Dr. Lewin's damages expert report, dkt. #492, is GRANTED, as is the motion to strike.

3. The parties may have until May 19, 2011 to show cause why the FLSA and state law classes in this case should not be decertified. They should address the concerns raised in this opinion.

Entered this 12th day of May, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge