# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AARON ESPENSCHEID, | : |
| GARY IDLER, and MICHAEL CLAY, | : |
| on behalf of themselves and a | : |
| class of employees and/or | : |
| former employees similarly situated, | :   Case No. 09-cv-625 |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| DIRECTSAT USA, LLC and | : |
| UNITEK USA, LLC, | : |
| Defendants. | : |

## DEFENDANTS DIRECTSAT USA, LLC'S AND UNITEK USA, LLC'S PROPOSED JURY INSTRUCTIONS

OF COUNSEL:

ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.

Frederick P. Santarelli
Eric J. Bronstein
John P. Elliott
Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corp. Ctr.
925 Harvest Dr., Suite 300
Blue Bell, PA 19422
(215) 977-1000

Laura Skilton Verhoff
Drew J. Cochrane
222 W. Washington Ave., Suite 900
Madison, Wisconsin 53701-1784
(608) 256-0226

STAFFORD ROSENBAUM LLP

DATED:  May 11, 2011

COUNSEL FOR DEFENDANTS

## DEFENDANTS' PROPOSED INSTRUCTIONS

Defendants respectfully submit the following proposed jury instructions. The scope of this case is currently the subject of briefing by both parties and under consideration by the Court. As of the time of this filing, Plaintiffs have still not filed a trial plan that has been accepted by the Court, and Plaintiffs have yet to offer any guidance as to how they intend to prove damages. In spite of these issues, Defendants have attempted to draft as many appropriate instructions as possible at this time. Defendants reserve the right to supplement these instructions as some of these issues are resolved up to the time of trial.

## I.      PRE-TRIAL INSTRUCTIONS

### Defendants' Requested Instruction No.1:
### INTRODUCTORY INSTRUCTION

Members of the jury, we are about to begin the trial of the case. Before it begins, I will give you some instructions to help you understand how the trial will proceed, how you should evaluate the evidence, and how you should conduct yourselves during the trial.

<u>The Parties and the Nature of the Case:</u>

The party who begins the lawsuit is called the plaintiff. In this action, the plaintiffs are Aaron Espenscheid, Gary Idler, and Michael Clay, who are bringing this lawsuit on behalf of themselves and other employees of the Defendants. The parties against whom the suit is brought are called the defendants. In this action, the defendants are UniTek USA, LLC and DirectSat USA, LLC.

This is an action filed by Plaintiffs to recover unpaid overtime wages that they claim Defendants owe them. Plaintiffs were installation and service technicians for Defendants. They were responsible for installing, upgrading, and serving DirecTV equipment. Plaintiffs contend that they worked time that they were not permitted to record on their timesheets and that they

were denied overtime wages as a result.  Defendants contend that Plaintiffs did not perform many of the alleged tasks, that they were permitted to and did record all time worked on their timesheets, and that, in any event, Plaintiffs did not work any overtime hours for which they have not already been paid.

Because claims for unpaid overtime implicate both state and federal laws, Plaintiffs have brought their claims under the federal Fair Labor Standards Act, also referred to as the FLSA, and the overtime laws of Pennsylvania, Minnesota, and Wisconsin.  In addition, this case is certified as a collective and class action.  This means that Plaintiffs are bringing their claims not only on their own behalf, but also on behalf of other technicians who worked for DirectSat.  I will provide you with additional instructions on the issue of certification later.

**Source**:     Judge Crabb's Standard Instructions, Dkt. No. 20.

## Defendants' Requested Instruction No. 2:
## TRIAL PROCESS

The case will proceed as follows:

<u>First</u>, plaintiffs' counsel will make an opening statement outlining plaintiffs' case. Immediately after plaintiffs' statement, defendants' counsel will also make an opening statement outlining defendants' case. What is said in opening statements is not evidence; it is simply a guide to help you understand what each party expects the evidence to show.

<u>Second</u>, after the opening statements, the plaintiffs will introduce evidence in support of their claims. At the conclusion of the plaintiffs' case, the defendants may introduce evidence. The defendants are not required to introduce any evidence or to call any witnesses. If the defendants introduce evidence, the plaintiff may then introduce rebuttal evidence.

<u>Third</u>, after the evidence is presented, the parties will make closing arguments explaining what they believe the evidence has shown and what inferences you should draw from the evidence. What is said in closing argument is not evidence. The plaintiffs have the right to give the first closing argument and to make a short rebuttal argument after the defendants' closing argument.

<u>Fourth</u>, I will instruct you on the law that you are to apply in reaching your verdict.

<u>Fifth</u>, you will retire to the jury room and begin your deliberations.

**Source**:    Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 3:**
**THE BURDEN OF PROOF**

The Burden of Proof:

You will hear the term "burden of proof" used during this trial. In simple terms, the phrase "burden of proof" means that the party who makes a claim has the obligation of proving that claim.  At the end of the trial, I will instruct you on the proper burden of proof to be applied in this case.

The trial day will run from 9:00 a.m. until 5:30 p.m. You will have at least an hour for lunch and two additional short breaks, one in the morning and one in the afternoon.

**Source**:      Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 4:**
**RECESSES**

During recesses you should keep in mind the following instructions:

<u>First</u>, do not discuss the case either among yourselves or with anyone else during the course of the trial. [Do not discuss the case or post thoughts or comments about the case on social media sites.] The parties to this lawsuit have a right to expect from you that you will keep an open mind throughout the trial. You should not reach a conclusion until you have heard all of the evidence and you have heard the lawyers' closing arguments and my instructions to you on the law, and have retired to deliberate with the other members of the jury.

<u>Second</u>, do not permit any third person to discuss the case in your presence. If anyone tries to talk to you despite your telling him not to, report that fact to the court as soon as you are able. Do not discuss the event with your fellow jurors or discuss with them any other fact that you believe you should bring to the attention of the court.

<u>Third</u>, although it is a normal human tendency to converse with people with whom one is thrown in contact, please do not talk to any of the parties or their attorneys or witnesses. By this I mean not only do not talk about the case, but do not talk at all, even to pass the time of day. In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors.

<u>Fourth</u>, do not read about the case in the newspapers, or listen to radio or television broadcasts about the trial. If a newspaper headline catches your eye, do not examine the article further. Media accounts may be inaccurate and may contain matters that are not proper for your consideration. You must base your verdict solely on the evidence produced in court.

<u>Fifth</u>, no matter how interested you may become in the facts of the case, you must not do any independent research, investigation or experimentation. Do not look up materials on the

internet or in other sources.   Again, you must base your verdict solely on the evidence produced in court.


**Source**:    Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 5:**
**CREDIBILITY OF WITNESSES**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

**Source**:   Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 6:**
**DEPOSITIONS**

During the course of a trial the lawyers will often refer to and read from depositions. Depositions are transcripts of testimony taken while the parties are preparing for trial. Deposition testimony is given under oath just like testimony on the trial. You should give it the same consideration you would give it had the witnesses testified here in court.

**Source**:      Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 7:**
**OBJECTIONS**

During the trial, you will hear the lawyers make objections to certain questions or to certain answers of the witnesses. When they do so, it is because they believe the question or answer is legally improper and they want me to rule on it. Do not try to guess why the objection is being made or what the answer would have been if the witness had been allowed to answer it.

If I tell you not to consider a particular statement that has already been made, put that statement out of your mind and remember that you may not refer to it during your deliberations.

**Source**:     Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 8:**
**QUESTIONS**

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions[, or what the outcome of the case should be].

If you wish to ask a question about something you do not understand, write it down on a separate slip of paper.  If, when the lawyers have finished all of their questioning of the witness, and the question is still unanswered to your satisfaction, raise your hand, and I will take the written question from you, show it to counsel, and decide whether it is a question that can be asked. If it cannot, I will tell you that. I will try to remember to ask about questions after each witness has testified.

**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20; Seventh Circuit Model Jury Instructions 1.02.  Seventh Circuit addition is bracketed.

**Defendants' Requested Instruction No. 9:**
**EVIDENCE GENERALLY**

Evidence at a trial includes the sworn testimony of the witnesses, exhibits admitted into the record, facts judicially noticed, and facts stipulated by counsel. You may consider only evidence that is admitted into the record.

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony [or exhibits] that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses [(including press, radio, Internet or television reports you may have seen or heard, none of which are evidence)].

**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20; Seventh Circuit Model Jury Instruction 1.06.  Seventh Circuit addition is bracketed.

**Defendants' Requested Inst. No. 10:**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be either direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  [As an example, direct evidence that it is raining is testimony from the witness who says, "I was outside a minute ago and I saw it raining."   Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.] You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20; Seventh Circuit Model Jury
Instruction 1.12.  Seventh Circuit addition is bracketed.

**Defendants' Requested Instruction No. 11:**
**NOTETAKING**

The clerk will give each of you a notepad and pencil for taking notes. This does not mean you have to take notes; take them only if you want to and if you think they will help you to recall the evidence during your deliberations. Do not let notetaking interfere with your important duties of listening carefully to all of the evidence and of evaluating the credibility of the witnesses. Keep in mind that just because you have written something down it does not mean that the written note is more accurate than another juror's mental recollection of the same thing. No one of you is the "secretary" for the jury, charged with the responsibility of recording evidence. Each of you is responsible for recalling the testimony and other evidence.

Although you can see that the trial is being reported, you should not expect to be able to use trial transcripts in your deliberations. You will have to rely on your own memories.

**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Ins. No. 12:**
**CONTRADICTORY OR IMPEACHING EVIDENCE**

A witness may be discredited by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe any witness has been discredited, it is up to you to decide how much of the testimony of that witness you believe.

If a witness is shown to have given false testimony knowingly, that is, voluntarily and intentionally, about any important matter, you have a right to distrust the witness's testimony about other matters. You may reject all the testimony of that witness or you may choose to believe some or all of it.

The general rule is that if you find that a witness said something before the trial that is different from what the witness said at trial you are to consider the earlier statements only as an aid in evaluating the truthfulness of the witness's testimony at trial. You cannot consider as evidence in this trial what was said earlier before the trial began.

There is an exception to this general rule for witnesses who are the actual parties in the case. If you find that any of the parties made statements before the trial began that are different from the statements they made at trial, you may consider as evidence in the case whichever statement you find more believable.

**Source**:      Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 13:**
**DRAWING OF INFERENCES**

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts you find have been proved, such reasonable conclusions as seem justified in the light of your own experience and common sense.


**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 15:**
**ENTITY DEFENDANTS**

In this case, the defendants are business entities.  All parties are equal before the law.  A business is entitled to the same fair consideration that you would give any individual person.

**Source:**  Seventh Circuit Model Jury Instruction No. 1.03.

**Defendants' Requested Instruction No. 14:**
**EXPERTS**

A person's training and experience may make him or her a true expert in a technical field. The law allows that person to state an opinion here about matters in that particular field.  It is up to you to decide whether you believe the expert's testimony and choose to rely upon it.  Part of that decision will depend on your judgment about whether the expert's background of training and experience is sufficient for him or her to give the expert opinion that you heard, and whether the expert's opinions are based on sound reasons, judgment, and information.

During the trial, an expert witness may be asked a question based on assumptions that certain facts are true and then asked for his or her opinion based upon that assumption. Such an opinion is of use to you only if the opinion is based on assumed facts that are proven later. If you find that the assumptions stated in the question have not been proven, then you should not give any weight to the answer the expert gave to the question.

**Sources**:   Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 15:**
**BENCH CONFERENCES**

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess.   We meet because often during a trial something comes up that does not involve the jury.

**Source**:     Fifth Circuit Model Jury Instruction No. 2.7.

## II.   FIRST RECESS INSTRUCTION

**Defendants' Requested Instruction No. 16:**
**FIRST RECESS**

We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately.  Do not read or listen to any news reports of the trial.  Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.


**Source**:     Fifth Circuit Model Jury Instruction No. 2.1.

**III.      POST-TRIAL INSTRUCTIONS**

**Defendants' Requested Instruction No. 17:**
**GENERAL INSTRUCTIONS FOR CHARGE**

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room.  It is my job to decide what rules of law apply to the case and to explain those rules to you.  It is your job to follow the rules, even if you disagree with them or do not understand the reasons for them.  You must follow all of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous.  In other words, you must all agree on the answer to each question.

Your deliberations will be secret.  You will never have to explain your verdict to anyone. If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea.  It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of____ **INSERT** questions.  In answering the questions, you should consider only the evidence that has been received at this trial.  Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner.  Read the introductory portion of each question very carefully before you undertake to answer it.  Do not answer questions needlessly.

**Sources**:         Judge Crabb's Standard Instructions, Dkt. No. 20.

**Defendants' Requested Instruction No. 18:**
**BURDEN OF PROOF**

This is a civil case originally brought by three named plaintiffs against defendants.  In a civil case, the plaintiffs have the burden of proving each element of their case by what is called a preponderance of the evidence. That means plaintiffs have to prove to you, in light of all of the evidence, that what they claim is more likely so than not so. In other words, if you were to put the evidence favorable to plaintiffs and the evidence favorable to the defendant on opposite sides of a scale, the plaintiffs would have to make the scales tip somewhat on their side. If the plaintiffs fail to meet this burden, the verdict must be for the defendants. If you find after considering all of the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. However, while you may have heard some of the witnesses testify as to what the law requires, the court will provide you the rules of law applicable to this case. It is not the role of the witnesses you have heard to explain to you the law on these issues. Moreover, the witnesses have testified as to the basis for their opinions and testimony. It is up to you to decide if the witness has the knowledge or experience to offer such opinions and testimony with authority.

There are a few defenses raised by defendants on which they have the burden of proving the elements of the defenses by a preponderance of the evidence. I will instruct you further on the facts that will be necessary for you to find on that defense. A defense is proven if you find,

after considering all evidence in the case, that defendants have succeeded in proving that the

required facts are more likely so than not so.

**Sources:** Seventh Circuit Model Jury Instruction No. 1.27 (citing <u>In re Winship</u>, 397 U.S. 358, 371 (1970) (Harlan, J., concurring); <u>Sperling v. Hoffman-La Roche</u>, 118 F.R.D. 392, 406 (D.N.J. 1988), aff'd on other grounds, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); <u>Featherstone v. United Parcel Servs., Inc.</u>, No. 94-2331, 1995 U.S. App. LEXIS 12518, at *18 (4th Cir. 1995); <u>Federated Life Ins. Co. v. Walker</u>, Civ. A. No. 96-3387, 1997 U.S. Dist. LEXIS 566, at *16 n.3 (E.D. Pa. Jan. 21, 1997), aff'd, 1997 U.S. App. LEXIS 33417 (3d Cir. Oct. 27, 1997); <u>Agritronics Corp. v. National Dairy Herd Assoc., Inc.</u>, 914 F. Supp. 814, 824-25 (N.D.N.Y. 1996); <u>Siegel v. Truett-McConnell College, Inc.</u>, 13 F. Supp. 2d 1335, 1343 (N.D. Ga. 1994), <u>aff'd</u>, 73 F.3d 1108, 77 Fair Empl. Prac. Cas. (BNA) 1376 (11th Cir. 1995); <u>Parkway Baking Co. v. Freihofer Baking Co.</u>, 154 F. Supp. 823, 826 (E.D. Pa. 1957), aff'd, 255 F.2d 641 (3d Cir. 1958).

## A.     FLSA COLLECTIVE ACTION INSTRUCTIONS

### Defendants' Requested Instruction No. 19:
### COLLECTIVE ACTION (29 U.S.C. § 216(b))

A portion of this case is a collective action lawsuit under the federal Fair Labor Standards Act.  This means that the Court has allowed approximately 952 plaintiffs who have worked in ___  **INSERT** different DirectSat field offices across the country to pursue their claims collectively.  The FLSA permits employees to seek and recover unpaid overtime wages.  The plaintiffs other than the named plaintiffs, Aaron Espenschied, Gary Idler, and Michael Clay, are entitled to prevail on their claims only if they establish that they are all similarly situated to the named plaintiffs and to each other and that they have performed overtime work for which they were improperly compensated.   The Court has created three subclasses.  Those subclasses are as follows:

1. plaintiffs who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day;

2. plaintiffs who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day; and

3. plaintiffs whose regular and overtime wages for nonproductive work were calculated improperly.

In addition to satisfying specific elements discussed later, plaintiffs bear the burden of showing which, if any, of the 952 individuals belongs to which, if any, of these three subclasses.

**Source:**   Opinion and Orders, Dkt. Nos. 387, 485, 595; <u>Thiebes v. Wal-Mart Stores, Inc.</u>, 2004 Wl 1688544, at *5 (D. Or. July 26, 2004); <u>DeAsencio v. Tyson Foods</u>, No. 2:00-CV-04294-RK (E.D. Pa. June 20, 2006), rev'd on other grounds, 500 F.3d 361 (3d Cir. 2007); <u>Reich v. S. Md. Hosp., Inc.</u>, 43 F.3d 949, 952 (4th Cir. 1995); <u>Sperling v. Hoffman-La Roche</u>, 118 F.R.D. 392, 406 (D.N.J. 1988), aff'd on other grounds, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989).[1]

---

[1] Plaintiffs' submissions to the Court to date contain no plan, metric, or objective criteria for allocating individuals into these particular subclasses, despite the Court's instruction to the contrary. Defendants are including these instructions to preserve their rights at trial, but still assert that it is impossible for Plaintiffs to accomplish the task of allocating individuals into the particular subclasses without individual mini-trials concerning the experiences of all absent collective class members. <u>See, e.g.</u>, <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 341 (7th Cir. 1997) <u>Bell v. Addus Healthcare, Inc.</u>, 2007 WL 3012507, *5 (W.D. Wash. Oct. 12, 2007); <u>In re: Wal-Mart Wage and Hour Employment Practices Lit.</u>, 2008 WL 3179315 (D. Nev. June 20, 2008); <u>Roussell v. Brinker Intern., Inc.</u>, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008).

**Defendants' Requested Instruction No. 22:**
**REPRESENTATIVE TESTIMONY UNDER THE FLSA**[2]

To establish defendants' alleged failure to pay all overtime wages owed under the FLSA, the plaintiffs have put on testimony alleged to be representative of all of the plaintiffs in this case, to establish a pattern or practice of violations.   In determining whether evidence of testifying plaintiffs is fairly representative, you should decide whether their experiences also happened to non-testifying plaintiffs.   Because there are multiple subclasses in this case, you must make this determination as to the members of each particular subclass.

You may consider such factors as the nature of the work involved, the documents admitted into evidence, the working conditions, the relationships between employees and managers, the testifying plaintiffs' knowledge of other individuals and other field offices, and the detail and credibility of the testimony.   While no exact number or percentage of the plaintiffs is required to testify, the plaintiffs must present a sufficient number of representatives, which, when considered together with all of the other evidence presented in this case, establishes a pattern or practice common to the entire subclass at issue.

**Source:**   Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir. 1997); Roussell v. Brinker Intern., Inc., 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008); Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 284 (N.D. Tex. 2008); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 579 (E.D. La. 2008).

---

[2] For reasons discussed in Defendants' renewed certification papers, Defendants do not believe that representative proof is appropriate in this case because Plaintiffs cannot identify which members of the absent class have experiences that are represented by the individuals who testify.  Bell, 2007 WL 3012507, at *5; In re: Wal-Mart Wage and Hour Employment Practices Lit., 2008 WL 3179315 at *4; Roussell v. Brinker Intern., Inc., 2008 WL 2714079, at *22. Defendants include this instruction to preserve their rights at trial.

**Defendants' Requested Instruction No. 21:**
**ELEMENTS OF AN FLSA OVERTIME CLAIMS**

To establish liability under the FLSA for unpaid overtime, plaintiffs must prove three elements:

First, plaintiffs must prove that they were employed by the defendants;

Second, plaintiffs must prove that they are employees engaged in commerce or in the production of goods for commerce and were employed by an enterprise engaged in commerce or in the production of goods for commerce;

Third, plaintiffs must prove that they performed work in excess of forty hours in each workweek at issue for which they were not properly compensated, and that the employer had knowledge that such uncompensated overtime work was occurring.

**Source:**    29 U.S.C. §§ 206-07; Opinion and Orders, Dkt. Nos. 485, 595; Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-92 (1946); Harvill v. Westward Communications, 433 F.3d 428, 441 (5th Cir. 2005) Kuebel v. Black & Decker, Inc., ---F.3d----, 2011 WL 1677737, *7 (2d Cir. May 5, 2011).

**Defendants' Requested Instruction No. 21:**
**KNOWLEDGE OF WORK PERFORMED**

Under the Fair Labor Standards Act, employers only "employ" individuals when they suffer or permit work.  In other words, Defendants are only required to pay overtime wages if the plaintiffs prove that defendants knew that plaintiffs performed work for which they did not receive proper overtime compensation.   Knowledge of overtime work performed under the FLSA can be either actual knowledge or constructive knowledge.   Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime.

An employer cannot stand idly by without paying an employee that he knows or should know is working unpaid overtime hours.  However, an employer does not have such knowledge and is not in violation of the Fair Labor Standards Act if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge about such work.  For instance, an employer does not have knowledge of uncompensated work when an employee submits timekeeping or other records that do not show that hours were in fact worked, unless plaintiffs establish that the employer knew or had reason to believe that the reported information was inaccurate.

**Source:**     Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-92 (1946); Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed. App'x 448, 455 (5th Cir.2009); Harvill v. Westward Communications, 433 F.3d 428, 441 (5th Cir. 2005); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981); Newton v. City of Henderson, 47 F.3d 746, 748-50 (5th Cir. 1995).

**Defendants' Requested Instruction No. 22:**
**SUBCLASS NUMBER 1**

I will now provide you with instructions specific to the subclasses. The first subclass in the federal FLSA action includes individuals who claim that they underreported on their timesheets the number of hours they worked, either by deducting a meal break from their time sheets on days that they did not take a meal break or by reporting less hours on their timesheets than they actually worked between their first and last jobs of the day.

Plaintiffs bear the burden of establishing which, if any, of the testifying and non-testifying plaintiffs allege to have underreported their time in the manner I just discussed. If you find that Plaintiffs have identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence whether in fact the members of this class, on the whole, underreported their time by including a meal break that they did not take or by underreporting the amount of time they worked between their first and last jobs. Plaintiffs must establish that each member of this subclass experienced a violation of this sort. In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**   Court's Opinions and Orders, Dkt. Nos. 387, 485, 595; Thiebes v. Wal-Mart Stores, Inc., 2004 WL 1688544, at *5 (D. Or. July 26, 2004); DeAsencio v. Tyson Foods, No. 2:00-CV-04294-RK (E.D. Pa. June 20, 2006), rev'd on other grounds, 500 F.3d 361 (3d Cir. 2007); Reich v. S. Md. Hosp., Inc., 43 F.3d 949, 952 (4th Cir. 1995); Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 406 (D.N.J. 1988), aff'd on other grounds, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989).

**Defendants' Requested Instruction No. 23:**
**SUBCLASS NUMBER 2 – TASKS PERFORMED AT HOME**

The second subclass in the federal FLSA action includes individuals who claim that they performed one or more of several tasks before they left their homes in the morning for their first job or after they returned home at night from their last job.   They allege that they did not record the time spent performing these tasks on their timesheets.

Plaintiffs bear the burden of establishing which of the testifying and non-testifying plaintiffs allege to have not reported this time.   Individuals performing one or more of the following tasks are eligible for membership in this subclass: (1) loading and unloading of tools and equipment from their work vehicle; (2) calling customers in the morning to convey anticipated arrival times; (3) attending company meetings; (4) picking up equipment; and (5) completing certain types of paper work unrelated to routing or mapping jobs, such as closing out jobs that the plaintiffs performed during the day.

If you find that Plaintiffs have satisfied their burden of demonstrating which plaintiffs belong in this subclass and that they identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence which tasks the members of the subclass performed and whether the members of this class, on the whole, failed to include the time spent performing all or some of these tasks from their timesheets.  Plaintiffs must establish that each member of this subclass experienced an alleged violation of this sort.  In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**  Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 24:**
**SUBCLASS NUMBER 2 - PRE- AND POST-SHIFT COMMUTING**

As part of the second subclasses' claims, you have heard testimony concerning the technicians' morning and evening commutes. An employer is not required to compensate employees for commuting time at the beginning of the shift unless the commuting comes immediately after an employee's first activity that is "work." The same concept is true at the end of the shift, that is, an employer is not required to compensate employees for commuting time that comes after an employee's last activity that is "work" and that is not followed immediately by additional work.

Even if an individual performs tasks immediately before a morning commute or immediately after an evening commute, the employer is not required to compensate the employee for the commute if the employee was free to perform the various tasks at any point (or another point) during the day. That an employee chose to perform a particular task or set of tasks immediately before or after commuting does not mean that the employer must compensate the employee for this commuting time, so long as the employee could have performed the task at another point in the day.

Finally, I will soon give you an instruction on *de minimis* time. If you find that the pre-commuting tasks and activities are *de minimis*, then defendants are not required to compensate employees for the commuting time in the morning or evening.

**Source:**   29 U.S.C. § 254(a); 29 C.F.R. § 790.6(a); 29 C.F.R. § 785.16; Court's Opinion and Order, Dkt. No. 485; Rutti v. Lojack Corp., 596 F.3d 1046, 1060 (9th Cir. 2010); Kuebel v. Black & Decker, Inc., ---F.3d----, 2011 WL 1677737, *7 (2d Cir. May 5, 2011); Ahle v. Veracity Reseasrch Co., 738 F. Supp. 2d 896, 917 (D. Minn. 2010).

**Defendants' Requested Instruction No. 25:**
**SUBCLASSES NOS. 1 & 2 - UNCOMPENSATED OVERTIME**

If you find that members of subclasses 1 and 2 performed work that they did not record on their timesheets, you then must determine whether each employee worked more than forty hours per week without receiving overtime compensation for those hours. Plaintiffs bear the burden of establishing that if the members of the classes recorded the work they did not include on their timesheets, they would have worked more than forty hours in a given week. When making this determination, you should not include any periods of time during which a plaintiff was completely relieved from duty and which were long enough to enable the plaintiff to use the time effectively for his or her own purposes. Because plaintiffs may be members of more than one class, if plaintiffs establish that certain technicians belong in subclasses 1 and 2, you can consider all amounts of time they excluded from their timesheets in the aggregate. If plaintiffs are members of only one of the subclasses, you can consider only the amount of time relevant to that particular class.[3]

**Source:**   Opinion and Orders, Dkt. Nos. 485, 595; 29 C.F.R. § 785; <u>Anderson v. Mt. Clemons Pottery</u>, 328 U.S. 680 (1946); <u>Lugo v. Farmer's Pride Inc.</u>, 737 F. Supp. 2d 291, 303 (E.D. Pa. 2010); <u>Levias v. Pacific Maritime Assoc.</u>, 2010 WL 358499 (W.D. Wash. Jan. 25, 2010); <u>O'Brien v. Ed Donnelly Enterprises, Inc.</u>, 575 F.3d 567, 602-03 (6th Cir. 2009).

---

[3] This instruction does not apply to members of subclass three, as members of subclass three must, by definition, have exceeded forty hours in their workweek to be members of the subclass.

**Defendants' Requested Instruction No. 26:**
**SUBCLASS NUMBER 3**

The third and final subclass of the federal FLSA portion of this case includes individuals who claim that their overtime was not calculated properly.  These individuals claim that prior to October 4, 2009, defendants failed to pay them a separate overtime wage for non-productive work.  The method of calculation used by DirectSat from October 4, 2009 to the present is not challenged as part of this action.

To be a member of this subclass, plaintiffs must first prove by a preponderance of the evidence that they worked more than forty hours in a given work week.  To prove that defendants miscalculated the members of this subclass's overtime, plaintiffs bear the burden of showing by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time.  In other words, Plaintiffs bear the burden of showing that there was no agreement or understanding between defendants and the technicians that the piece rate they were paid covered all of the tasks they performed for DirectSat.

Where a company's policies, practices and procedures provide a seemingly reasonable explanation of a flexible workweek plan to its employees, the requirements of an "agreement" or an "understanding" is met, and plaintiffs cannot meet their burden under the law.  This "agreement" or "understanding" need not be in writing and it can be inferred from the parties' conduct.  In determining whether the plaintiffs meet their burden, you can consider, among other things, (1) testimony proffered by the parties; (2) documents admitted into evidence; and (3) the parties' course of conduct, including the payment of piece rates by defendants on a weekly basis and corresponding acceptance of those piece rate payments by the plaintiffs.

**Source:**     29 C.F.R. 778.318(c); 29 C.F.R. 778.114(a); Court's Order and Opinion, Dkt. No.
            485; <u>Urnikis-Negro v. American Family Property Servs.</u>, 616 F.3d 665 (7th Cir.
            2010).

**Defendants' Requested Instruction No. 27:**
**DE MINIMIS**

If you find that individuals performed compensable activities, employers are not required to pay for these activities if they take only an insubstantial or "*de minimis*" amount of time to complete.  De minimis is a legal term which is used to describe something that is so insubstantial it is unworthy of the law's attention.  The *de minimis* defense allows Defendants to disregard insubstantial or insignificant periods of time outside of the normal work hours, which cannot be precisely recorded for payroll purposes.  Defendants have the burden of proof on this defense and must prove by a preponderance of the evidence that the amount of time spent performing tasks such as loading or unloading tools are not significant enough to require payment under the Fair Labor Standards Act.

While there is no precise amount of time that should be considered "*de minimis*," if an employee spends less than 10 minutes each day performing the activities at issue, this time is usually found to be *de minimis*.

In deciding whether defendants have proven whether the activities at issue here are *de minimis*, you should consider the following four factors:

1.  What is the reasonable, not the actual, amount of daily time spent on the activities?

2.  What is the administrative difficulty, if any, of recording that time for payroll purposes?

3.  What is the total amount of time spent on these activities for each employee and for all of the plaintiffs collectively?

4.  Are these activities performed with regularity? In other words, are these activities performed at a fixed time every day? Are they performed at the same location and in the same manner every day? Are they performed within the same amount of time each day?

Not all of these factors need to be proven for you to find that the activities are *de minimis*. If the balance of factors results in a finding that the time spent performing unrecorded tasks is *de minimis*, the plaintiffs will not be compensated for these activities.

**Source:**   Opinion and Orders, Dkt. No. 485; 29 C.F.R. §§ 785.47; 785.48(a); <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946); <u>Lindow v. United States</u>, 738 F.2d 1057, 1062-64 (9th Cir. 1984); <u>Alvarez v. IBP Inc.</u>, 339 F.3d 894, 903-904 (9thCir. 2003), aff'd on other grounds, 126 S.Ct. 514, 525 (2005); <u>Hesseltine v. Goodyear Tire & Rubber Co.</u>, 391 F.Supp.2d 509, 518-20 (E.D. Tex. 2005); <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001), aff'd, No. 01-40477 (5th Cir. June 6, 2002); <u>Pressley v. Sanderson Farms</u>, 143 Lab. Cas. ¶34, 262, 2001 WL 850017, at *2-3 (S.D. Tex. Apr. 23, 2001), aff'd, No.01-20527 (5th Cir. Mar. 7, 2002); <u>Brock v. City of Cincinnati</u>, 236 F.3d 793 804 (6th Cir. 2001); <u>Reich v.  IBP, Inc.</u>, 38 F.3d 1123, 1125-26 (10th Cir. 1994).

**Defendants' Requested Instruction No. 28:**
**WILLFUL VIOLATION CLAIM-BURDEN OF PROOF**

If you determine that the defendants violated the Fair Labor Standards Act, you must consider whether that violation was "willful." The plaintiff bears the burden of proving by a preponderance of the evidence that any violation of the Fair Labor Standards Act was "willful."

**Source:**   29 U.S.C. § 255; <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988); <u>Cox v. Brookshire Grocery Co.</u>, 919 F.2d 354, 356 (5th Cir. 1990).

**Defendants' Requested Instruction No. 29:**
**WILLFUL VIOLATION CLAIM-DEFINING "WILLFUL"**

Not all violations of the Fair Labor Standards Act are willful. A violation of the Fair Labor Standards Act is "willful" only when the employer knew that its conduct violated the law, or the employer acted with "reckless disregard" for the matter of whether its actions were in compliance with the law. A willful violation cannot be established merely by showing or suggesting that the Defendant could have done more to eliminate alleged unreported and unpaid work. Willfulness requires more than mere negligence, unreasonable conduct or the bare fact that a pay practice violates the statute. An employer who believes in good faith that its conduct complies with the Fair Labor Standards Act cannot be found to have committed a willful violation.

**Source**:   29 U.S.C. § 255(a) <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988); <u>Blackmon v. Brookshire Grocery Co.</u>, 835 F.2d 1135, 1138 (5th Cir. 1988); <u>Edwards v. Alta Colleges, Inc.</u> 2005 U.S. Dist. LEXIS 3753, SA-03-CA-0538, *45-50 (W.D. Tex. Feb. 28, 2005); <u>Duncan v. Brockway Standard, Inc.</u>, No. 1:90-CV-2867¬, 1992 WL 510256, *6 (N.D. Ga. Sept. 21, 1992); <u>see also</u> <u>Aly v. Butts County</u>, 841 F. Supp. 1199, 1201 (M.D. Ga. 1994).[4]

---

[4] Pursuant to 29 U.S.C. § 260, if the jury finds that defendants violated the § 207 and that the violation was willful, <u>the court</u>, in its discretion, may award no liquidated damages or reduce any liquidated damage award upon a showing that the "act or omission giving rise to [this] action was in good faith and that [defendants] had "reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act[.]"

**B.     STATE LAW CLASS UNDER RULE 23**

**Defendants' Requested Instruction No. 30:**
**THE RULE 23 STATE LAW CLASSES**

In addition to the federal FLSA claim, plaintiffs also assert claims under the state laws of Wisconsin, Pennsylvania, and Minnesota.  These claims are certified as class actions.  As with the federal law claim, I have divided each state law class into three subclasses, meaning that there are a total of nine state law subclasses.  Those subclasses are defined as follows:

Wisconsin Classes:

(1) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2007 and October 13, 2009, and who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day; and

(2) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2007 and October 13, 2009, and who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day;

(3)  All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint

between October 13, 2007 and October 13, 2009, and whose regular and overtime wages for nonproductive work were calculated improperly. [5]

Minnesota Classes:

(1) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2006 and October 13, 2009, and who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day; and

(2) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2006 and October 13, 2009, and who were denied overtime because they were not compensated for work performed before their first

---

[5] Defendants object to the inclusion of the third Wisconsin class. Unlike the FLSA, the Wisconsin Payments, Claims and Collections Law and Employment Regulations provide no distinction between productive and non-productive work: the Wisconsin regulation defines the workday as "the time on any particular workday at which such employee commences their principal activity or activities and the time on any particular workday at which they cease such principal activity or activities." Wis. Adm. Code § DWD 272.12(1). It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time. The regulation acknowledges that employees may be paid by a piece rate, and that piece rate employees are entitled to overtime, § 272.12(30, but does not provide any distinction between productive and non-productive work for purposes of piece-rate employees. Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time cannot be engrafted onto the Wisconsin regulation: much of the Wisconsin regulation is derived verbatim from the FLSA regulations, Frank v. Gold'n Plump Poultry, Inc., 2007 WL 2780504, *10 (D. Minn. Sept. 24, 2007); where the Wisconsin regulations omit regulations provided under the FLSA, rules of statutory construction provide that the omission indicates a different intention, Wis. Cit. Concerned for Cranes and Doves v. Wis. Dept. of Nat'l Resources, 677 N.W. 2d 612, 627 (Wis. 2004).

installation or service job of the day or after their last installation or service job of the day;

(3) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2007 and October 13, 2009, and whose regular and overtime wages for nonproductive work were calculated improperly. [6]

Pennsylvania Classes:

(1) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2006 and October 13, 2009, and who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day; and

(2) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint

---

[6] Defendants object to the inclusion of the third Minnesota class. Unlike the FLSA, the Minnesota Payment of Wages Act and Fair Labor Standards Act provide no distinction between productive and non-productive work: the MFLSA regulation defines work to "training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available." Minn. R. 5200.0120. It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time. The statute does not provide any distinction between productive and non-productive work for purposes of piece-rate employees. Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time cannot be engrafted onto the MFLSA: the Minnesota Supreme Court has expressly declined to consider the FLSA in construing the MFLSA, "as it is structured differently from the MFLSA." Milner v. Farmers Ins. Exch., 748 N.W.2d 608, 617 (Minn. 2008) (also holding that the MFLSA and MPWA should be interpreted in light of each other).

between October 13, 2006 and October 13, 2009, and who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day;

(3) All current and former DirectSat technicians who engaged in certain work activities described in paragraph 21(A)(i)-(xvi) of plaintiffs' amended complaint between October 13, 2006 and October 13, 2009, and whose regular and overtime wages for nonproductive work were calculated improperly [7]

In addition to satisfying specific elements discussed later, plaintiffs bear the burden of showing which, if any, of the approximately 2150 individuals belongs to which, if any, of these three classes.

**Source:**        Court's Order and Opinion, Dkt. No 387.

---

[7] Plaintiffs object to the inclusion of the third Pennsylvania class. Unlike the FLSA, the Pennsylvania WPCL and MWA provide no distinction between productive and non-productive work: the MWA regulation defines work to include certain non-productive tasks by defining work as including time during which an employee is required to be "at the prescribed work place, time spent traveling as part of the duties of the employee during normal working hours." It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time. The statutes do not provide any distinction between productive and non-productive work for purposes of piece-rate employees, despite the fact that the MWA does expressly define how minimum wages are to be paid to piece-rate workers. 34 Pa. Code § 231.43(b). Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time cannot be engrafted onto the MWA: where, as here, the relevant provisions of the MWA and FLSA are substantially different, "it is inappropriate to look to federal administrative agency interpretation for guidance" in determining the scope and terms of the MWA. Bayada Nurses, Inc. v. Comm. Dept. of Labor and Ind., 958 A.2d 1050, 1059 (Pa. Cmwlth. 2008). Accordingly, the third class, those "plaintiffs whose regular and overtime wages for *nonproductive* work were calculated improperly" does not apply under Pennsylvania law.

**Defendants' Requested Instruction No. 31:**

**ROLE OF CLASS REPRESENTATIVE**

The named plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay are the class representatives of all of the Wisconsin, Minnesota and Pennsylvania classes, respectively. The named plaintiffs can only assert those claims that they individually possess, and the absent class members can only assert claims that are fairly encompassed by the named plaintiffs' claims. As a result, the absent class members' claims rise and fall with the claims of the class representative.

**Source:**   Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 320 (1980); Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir. 1997).

**Defendants' Requested Instruction No. 32:**

**WISCONSIN WAGE PAYMENTS, CLAIMS AND COLLECTIONS LAW**

Plaintiffs have brought a claim against Defendants under Wisconsin's Wage Payments, Claims and Collections Law for non-payment of overtime wages.

**Source:**      Wis. Stat. Ann. § 109.03(1); Hubbard v. Messer, 673 N.W. 2d 676, 680 (Wis. 2003).

**Defendants' Requested Instruction No. 33:**
**WISCONSIN WAGE PAYMENTS, CLAIMS AND COLLECTIONS LAW –**
**ELEMENTS OF A CLAIM**

To establish liability under the Wisconsin wage payment law, plaintiffs must show that they were employed by Defendants and that they are entitled to unpaid overtime wages. "Wages" are defined as earned compensation from personal services. "Personal services" are defined as human labor which is in the nature of a service as distinguished from the endproduct or the fruit of the service.

An employee may bring suit to recover the full amount of wages due on each regular pay day.

**Source:**      Wis. Stat. Ann. §§ 109.03(1), (5); 109.01(3); Raffailli v. Advo, Inc., 218 F. Supp. 2d 1022, 1024 (E.D. Wis. 2002).

**Defendants' Requested Instruction No. 34:**
**WISCONSIN EMPLOYMENT REGULATIONS**

Plaintiffs have brought a claim against Defendants under Wisconsin's Employment

Regulations for non-payment of overtime wages.  The Wisconsin Regulations allows employees

to recover overtime wages that are due from the employer.

**Source:**        Wis. § DWD 274.07.

**Defendants' Requested Instruction No. 35:**
**WISCONSIN EMPLOYMENT REGULATIONS –**
**ELEMENTS OF A CLAIM**

To establish liability under the Wisconsin Employment Regulations, Plaintiffs must show they were employed by Defendants and performed work in excess of 40 hours in each workweek in issue for which they were not properly compensated, and that the employer had knowledge that such uncompensated overtime work was occurring.

**Source:**      Wis. Adm. Code. §§ DWD 274.03, 272.12.

**Defendants' Requested Instruction No. 36:**
**KNOWLEDGE OF WORK PERFORMED**

Under the Wisconsin Employment Regulations, employers only "employ" individuals when they suffer or permit work. In other words, Defendants are only required to pay overtime wages if the plaintiffs prove that defendants knew that plaintiffs performed work for which they did not receive proper overtime compensation. Knowledge of overtime work performed under the Employment Regulations can be either actual knowledge or constructive knowledge. Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime.

An employer cannot stand idly by without paying an employee that he knows or should know is working unpaid overtime hours. However, an employer does not have such knowledge and is not in violation of the Employment Regulations if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge about such work. For instance, an employer does not have knowledge of uncompensated work when an employee submits timekeeping or other records that do not show that hours were in fact worked, unless plaintiffs establish that the employer knew or had reason to believe that the reported information was inaccurate.

**Source:**   Wis. Adm. Code § DWD 272.12; Anderson v. Comm'r of Taxation, 93 N.W. 2d 523, 532 (Minn. 1958) (where state statute is nearly identical to federal statute, court may look to federal case law involving substantially the same questions as persuasive in construing and applying the state statute): see Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-92 (1946); Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed. App'x 448, 455 (5th Cir.2009); Harvill v. Westward Communications, 433 F.3d 428, 441 (5th Cir. 2005); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981); Newton v. City of Henderson, 47 F.3d 746, 748-50 (5th Cir. 1995).

**Defendants' Requested Instruction No. 37:**
**WISCONSIN SUBCLASS NUMBER 1**

I will now provide you with instructions specific to the subclasses.  The first subclass in the Wisconsin action includes individuals who claim that they underreported on their timesheets the number of hours they worked, either by deducting a meal break from their time sheets on days that they did not take a meal break or by reporting less hours on their timesheets than they actually worked between their first and last jobs of the day.

Plaintiffs bear the burden of establishing which, if any, of the testifying and non-testifying plaintiffs allege to have underreported their time in the manner I just discussed.  If you find that Plaintiffs have identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence whether in fact the members of this class, on the whole, underreported their time by including a meal break that that they did not take or by underreporting the amount of time they worked between their first and last jobs.  Plaintiffs must establish that each member of this subclass experienced a violation of this sort.   In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**    Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 38:**
**WISCONSIN SUBCLASS NUMBER 2 – TASKS PERFORMED AT HOME**

The second subclass in the Wisconsin action includes individuals who claim that they performed one or more of several tasks before they left their homes in the morning for their first job or after they returned home at night from their last job.   They allege that they did not record the time spent performing these tasks on their timesheets.

Plaintiffs bear the burden of establishing which of the testifying and non-testifying plaintiffs allege to have not reported this time.   Individuals performing one or more of the following tasks are eligible for membership in this subclass: (1) loading and unloading of tools and equipment from their work vehicle; (2) calling customers in the morning to convey anticipated arrival times; (3) attending company meetings; (4) picking up equipment; and (5) completing certain types of paper work unrelated to routing or mapping jobs, such as closing out jobs that the plaintiffs performed during the day.

If you find that Plaintiffs have satisfied their burden of demonstrating which plaintiffs belong in this subclass and that they identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence which tasks the subclass members performed and whether the members of this class, on the whole, failed to include the time spent performing all or some of these tasks from their timesheets.   Plaintiffs must establish that each member of this subclass experienced an alleged violation of this sort.   In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**  Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 39:**
**SUBCLASS NUMBER 2 - PRE- AND POST-SHIFT COMMUTING[8]**

As part of the second subclasses' members' claims, you have heard testimony concerning the technicians' morning and evening commutes. An employer is not required to compensate employees for commuting time at the beginning of the shift unless the commuting comes immediately after an employee's first activity that is "work." The same concept is true at the end of the shift, that is, an employer is not required to compensate employees for commuting time that comes after an employee's last activity that is "work" and that is not followed immediately by additional work.

Even if an individual performs tasks immediately before a morning commute or immediately after an evening commute, the employer is not required to compensate the employee for the commute if the employee was free to perform the various tasks at any point during the day. That an employee chose to perform a particular task or set of tasks immediately before or after commuting does not mean that the employer must compensate the employee for this commuting time, so long as the employee could have performed the task at another point in the day.

Finally, I will soon give you an instruction on *de minimis* time. If you find that the pre-commuting tasks and activities are *de minimis*, then defendants are not required to compensate

---

[8] No Wisconsin statute, regulation or case has expressly adopted the continuous workday doctrine. Thus, Defendants object to the provision of an instruction regarding the doctrine under Wisconsin law, and instead instruct the jury as follows:

> Throughout trial, you have heard testimony concerning the technicians morning and evening commutes. This commute time is not compensable under Wisconsin law. Plaintiffs in the Wisconsin Subclasses may only recover drive time where the time is spent in traveling as part of the duties of the employee during normal working hours.

To the extent the Court opts to engraft the FLSA's doctrine onto Wisconsin law on the basis that the state and federal regulations are similarly worded, Defendants request that the Court provide the following instruction.

employees for the commuting time in the morning.

**Source:**   Wis. Adm. Code § DWD 272.12(1); Court's Opinion and Order, Dkt. No. 485; <u>Rutti v. Lojack Corp.</u>, 596 F.3d 1046, 1060 (9th Cir. 2010); <u>Kuebel v. Black & Decker, Inc.</u>, ---F.3d----, 2011 WL 1677737, *7 (2d Cir. May 5, 2011); <u>Ahle v. Veracity Reseasrch Co.</u>, 738 F. Supp. 2d 896, 917 (D. Minn. 2010).

**Defendants' Requested Instruction No. 40:**
**SUBCLASSES NOS. 1 & 2 - UNCOMPENSATED OVERTIME**

If you find that members of Wisconsin subclasses 1 and 2 performed work that they did not record on their timesheet, you then must determine whether each employee worked more than forty hours per week without receiving overtime compensation for those hours. Plaintiffs bear the burden of establishing that if the members of the classes recorded the work they did not include on their timesheets, they would have worked more than forty hours in a given week. When making this determination, you should not include any periods of time during which a plaintiff was completely relieved from duty and which were long enough to enable the plaintiff to use the time effectively for his or her own purposes. Because plaintiffs may be members of more than one class, if plaintiffs establish that certain technicians belong in subclasses 1 and 2, you can consider all amounts of time they excluded from their timesheets in the aggregate. If plaintiffs are members of only one of the subclasses, you can consider only the amount of time relevant to that particular class.

**Source:**   Opinion and Orders, Dkt. Nos. 485, 595; Wis. Stat. Ann. § 103.03; Wis. Adm. Code § DWD 274.03; Wis. Adm. Code § DWD 272.12.

**Defendants' Requested Instruction No. 41:**
**WISCONSIN SUBCLASS NUMBER 3[9]**

The third and final subclass of the Wisconsin portion of this case includes individuals who claim that their overtime was not calculated properly. These individuals claim that prior to October 4, 2009, defendants failed to pay them a separate overtime wage for non-productive work. The method of calculation used by DirectSat from October 4, 2009 to the present is not challenged as part of this action.

To prove that defendants miscalculated the members of this subclass's overtime, plaintiffs bear the burden of showing by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time. In other words, Plaintiffs bear the burden of showing that there was no agreement or understanding between defendants and the technicians that the piece rate they were paid covered all of the tasks they performed for DirectSat.

Where a company's policies, practices and procedures provide a seemingly reasonable explanation of a flexible workweek plan to its employees, the requirements of an "agreement" or an "understanding" is met, and plaintiffs cannot meet their burden under the law. This "agreement" or "understanding" need not be in writing and it can be inferred from the parties' conduct. In determining whether the plaintiffs meet their burden, you can consider, among other things, (1) testimony proffered by the parties; (2) documents admitted into evidence; and (3) the

---

[9] As discussed <u>supra</u> note 5, there is no basis in Wisconsin law for a subclass regarding the distinction between productive and non-productive time, as Wisconsin law makes no such distinction for piece rate pay. Accordingly, Defendants object to any instruction on Wisconsin Subclass 3. Defendants include this instruction, derived from the FLSA, in the event the Court opts to engraft the FLSA regulation onto Plaintiff's state law claims despite the lack of authority permitting such an incorporation and the express language of the Wisconsin statutes which do not contemplate a distinction between productive and non-productive time for piece rate employees.

parties' course of conduct, including the payment of piece rates by defendants on a weekly basis

and corresponding acceptance of those piece rate payments by the plaintiffs.

**Source:** 29 C.F.R. 778.318(c); 29 C.F.R. 778.114(a); Court's Order and Opinion, Dkt. No. 485; Urnikis-Negro v. American Family Property Servs., 616 F.3d 665 (7th Cir. 2010).

**Defendants' Requested Instruction No. 42:**
**DE MINIMIS**

If you find that individuals performed compensable activities, employers are not required to pay for these activities if they take only an insubstantial or "*de minimis*" amount of time to complete. *De minimis* is a legal term which is used to describe something that is so insubstantial it is unworthy of the law's attention. The *de minimis* defense allows Defendants to disregard insubstantial or insignificant periods of time outside of the normal work hours, which cannot be precisely recorded for payroll purposes. Defendants have the burden of proof on this defense and must prove by a preponderance of the evidence that the amount of time spent performing tasks such as loading or unloading tools are not significant enough to require payment under the Wisconsin Wage Payments Claims and Collections Law and Employment Regulations.

While there is no precise amount of time that should be considered "*de minimis*," if an employee spends less than 10 minutes each day performing the activities at issue, this time is usually found to be *de minimis*.

In deciding whether defendants have proven whether the activities at issue here are *de minimis*, you should consider the following four factors:

1. What is the reasonable, not the actual, amount of daily time spent on the activities?

2. What is the administrative difficulty, if any, of recording that time for payroll purposes?

3. What is the total amount of time spent on these activities for each employee and for all of the plaintiffs collectively?

4. Are these activities performed with regularity? In other words, are these activities performed at a fixed time every day? Are they performed at the same location and in the same manner every day? Are they performed within the same amount of time each day?

56

Not all of these factors need to be proven for you to find that the activities are *de minimis*. If the balance of factors results in a finding that the time spent performing unrecorded tasks is *de minimis*, the plaintiffs will not be compensated for these activities.

**Source:**    Opinion and Orders, Dkt. Nos. 48529 C.F.R. §§ 785.47; 785.48(a); <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946); <u>Lindow v. United States</u>, 738 F.2d 1057, 1062-64 (9th Cir. 1984); <u>Alvarez v. IBP Inc.</u>, 339 F.3d 894, 903-904 (9thCir. 2003), aff'd on other grounds, 126 S.Ct. 514, 525 (2005); <u>Hesseltine v. Goodyear Tire & Rubber Co.</u>, 391 F.Supp.2d 509, 518-20 (E.D. Tex. 2005); <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001), aff'd, No. 01-40477 (5th Cir. June 6, 2002); <u>Pressley v. Sanderson Farms</u>, 143 Lab. Cas. ¶34, 262, 2001 WL 850017, at *2-3 (S.D. Tex. Apr. 23, 2001), aff'd, No.01-20527 (5th Cir. Mar. 7, 2002); <u>Brock v. City of Cincinnati</u>, 236 F.3d 793 804 (6th Cir. 2001); <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1125-26 (10th Cir. 1994).

**Defendants' Requested Instruction No. 43:**
**MINNESOTA PAYMENT OF WAGES ACT**

Plaintiffs have brought a claim against Defendants under Minnesota's Payment of Wages

Act for non-payment of overtime wages.


**Source:**      Minn. Stat. §§ 181.101, 181.13, 181.14

**Defendants' Requested Instruction No. 44:**
**MINNESOTA PAYMENT OF WAGES ACT –**
**ELEMENTS OF A CLAIM**

To establish liability under the Minnesota Payment of Wages Act, Plaintiffs must show that they were employed by Defendants and that they were not paid all earned overtime wages. Wages are defined as compensation due an employee by reason of employment, and include wages paid by the day, hour, week, month, or piece or by commission.

All earned overtime wages must be paid at least once every 31 days on a regular pay day designated in advance by the employer. When an employee is discharged, his overtime wages actually earned are due immediately.

**Source:**    Minn. Stat. §§ 181.13, 181.101; Minn. § 177.23 (defining wage for purposes of MFLSA); <u>Milner v. Farmers Ins. Exch.</u>, 748 N.W. 2d 608, 617 (Minn. 2008) (holding that "together, these acts provide a comprehensive statutory scheme for wages and payment in Minnesota and should be interpreted in light of each other").

**Defendants' Requested Instruction No. 45:**
**MINNESOTA FAIR LABOR STANDARDS ACT**

Plaintiffs have brought a claim against Defendants under Minnesota's Fair Labor

Standards Act for non-payment of overtime wages.  The Minnesota's Fair Labor Standards Act

is a law that allows employees to recover unpaid overtime wages from the employer.

**Source:**      Minn. Stat. §§ 117.21, 117.25, 117.27.

**Defendants' Requested Instruction No. 46:**
**MINNESOTA FAIR LABOR STANDARDS ACT –**
**ELEMENTS OF A CLAIM**

To establish liability under the Minnesota Fair Labor Standards Act, Plaintiffs must prove that they were employed by Defendants, that they performed work in excess of forty-eight hours in each workweek at issue for which they were not properly compensated, and that the employer had knowledge that such uncompensated overtime work was occurring.

**Source:**   Minn. Stat. §§ 177.25, subd. 1, 177.23, subd. 5; LePage v. Blue Cross and Blue Shield Minnesota, 2008 WL 2570815, *4 (D. Minn. June 25, 2008).

**Defendants' Requested Instruction No. 47:**
**KNOWLEDGE OF WORK PERFORMED**

Under the Minnesota Fair Labor Standards Act, employers only "employ" individuals when they suffer or permit work.  In other words, Defendants are only required to pay overtime wages if the plaintiffs prove that defendants knew that plaintiffs performed work for which they did not receive proper overtime compensation.  Knowledge of overtime work performed under the Minnesota Fair Labor Standards Act can be either actual knowledge or constructive knowledge.   Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime.

An employer cannot stand idly by without paying an employee that he knows or should know is working unpaid overtime hours.  However, an employer does not have such knowledge and is not in violation of the Minnesota Fair Labor Standards Act if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge about such work. For instance, an employer does not have knowledge of uncompensated work when an employee submits timekeeping or other records that do not show that hours were in fact worked, unless plaintiffs establish that the employer knew or had reason to believe that the reported information was inaccurate.

**Source:** Minn. Stat. § 177.23, subd. 5; <u>Luiken v. Domino's Pizza, LLC</u>, 654 F. Supp. 2d 973, 977 (D. Minn. 2009) (applying its reasoning to FLSA and MFLSA definitions of "employ" together, noting the similar language of the definitions); <u>see Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-92 (1946); <u>Von Friewalde v. Boeing Aerospace Operations, Inc.</u>, 339 Fed. App'x 448, 455 (5th Cir.2009); <u>Harvill v. Westward Communications</u>, 433 F.3d 428, 441 (5th Cir. 2005); <u>Forrester v. Roth's I.G.A. Foodliner, Inc.</u>, 646 F.2d 413, 414 (9th Cir.1981); <u>Newton v. City of Henderson</u>, 47 F.3d 746, 748-50 (5th Cir. 1995).

**Defendants' Requested Instruction No. 48:**
**WILLFUL VIOLATION CLAIM-BURDEN OF PROOF**

If you determine that the defendants violated the Minnesota Fair Labor Standards Act, you must consider whether that violation was "willful." The plaintiff bears the burden of proving by a preponderance of the evidence that any violation of the Minnesota Fair Labor Standards Act was "willful."

**Source:**   Minn. Stat. § 541.07(5).

**Defendants' Requested Instruction No. 49:**
**WILLFUL VIOLATION CLAIM-DEFINING "WILLFUL"**

Not all violations of the Minnesota Fair Labor Standards Act are willful. A violation of the Minnesota Fair Labor Standards Act is "willful" only when the nonpayment is "not the result of mistake or inadvertence."   Plaintiffs must show that the employer knew that its conduct violated the law, or the employer acted with "reckless disregard" for the matter of whether its actions were in compliance with the law. A willful violation cannot be established merely by showing or suggesting that the Defendant could have done more to eliminate alleged unreported and unpaid work. Willfulness requires more than mere negligence, unreasonable conduct or the bare fact that a pay practice violates the statute. An employer who believes in good faith that its conduct complies with the Minnesota Fair Labor Standards Act cannot be found to have committed a willful violation.

**Source:**     Minn. Stat. § 541.07(5); see McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138 (5th Cir. 1988); Edwards v. Alta Colleges, Inc. 2005 U.S. Dist. LEXIS 3753, SA-03-CA-0538, *45-50 (W.D. Tex. Feb. 28, 2005); Duncan v. Brockway Standard, Inc., No. 1:90-CV-2867¬, 1992 WL 510256, *6 (N.D. Ga. Sept. 21, 1992); see also Aly v. Butts County, 841 F. Supp. 1199, 1201 (M.D. Ga. 1994).

**Defendants' Requested Instruction No. 50:**
**MINNESOTA SUBCLASS NUMBER 1**

The first subclass in the Minnesota action includes individuals who claim that they underreported on their timesheets the number of hours they worked, either by deducting a meal break from their time sheets on days that they did not take a meal break or by reporting less hours on their timesheets than they actually worked between their first and last jobs of the day.

Plaintiffs bear the burden of establishing which, if any, of the testifying and non-testifying plaintiffs allege to have underreported their time in the manner I just discussed. If you find that Plaintiffs have identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence whether in fact the members of this class, on the whole, underreported their time by including a meal break that that they did not take or by underreporting the amount of time they worked between their first and last jobs. Plaintiffs must establish that each member of this subclass experienced a violation of this sort. In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**     Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 51:**
**MINNESOTA SUBCLASS NUMBER 2**

The second subclass in the Minnesota action includes individuals who claim that they performed one or more of several tasks before they left their homes in the morning for their first job or after they returned home at night from their last job.   They allege that they did not record the time spent performing these tasks on their timesheets.

Plaintiffs bear the burden of establishing which of the testifying and non-testifying plaintiffs allege to have not reported this time.   Individuals performing one or more of the following tasks are eligible for membership in this subclass: (1) loading and unloading of tools and equipment from their work vehicle; (2) calling customers in the morning to convey anticipated arrival times; (3) attending company meetings; (4) picking up equipment; and (5) completing certain types of paper work unrelated to routing or mapping jobs, such as closing out jobs that the plaintiffs performed during the day.

If you find that Plaintiffs have satisfied their burden of demonstrating which plaintiffs belong in this subclass and that they identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence which tasks the subclass performed and whether the members of this class, on the whole, failed to include the time spent performing all or some of these tasks from their timesheets.   Plaintiffs must establish that each member of this subclass experienced an alleged violation of this sort.   In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**   Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 52:**
**SUBCLASS NUMBER 2 - PRE- AND POST-SHIFT COMMUTING**

Throughout trial, you have heard testimony concerning the technicians morning and evening commutes.  This commute time is not compensable under Minnesota law.  Plaintiffs in the Minnesota Subclasses may only recover drive time where the time is spent in traveling as part of the duties of the employee during normal working hours.

**Source:**        Minn. R. 5200.0120.[10]

---

[10] The MFLSA regulation expressly defines work as "training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available."  Minn. R. 5200.0120.  This definition would include drive time between job locations, as time "involved in the performance of duties in connection with his or her employment."  It would not, however, include commute time.  Moreover, the FLSA regulation regarding the continuous work day doctrine cannot be engrafted onto the MFLSA.  Milner v. Farmers Ins. Exch., 748 N.W.2d 608, 617 (Minn. 2008).

**Defendants' Requested Instruction No. 53:**
**MINNESOTA SUBCLASSES NOS. 1 & 2 - UNCOMPENSATED OVERTIME**

If you find that members of Minnesota subclasses 1 and 2 performed work that they did not record on their timesheet, you then must determine whether each employee worked more than forty-eight hours per week without receiving overtime compensation for those hours. Plaintiffs bear the burden of establishing that if the members of the classes recorded the work they did not include on their timesheets, they would have worked more than forty-eight hours in a given week.   When making this determination, you should not include any periods of time during which a plaintiff was completely relieved from duty and which were long enough to enable the plaintiff to use the time effectively for his or her own purposes.   Because plaintiffs may be members of more than one class, if plaintiffs establish that certain technicians belong in subclasses 1 and 2, you can consider all amounts of time they excluded from their timesheets in the aggregate.   If plaintiffs are members of only one of the subclasses, you can consider only the amount of time relevant to that particular class.

**Source:**      Opinion and Orders, Dkt. Nos. 485, 595; Minn. Stat. §§ 177.25, subd. 1; LePage v. Blue Cross and Blue Shield Minnesota, 2008 WL 2570815, *4 (D. Minn. June 25, 2008).

**Defendants' Requested Instruction No. 54:**
**MINNESOTA SUBCLASS NUMBER 3[11]**

The third and final subclass of the Minnesota portion of this case includes individuals who claim that their overtime was not calculated properly. These individuals claim that prior to October 4, 2009, defendants failed to pay them a separate overtime wage for non-productive work. The method of calculation used by DirectSat from October 4, 2009 to the present is not challenged as part of this action.

To prove that defendants miscalculated the members of this subclass's overtime, plaintiffs bear the burden of showing by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time. In other words, Plaintiffs bear the burden of showing that there was no agreement or understanding between defendants and the technicians that the piece rate they were paid covered all of the tasks they performed for DirectSat.

Where a company's policies, practices and procedures provide a seemingly reasonable explanation of a flexible workweek plan to its employees, the requirements of an "agreement" or an "understanding" is met, and plaintiffs cannot meet their burden under the law. This "agreement" or "understanding" need not be in writing and it can be inferred from the parties' conduct. In determining whether the plaintiffs meet their burden, you can consider, among other things, (1) testimony proffered by the parties; (2) documents admitted into evidence; and (3) the

---

[11] As discussed supra note 6, there is no basis in Minnesota law for a subclass regarding the distinction between productive and non-productive time, as Minnesota law makes no such distinction for piece rate pay. Accordingly, Defendants object to any instruction on Minnesota Subclass 3. Defendants include this instruction, derived from the FLSA, in the event the Court opts to engraft the FLSA regulation onto Plaintiff's state law claims despite the lack of authority permitting such an incorporation and the express language of the Minnesota statutes which do not contemplate a distinction between productive and non-productive time for piece rate employees.

parties' course of conduct, including the payment of piece rates by defendants on a weekly basis

and corresponding acceptance of those piece rate payments by the plaintiffs.

**Source:**   29 C.F.R. 778.318(c); 29 C.F.R. 778.114(a); Court's Order and Opinion, Dkt. No. 485; Urnikis-Negro v. American Family Property Servs., 616 F.3d 665 (7th Cir. 2010).

**Defendants' Requested Instruction No. 55:**
**DE MINIMIS**

If you find that individuals performed compensable activities, employers are not required to pay for these activities if they take only an insubstantial or "*de minimis*" amount of time to complete. *De minimis* is a legal term which is used to describe something that is so insubstantial it is unworthy of the law's attention. The *de minimis* defense allows Defendants to disregard insubstantial or insignificant periods of time outside of the normal work hours, which cannot be precisely recorded for payroll purposes. Defendants have the burden of proof on this defense and must prove by a preponderance of the evidence that the amount of time spent performing tasks such as loading or unloading tools are not significant enough to require payment under the Minnesota Payments of Wages Act and Minnesota Fair Labor Standards Act.

While there is no precise amount of time that should be considered "*de minimis*," if an employee spends less than 10 minutes each day performing the activities at issue, this time is usually found to be *de minimis*.

In deciding whether defendants have proven whether the activities at issue here are *de minimis*, you should consider the following four factors:

1. What is the reasonable, not the actual, amount of daily time spent on the activities?

2. What is the administrative difficulty, if any, of recording that time for payroll purposes?

3. What is the total amount of time spent on these activities for each employee and for all of the plaintiffs collectively?

4. Are these activities performed with regularity? In other words, are these activities performed at a fixed time every day? Are they performed at the same location and in the same manner every day? Are they performed within the same amount of time each day?

71

Not all of these factors need to be proven for you to find that the activities are *de minimis*. If the balance of factors results in a finding that the time spent performing unrecorded tasks is *de minimis*, the plaintiffs will not be compensated for these activities.

**Source:**     Opinion and Orders, Dkt. Nos. 48529 C.F.R. §§ 785.47; 785.48(a); <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946); <u>Lindow v. United States</u>, 738 F.2d 1057, 1062-64 (9th Cir. 1984); <u>Alvarez v. IBP Inc.</u>, 339 F.3d 894, 903-904 (9thCir. 2003), aff'd on other grounds, 126 S.Ct. 514, 525 (2005); <u>Hesseltine v. Goodyear Tire & Rubber Co.</u>, 391 F.Supp.2d 509, 518-20 (E.D. Tex. 2005); <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001), aff'd, No. 01- 40477 (5th Cir. June 6, 2002); <u>Pressley v. Sanderson Farms</u>, 143 Lab. Cas. ¶34, 262,    2001 WL 850017, at *2-3 (S.D. Tex. Apr. 23, 2001), aff'd, No.01-20527 (5th Cir. Mar. 7, 2002); <u>Brock v. City of Cincinnati</u>, 236 F.3d 793 804 (6th Cir. 2001); <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1125-26 (10th Cir. 1994).

**Defendants' Requested Instruction No. 56:**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**

Plaintiffs have brought a claim against Defendants under Pennsylvania's Wage Payment and Collection Law for non-payment of overtime wages.

**Source:**      43 Pa. Stat. § 260.9a(a); 43 Pa. Stat. Ann. § 260.3.

**Defendants' Requested Instruction No. 57:**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW –**
**ELEMENTS OF A CLAIM**

To establish liability under the Pennsylvania Wage Payment and Collection Law, Plaintiffs must prove the following elements:

1.  Plaintiffs were employed by Defendants;

2.  Plaintiffs were contractually entitled to compensation from overtime wages; and

3.  Plaintiffs did not receive their contractually entitled overtime wage.

Under the Pennsylvania wage payment law, "wages" includes any amount to be paid pursuant to an agreement between the employer and the employee regardless of whether determined on time, task, piece, commission or other method of calculation.  The contract between the parties governs in determining whether specific overtime wages are earned.  The statute only applies to back overtime wages already earned.  To state a claim for unpaid overtime wages, Plaintiffs must show that they were not paid for all work performed in accordance with the parties' overtime rate agreement.

**Source:**    43 Pa. Cons. Stat. § 260.2a.; Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990) (noting that the PWPCL "does not create a right to compensation but, rather, provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages"); Long v. Valley Forge Military Acad. Found., 2008 WL 5157508, * (E.D. Pa. Dec. 8, 2008).

**Defendants' Requested Instruction No. 58:**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW –**
**LIQUIDATED DAMAGES**

An employee seeking unpaid wages under the Pennsylvania wage law may also seek liquidated damages in an amount of 25% of unpaid wages or $500, whichever is greater, if the following requirements are met:

- Overtime wages are unpaid for 30 days beyond regular payday

OR

- Overtime wage shortages exceed 5% of gross wages payable on any two regularly scheduled paydays within the same calendar quarter

AND

- The employer does not demonstrate that the overtime wages went unpaid in good faith.

Good faith has been defined as "any contest or dispute that is based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due."  Mere bad judgment does not prevent an employer from acting in good faith under the wage law.  Where an employer fails to pay wages based on an incorrect legal conclusion, the employer may be considered to have acted in good faith where the incorrect legal conclusion was made in good faith based upon supportive authority and a thorough examination of the parties' course of conduct.

**Source:**      43 P.S. § 260.10; Keegan v. Fahnestock & Co., Inc., 1996 WL 530000, *12 (E.D.Pa. Sept. 16, 1996); Hartman v. Baker, 766 A.2d 347, 355 (Pa. Super. 2000).

**Defendants' Requested Instruction No. 59:**
**PENNSYLVANIA MINIMUM WAGE ACT**

Plaintiffs have brought a claim against Defendants under Pennsylvania's Minimum Wage Act for non-payment of overtime wages.  The Pennsylvania Minimum Wage Act is a law that allows employees to recover unpaid overtime wages from the employer.


**Source:**  Walker v. Washbasket Wash & Dry, 2001 WL 770804, *12 (E.D. Pa. July 5, 2001); 43 Pa. Stat. § 333.113.

**Defendants' Requested Instruction No. 60:**
**PENNSYLVANIA MWA –**
**ELEMENTS OF A CLAIM**

To establish liability under the Pennsylvania Minimum Wage Act, Plaintiffs must prove that they were employed by the defendants and that they performed work in excess of forty hours in each workweek at issue for which they were not properly compensated, and that the employer had knowledge that such uncompensated overtime work was occurring.

**Source:**      43 Pa. Stat. §§ 333.113, 333.104, 333.103; 34 Pa. Code. § 231.42; 34 Pa. Code § 231.43(b).

**Defendants' Requested Instruction No. 61:**
**KNOWLEDGE OF WORK PERFORMED**

Under the Pennsylvania Minimum Wage Act, employers only "employ" individuals when they suffer or permit work.  In other words, Defendants are only required to pay overtime wages if the plaintiffs prove that defendants knew that plaintiffs performed work for which they did not receive proper overtime compensation.  Knowledge of overtime work performed under the Pennsylvania Minimum Wage Act can be either actual knowledge or constructive knowledge.   Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime.

An employer cannot stand idly by without paying an employee that he knows or should know is working unpaid overtime hours.  However, an employer does not have such knowledge and is not in violation of the Pennsylvania Minimum Wage Act if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge about such work.  For instance, an employer does not have knowledge of uncompensated work when an employee submits timekeeping or other records that do not show that hours were in fact worked, unless plaintiffs establish that the employer knew or had reason to believe that the reported information was inaccurate.

**Source:**    43 Pa. Stat § 333.103; Comm. Dept. of Labor & Industry v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003) (noting that the statutory definitions of "employ" are identical under the FLSA and MWA, and referring to FLSA case law where sections of the two statutes are identical); see Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-92 (1946); Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed. App'x 448, 455 (5th Cir.2009); Harvill v. Westward Communications, 433 F.3d 428, 441 (5th Cir. 2005); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981); Newton v. City of Henderson, 47 F.3d 746, 748-50 (5th Cir. 1995).

**Defendants' Requested Instruction No. 62:**
**PENNSYLVANIA SUBCLASS NUMBER 1**

The first subclass in the Pennsylvania action includes individuals who claim that they underreported on their timesheets the number of hours they worked, either by deducting a meal break from their time sheets on days that they did not take a meal break or by reporting less hours on their timesheets than they actually worked between their first and last jobs of the day.

Plaintiffs bear the burden of establishing which, if any, of the testifying and non-testifying plaintiffs allege to have underreported their time in the manner I just discussed.  If you find that Plaintiffs have identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence whether in fact the members of this class, on the whole, underreported their time by including a meal break that that they did not take or by underreporting the amount of time they worked between their first and last jobs.  Plaintiffs must establish that each member of this subclass experienced a violation of this sort.   In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**     Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 63:**
**PENNSYLVANIA SUBCLASS NUMBER 2**

The second subclass in the Pennsylvania action includes individuals who claim that performed one or more of several tasks before they left their homes in the morning for their first job or after they returned home at night from their last job.   They allege that they did not record the time spent performing these tasks on their timesheets.

Plaintiffs bear the burden of establishing which of the testifying and non-testifying plaintiffs allege to have not reported this time.   Individuals performing one or more of the following tasks are eligible for membership in this subclass: (1) loading and unloading of tools and equipment from their work vehicle; (2) calling customers in the morning to convey anticipated arrival times; (3) attending company meetings; (4) picking up equipment; and (5) completing certain types of paper work unrelated to routing or mapping jobs, such as closing out jobs that the plaintiffs performed during the day.

If you find that Plaintiffs have satisfied their burden of demonstrating which plaintiffs belong in this subclass and that they identified the individuals who belong in this subclass, you must next determine by a preponderance of the evidence which tasks the subclass performed and whether the members of this class, on the whole, failed to include the time spent performing all or some of these tasks from their timesheets.   Plaintiffs must establish that each member of this subclass experienced an alleged violation of this sort.   In making these determinations, you should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:**     Court's Opinions and Orders, Dkt. Nos. 387, 485, 595.

**Defendants' Requested Instruction No. 64:**
**SUBCLASS NUMBER 2 - PRE- AND POST-SHIFT COMMUTING**

Throughout trial, you have heard testimony concerning the technicians morning and evening commutes. This commute time is not compensable under Pennsylvania law. Plaintiffs in the Pennsylvania Subclasses may only recover drive time where the time is spent in traveling as part of the duties of the employee during normal working hours.

**Source:**      34 Pa. Code § 231.1.[12]

---

[12] The Pennsylvania MWA regulation addresses drive time, and does so in a manner that is substantially different from the way in which the FLSA addresses drive time. Accordingly, it is inappropriate to look to the FLSA regulations for guidance on and to expand upon the plain language of the MWA and its regulations. Bayada Nurses, Inc. v. Comm. Dept. of Labor and Ind., 958 A.2d 1050, 1059 (Pa. Cmwlth. 2008). Moreover, the Pennsylvania WPCL requires Plaintiffs prove a contract or agreement to pay overtime wages for morning and evening commutes in order to be compensable under the statute. Plaintiffs cannot prove such an agreement, and accordingly are not entitled to an instruction on morning and evening commutes under Pennsylvania law.

**Defendants' Requested Instruction No. 65:**
**PENNSYLVANIA SUBCLASSES NOS. 1 & 2 - UNCOMPENSATED OVERTIME**

If you find that members of Pennsylvania subclasses 1 and 2 performed work that they did not record on their timesheet, you then must determine whether each employee worked more than forty hours per week without receiving overtime compensation for those hours. Plaintiffs bear the burden of establishing that if the members of the classes recorded the work they did not include on their timesheets, they would have worked more than forty hours in a given week. When making this determination, you should not include any periods of time during which a plaintiff was completely relieved from duty and which were long enough to enable the plaintiff to use the time effectively for his or her own purposes. Because plaintiffs may be members of more than one class, if plaintiffs establish that certain technicians belong in subclasses 1 and 2, you can consider all amounts of time they excluded from their timesheets in the aggregate. If plaintiffs are members of only one of the subclasses, you can consider only the amount of time relevant to that particular class.

**Source:**   Opinion and Orders, Dkt. Nos. 485, 595; 43 Pa. Stat. § 333.103, 333.104; 34 Pa. Code § 231.42.

**Defendants' Requested Instruction No. 66:**
**PENNSYLVANIA SUBCLASS NUMBER 3[13]**

The third and final subclass of the Pennsylvania portion of this case includes individuals who claim that their overtime was not calculated properly. These individuals claim that prior to October 4, 2009, defendants failed to pay them a separate overtime wage for non-productive work. The method of calculation used by DirectSat from October 4, 2009 to the present is not challenged as part of this action.

To prove that defendants miscalculated the members of this subclass's overtime, plaintiffs bear the burden of showing by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time. In other words, Plaintiffs bear the burden of showing that there was no agreement or understanding between defendants and the technicians that the piece rate they were paid covered all of the tasks they performed for DirectSat.

Where a company's policies, practices and procedures provide a seemingly reasonable explanation of a flexible workweek plan to its employees, the requirements of an "agreement" or an "understanding" is met, and plaintiffs cannot meet their burden under the law. This "agreement" or "understanding" need not be in writing and it can be inferred from the parties'

---

[13] As discussed supra note 7, there is no basis in Pennsylvania law for a subclass regarding the distinction between productive and non-productive time, as Pennsylvania law makes no such distinction for piece rate pay. Moreover, under the WPCL, Plaintiffs must prove an agreement between the parties to compensate for non-productive time separately in order to obtain overtime wages for non-productive time separate from the Plaintiffs' piece rate overtime. Accordingly, Defendants object to any instruction on Pennsylvania Subclass 3. Defendants include this instruction, derived from the FLSA, in the event the Court opts to engraft the FLSA regulation onto Plaintiff's state law claims despite the lack of authority permitting such an incorporation and the express language of the Pennsylvania statutes which do not contemplate a distinction between productive and non-productive time for piece rate employees and which do not permit a court to infer a distinction absent an express agreement between the parties.

conduct.  In determining whether the plaintiffs meet their burden, you can consider, among other things, (1) testimony proffered by the parties; (2) documents admitted into evidence; and (3) the parties' course of conduct, including the payment of piece rates by defendants on a weekly basis and corresponding acceptance of those piece rate payments by the plaintiffs.

**Source:**  29 C.F.R. 778.318(c); 29 C.F.R. 778.114(a); Court's Order and Opinion, Dkt. No. 485; Urnikis-Negro v. American Family Property Servs., 616 F.3d 665 (7th Cir. 2010).

**Defendants' Requested Instruction No. 67:**
**DE MINIMIS**

If you find that individuals performed compensable activities, employers are not required to pay for these activities if they take only an insubstantial or "*de minimis*" amount of time to complete. *De minimis* is a legal term which is used to describe something that is so insubstantial it is unworthy of the law's attention. The *de minimis* defense allows Defendants to disregard insubstantial or insignificant periods of time outside of the normal work hours, which cannot be precisely recorded for payroll purposes. Defendants have the burden of proof on this defense and must prove by a preponderance of the evidence that the amount of time spent performing tasks such as loading or unloading tools are not significant enough to require payment under the Pennsylvania Wage Payment and Collection Law and Minimum Wage Act.

While there is no precise amount of time that should be considered "*de minimis*," if an employee spends less than 10 minutes each day performing the activities at issue, this time is usually found to be *de minimis*.

In deciding whether defendants have proven whether the activities at issue here are *de minimis*, you should consider the following four factors:

1. What is the reasonable, not the actual, amount of daily time spent on the activities?

2. What is the administrative difficulty, if any, of recording that time for payroll purposes?

3. What is the total amount of time spent on these activities for each employee and for all of the plaintiffs collectively?

4. Are these activities performed with regularity? In other words, are these activities performed at a fixed time every day? Are they performed at the same location and in the same manner every day? Are they performed within the same amount of time each day?

Not all of these factors need to be proven for you to find that the activities are *de minimis*. If the balance of factors results in a finding that the time spent performing unrecorded tasks is *de minimis*, the plaintiffs will not be compensated for these activities.

**Source:**   Opinion and Orders, Dkt. No. 485; 29 C.F.R. §§ 785.47; 785.48(a); <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946); <u>Lindow v. United States</u>, 738 F.2d 1057, 1062-64 (9th Cir. 1984); <u>Alvarez v. IBP Inc.</u>, 339 F.3d 894, 903-904 (9thCir. 2003), aff'd on other grounds, 126 S.Ct. 514, 525 (2005); <u>Hesseltine v. Goodyear Tire & Rubber Co.</u>, 391 F.Supp.2d 509, 518-20 (E.D. Tex. 2005); <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001), aff'd, No. 01-40477 (5th Cir. June 6, 2002); <u>Pressley v. Sanderson Farms</u>, 143 Lab. Cas. ¶34, 262, 2001 WL 850017, at *2-3 (S.D. Tex. Apr. 23, 2001), aff'd, No.01-20527 (5th Cir. Mar. 7, 2002); <u>Brock v. City of Cincinnati</u>, 236 F.3d 793 804 (6th Cir. 2001); <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1125-26 (10th Cir. 1994).

## II. DAMAGES INSTRUCTIONS

**Defendants' Requested Instruction No. 68:**
**GENERAL DAMAGES INSTRUCTION**

On the damages question, the party asking for damages has the burden of convincing you, by a preponderance of the evidence, both that he or she has suffered damages and the amount of the damages.

The party seeking damages need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict. Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the Plaintiffs for their damages.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

**Defendants' Requested Instruction No. 69:**
**BURDEN OF PROVING DAMAGES UNDER THE FLSA**

If you determine that each member of the subclasses performed overtime work without proper overtime compensation, you must next determine how much work they performed in excess of forty hours without compensation.   Plaintiffs bear the burden of proving by a preponderance of the evidence that they were not properly compensated for all overtime hours worked.   The plaintiffs must meet this burden for all employees you find worked overtime hours for which they were not compensated.   In simple terms, you have previously determined that some or all employees worked overtime hours for which they were not compensated.   Now, plaintiffs must prove the amount of hours worked without overtime compensation.

 In considering whether Plaintiffs have met their burden of proving the amount of uncompensated overtime, you may consider the accuracy and adequacy of defendants' records. If you find that the plaintiffs have established that defendants' records are inadequate or inaccurate for purposes of determining the amount of overtime work performed by the plaintiffs, the plaintiffs can meet their burden of proving the amount of uncompensated overtime if they produce sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference.

If you find that plaintiffs have met this burden, the responsibility shifts to defendants to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference drawn from the plaintiffs' evidence.   If defendants meet this burden, plaintiffs can no longer rely upon an inference to prove the amount and extent of their uncompensated overtime work.   If you find that defendants have not succeeded in producing such evidence, you may find for the plaintiffs an award an appropriate amount in damages, even

though the result be only approximate.

**Source:**   Court's Order and Opinion, Dkt. No. 595; <u>Anderson v. Mt. Clemons Pottery Co.</u>, 328
U.S. 680, 686-88 (1946).[14]

---

[14] Plaintiffs have not put forward any recognizable manner for proving damages in this
case.  More specifically, Plaintiffs have not offered any metric or equation appropriate to include
in any instruction.  Thus, outside of this <u>Mt. Clemons</u> instruction, Defendants are incapable of
setting forth in an instruction the manner in which plaintiffs intend to have the jury calculate
damages.  Defendants reserve the right to do so if and when Plaintiffs are able to articulate the
manner in which they intend to prove damages. <u>See</u> Dkt. No. 595 ("Without an expert damages
report, plaintiffs cannot establish damages in this case.").

**Defendants' Requested Instruction No. 70:**
**METHOD OF CALCULATING DAMAGES UNDER THE FLSA**

If you determine that Plaintiffs proved by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time, and if you determine that each member of the subclasses performed overtime work without proper overtime compensation and the amount of uncompensated overtime, you must calculate Plaintiff's damages in the following manner:

    1.    Each plaintiff's hourly rate is computed by adding together his total earnings for the work week and divided by the number of hours worked in the week for which such compensation is paid

    2.    For the plaintiff's piece-rate hours in excess of 40 in the week he is entitled to a sum equivalent to one-half of the regular rate multiplied by the number of hours worked in excess of 40;

    3.    For the plaintiff's non-productive hours in excess of 40, he is entitled to compensation at a rate at least one and one-half times the regular rate for hours in excess of 40.

If you determine that Plaintiffs failed to prove by a preponderance of the evidence that there was no agreement or understanding between defendants and the technicians that the piece rates paid to the technicians constituted payment for all time worked, including both productive and non-productive time, and if you determine that each member of the subclasses performed overtime work without proper overtime compensation and the amount of uncompensated overtime, you must calculate Plaintiff's damages in the following manner:

    1.    Each plaintiff's hourly rate is computed by adding together his total

earnings for the work week and divided by the number of hours worked in the week for which such compensation is paid

2.  Plaintiff is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

**Source:**   29 C.F.R. § 778.318(b); 29 U.S.C. § 201(a)(1); 29 C.F.R. § 778.112.

**Defendants' Requested Instruction No. 71:**
**BURDEN OF PROVING AND METHOD OF CALCULATING DAMAGES UNDER THE WISCONSIN, MINNESOTA AND PENNSYLVANIA STATUTES**

Plaintiffs bear the burden of proving by a preponderance of the evidence that they were not properly compensated for all overtime hours worked under each of the state statutes. Plaintiffs also bear the burden of proving by a preponderance of the evidence the number of hours of work for which they were not compensated under each of the state statutes.

Under the all three state statutes, in the case of piece rate work, an employee's regular rate is determined by totaling all the sums received at such job rates in the workweek and dividing by the total hours actually worked. The employee is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

**Source:**     Wis. Adm. Code. § DWD 274.03; Minn. Stat. §§ 177.25, subd. 1; 43 Pa. Stat. § 333.113; 34 Pa. Code § 231.43(b); Urnikis-Negro v. Amer. Fam. Prop. Serv., 616 F.3d 665, 673, 681 (7th Cir. 2010) (recognizing that earnings determined on a piece-rate, salary, commission or other non-hourly basis must be computed on the basis of the hourly rate derived therefrom, and that when an employee in such a situation works overtime hours, she is compensated with an overtime premium of one-half that hourly rate).

**Defendants' Requested Instruction No. 72:**
**STATUTES OF LIMITATIONS FOR THE FLSA AND**
**WISCONSIN, MINNESOTA AND PENNSYLVANIA STATUTES**

The FLSA and Wisconsin, Minnesota and Pennsylvania statutes all contain statutes of limitations, which govern how quickly a plaintiff must bring suit after a claim arises. In other words, the statutes of limitations govern how far back in time a claim may extend from the point when the plaintiff filed his or her claim.

Under the FLSA, if plaintiffs show by a preponderance of the evidence that defendants willfully violated the FLSA, plaintiffs will have a statute of limitations of three years, and accordingly may recover wages earned from three years prior to the date they opted into the class until the present. If plaintiffs fail to show by a preponderance of the evidence that defendants willfully violated the FLSA, plaintiffs will have a statute of limitations of two years, and may only recover wages earned from two years prior to the date they opted into the class until the present.

Under the Wisconsin statutes, plaintiffs have a statute of limitations of two years, and accordingly may recover from October 13, 2007 to October 13, 2009.

Under the Minnesota Fair Labor Standards Act, if plaintiffs show by a preponderance of the evidence that defendants willfully violated the FLSA, plaintiffs will have a statute of limitations of three years, and accordingly may recover wages earned from October 13, 2006 to October 13, 2009. If plaintiffs fail to show by a preponderance of the evidence that defendants willfully violated the FLSA, plaintiffs will have a statute of limitations of two years, and may only recover wages earned from October 13, 2007 to October 13. 2009.

Under the Pennsylvania statutes, plaintiffs have a statute of limitations of three years, and accordingly may recover from October 13, 2006 to October 13, 2009.

**Sources:**       29 U.S.C. § 255; Wis. Stat. Ann. § 893.44; Minn. Stat. § 541.07(5); 43 Pa. Stat. § 260.9a(g); <u>Walker v. Washbasket Wash & Dry</u>, 2001 WL 770804, *12 (E.D. Pa. July 5, 2001).

## IV.   DELIBERATIONS

**Defendants' Requested Instruction No. 73:**
**SELECTION OF PRESIDING JUROR/COMMUNICATION WITH JUDGE/VERDICT**

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror.  This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide or select whomever you like as a presiding juror.  When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays.  He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote.  The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors.  Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me.  However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the courtroom.

Respectfully submitted,

*/s/ Colin D. Dougherty*

OF COUNSEL:

Frederick P. Santarelli
Eric J. Bronstein
John P. Elliott

ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.

Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corp. Ctr.
925 Harvest Dr., Suite 300
Blue Bell, PA 19422
(215) 977-1000

Laura Skilton Verhoff
Drew J. Cochrane

STAFFORD ROSENBAUM LLP

222 W. Washington Ave., Suite 900
Madison, Wisconsin 53701-1784
(608) 256-0226

DATED:  May 19, 2011

*Counsel for Defendants*