## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| AARON ESPENSCHEID,<br>GARY IDLER, and MICHAEL CLAY,<br>on behalf of themselves and a<br>class of employees and/or<br>former employees similarly situated,<br>　　　　Plaintiffs,<br><br>　　　　　v.<br><br>DIRECTSAT USA, LLC and<br>UNITEK USA, LLC,<br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 09-cv-625 |

## DEFENDANTS DIRECTSAT USA, LLC'S AND UNITEK USA, LLC'S
## <u>PROPOSED JURY INTERROGATORIES</u>

OF COUNSEL:

ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.

STAFFORD ROSENBAUM LLP

DATED:  May 19, 2011

Frederick P. Santarelli
Eric J. Bronstein
John P. Elliott
Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corp. Ctr.
925 Harvest Dr., Suite 300
Blue Bell, PA 19422
(215) 977-1000

Laura Skilton Verhoff
Drew J. Cochrane
222 W. Washington Ave., Suite 900
Madison, Wisconsin 53701-1784
(608) 256-0226

COUNSEL FOR DEFENDANTS

## **DEFENDANTS' PROPOSED VERDICT FORM**

Defendants respectfully submit the following proposed verdict form.  The scope of this case is currently the subject of briefing by both parties, including on the significant issue of decertification as a class or collective action.  Further, Plaintiffs' trial plan has been rejected by the Court and they are under Court Order to file a new plan, which has not yet happened.  In addition, Plaintiffs have yet to disclose how they will prove damages, and they no longer have an expert report upon which they can rely to do so.  Notwithstanding these issues, Defendants have attempted to draft as complete a version of the verdict form as possible at this time.  Defendants reserve the right to revise and supplement this verdict form as some of these issues are resolved.

As an additional preliminary matter, this case presently involves twelve subclasses comprised of a total of approximately 2,300 individuals.  At this time, Plaintiffs have not identified which class members belong in which class, nor have they identified individuals they contend to be representative of each particular class.  Thus, at this time, the notion of representative proof exists only in theory, as Plaintiffs have yet to explain how it can possibly apply to this case.  Further, each individual possesses distinct claims arising from varying employment experiences.  Given the lack of information provided by Plaintiffs concerning how they intend to proceed at trial, the disparity in the claims asserted, the lack of a trial plan,  the absence of information concerning how Plaintiffs intend to prove damages, Plaintiffs' failure to identify the composition of the class, and the myriad of open questions currently pending before the Court, the detailed verdict form with special interrogatories set forth below is necessary to afford Defendants their due process rights in the proper adjudication of these claims.

## PROPOSED SPECIAL VERDICT FORM AND INTERROGATORIES

### I.    FLSA SUBCLASS 1 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative[1] evidence that <u>all</u> of the persons in this subclass (listed on Exhibit A),[2] in fact, worked through their lunch every day of every week that he or she worked for Defendants, with no break, but recorded a lunch break on their timesheets?

<div align="center">Circle one:    YES    NO</div>

(b) If you answered "NO" to Question 1(a), go to Question 2.  If you answered "YES" to Question 1(a), have the plaintiffs proven the number of minutes in each week that each technician spent working during a recorded lunch break.

<div align="center">Circle one:    YES    NO</div>

(c) If you answered "NO" to Question 1(b), go to Question 2.  If you answered "YES" to Question 1(b), how many minutes in each week did each technician spend working during a recorded lunch break? _____

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in this subclass were, in fact, performing work during recorded lunch breaks?

<div align="center">Circle one:    YES    NO</div>

---

[1] While Plaintiffs have referenced the notion of representative proof in the abstract, they have not shown how or why representative proof is applicable here, nor have they identified which individuals are allegedly representative of which absent class members or non-testifying opt-ins.  Defendants, therefore, object to representative proof.  Given the disparity in claims, theories, and alleged employment experiences, Defendants maintain that (as opposed to representative proof), Plaintiffs must produce "direct" evidence for each class member.  <u>See</u> <u>Roussell v. Brinker Intern., Inc.</u>, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008).

[2] Pursuant to this Court's directives (and consistent with Plaintiffs' own previous representations), Plaintiffs must identify which individuals belong in which of the subclasses. While Defendants assert that this is not a task Plaintiffs can (or have even attempted to) complete, this verdict form presumes that Plaintiffs have done so, and that the subclass members will be listed in the Exhibits discussed herein.

**Question No. 2:**

(a) Have the plaintiffs proven through direct or representative evidence that <u>all</u> of the persons in this subclass (listed on Exhibit A), in fact, performed work on each day of every week that they worked for Defendants (other than time spent working during lunch) between their first and last jobs of the day that they did not record on their timesheets?

    Circle one:  YES    NO

(b) If you answered "NO" to Question 2(a), go to Question 3.  If you answered "YES" to Question 2(a), have the plaintiffs proven the number of minutes in each workweek that each technician spent working between their first and last jobs of each day that they did not record on their timesheets.

    Circle one:  YES    NO

(c) If you answered "NO" to Question 2(b), go to Question 3.  If you answered "YES" to Question 2(b), how many minutes in each week did each technician spend working between their first and last jobs of the day that they did not record on their timesheets?

      _____

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in of this subclass were, in fact, performing work between their first and last jobs of the day that they did not record on their timesheets?

    Circle one:  YES    NO

**Question No. 3:**

If you answered "NO" to any subpart of Questions 1 or 2, go to the next interrogatory.  If you answered "YES" to all subparts of Questions 1 or 2, have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

    Circle one:  YES    NO

**Question No. 4:**

If your answer to Question 3 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the FLSA by not paying all members of this subclass overtime compensation they were owed.

    Circle one:  YES    NO

## II.      FLSA SUBCLASS 2 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative evidence that all members of this subclass (listed in Exhibit B) performed one or more of the following tasks on a daily basis during each week worked for Defendants[3]:

    1.   Loading tools into the van in the morning.         YES _____    NO _____

    2.   Loading equipment into the van in the morning.    YES _____    NO _____

    3.   Unloading tools from the van at night.          YES _____    NO _____

    4.   Unloading equipment from the van at night.     YES _____    NO _____

    5.   Calling customers from home.              YES _____    NO _____

    6.   Attending meetings.                    YES _____    NO _____

    7.   Picking up equipment from the field office.    YES _____    NO _____

    8.   Performing paperwork at home (aside from routing).  YES _____    NO _____

(b) If you answered "NO" to any of the above tasks, do not address any further questions involving that particular task or tasks.  If you answered "YES" to any of tasks listed in Question 1(a)(1)-(8), have the plaintiffs proven through direct or representative evidence that all members of this subclass did not, in fact, record the time spent performing one or more of these tasks on their timesheets on a daily basis during each week worked for Defendants:

    1.   Loading tools into the van in the morning.         YES _____    NO _____

    2.   Loading equipment into the van in the morning.    YES _____    NO _____

    3.   Unloading tools from the van at night.           YES _____    NO _____

---

[3] The Court has permitted individuals to join this class even if they did not perform all of the listed tasks.  However, the question of which tasks were performed by which individuals and for how long bear directly on, <u>inter alia</u>, (1) the number of hours worked per technician each week and (2) Defendants' de minimis defense—two defenses that are critical to Defendants opposing the claims in subclass two.  If Plaintiffs do not identify which tasks they perform and the amount of time spent performing such tasks, Defendants' right to defend against the allegations of subclass 2 will be eviscerated.  The only alternative is to provide the jury with a spreadsheet with the names of class members and eight tasks, and have the jury fill in which plaintiff performed which tasks, an "option" which is no alternative at all.

    4.  Unloading equipment from the van at night.      YES _____   NO _____

    5.  Calling customers from home.        YES _____   NO _____

    6.  Attending meetings.      YES _____   NO _____

    7.  Picking up equipment from the field office.      YES _____   NO _____

    8.  Performing paperwork at home (aside from routing).  YES _____   NO _____

(c) If you answered "NO" to any task listed in Question 1(b)(1)-(8), do not address any further questions involving that particular task or tasks. If you answered "YES" to any of the tasks listed in Question 1(b), have plaintiffs proven how many total minutes on each day of every week worked each technician spent performing the identified tasks?

<div align="center">Circle one:    YES          NO</div>

(d) If you answered "YES" to Question 1(c), how many minutes in each week have the plaintiffs proven that each technician spent performing the following tasks:

    1.  Loading tools into the van in the morning.      _____

    2.  Loading equipment into the van in the morning.      _____

    3.  Unloading tools from the van at night.      _____

    4.  Unloading equipment from the van at night.      _____

    5.  Calling customers from home.      _____

    6.  Attending meetings.      _____

    7.  Picking up equipment from the field office.      _____

    8.  Performing paperwork at home (aside from routing).  _____

(e) If you did not provide an answer for any of the tasks listed in Question 1(d), go to the next interrogatory. If you did provide an answer for one or more of the tasks listed in 1(d), have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> members of this subclass were spending the amount of time identified in Question 1(d) performing tasks and that the <u>all</u> members of this subclass were omitting this time from their timesheets on a daily basis during every week worked for Defendants?

<div align="center">Circle one:    YES          NO</div>

(f) If you answered "NO" to Question 2(e), proceed to the next Interrogatory.  If you answered "YES" to Question 1(e), have Defendants proven that the uncompensated work (identified in Question 1(d)) was <u>de minimis</u>?[4]

Circle one:        YES              NO

**Question No. 2:**

Have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

Circle one:        YES              NO

**Question No. 3:**

If your answer to Question 2 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the FLSA by not paying all members of this subclass all of the overtime compensation they were owed?

Circle one:        YES              NO

---

[4] While Defendants have expended considerable efforts attempting to do so, Defendants submit that it is not possible or practical to draft a jury interrogatory concerning the de minimis doctrine in a manner that comports with Defendants' due process rights.  Some individuals allege to have performed many tasks at home at night, and if proven, those tasks in the aggregate may avoid the de minimis doctrine.  However, even those individuals who claim to have performed multiple tasks at night vary as to the amount of time it took to perform the tasks, and they vary on whether they claim to have performed all of the alleged tasks every night.  Thus, even among individuals who claim to have performed multiple tasks, the de minimis doctrine will apply in many circumstances.  Aside from these individuals, many technicians testified that they did not perform many tasks at home in the morning or at night.  For instance, many technicians testified that they would simply bring their handheld birddog inside at night, an activity which is clearly de minimis.  Those individuals would be subject to a de minimis argument.  Put simply, this is not a case where individuals performed the same or similar tasks on a regular basis for the same amount of time, such that a defendant can fairly raise a <u>de minimis</u> defense as to the entire class.

## III.    FLSA SUBCLASS 3 INTERROGATORY

**Question 1:**

Do you find plaintiffs have proven that there was no express or implicit agreement or understanding between <u>all</u> of the individuals listed on Exhibit C and defendants that the piece rate payments they received for work performed on a daily basis each week from defendants would compensate plaintiffs for productive and non-productive time worked?

Circle one:     YES          NO

**Question 2:**

If your answer to Question 1 is "NO," go to the next Interrogatory.  If your answer to Question 1 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the FLSA by incorrectly calculating the plaintiffs' overtime pay?

Circle one:     YES          NO

## IV.   WISCONSIN SUBCLASS 1 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative[5] evidence that <u>all</u> of the persons in this subclass (listed on Exhibit D),[6] in fact, worked through their lunch every day of every week worked for Defendants, with no break, but recorded a lunch break on their timesheets?

<div align="center">Circle one:     YES          NO</div>

(b) If you answered "NO" to Question 1(a), go to Question 2.  If you answered "YES" to Question 1(a), have the plaintiffs proven the number of minutes on each day of every week worked that each technician spent working during a recorded lunch break.

<div align="center">Circle one:     YES          NO</div>

(c) If you answered "NO" to Question 1(b), go to Question 2.  If you answered "YES" to Question 1(b), how many minutes in each week did each technician spend working during a recorded lunch break? _____

(d) Have plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in this subclass were, in fact, performing work during a recorded lunch breaks on each day of every week worked for Defendants?

<div align="center">Circle one:     YES          NO</div>

---

[5] While Plaintiffs have referenced the notion of representative proof in the abstract, they have not shown how or why representative proof is applicable here, nor have they identified which individuals are allegedly representative of which absent class members or non-testifying opt-ins.  Defendants, therefore, object to representative proof.  Given the disparity in claims, theories, and alleged employment experiences, Defendants maintain that (as opposed to representative proof), Plaintiffs must produce "direct" evidence for each class member.  <u>See</u> <u>Roussell v. Brinker Intern., Inc.</u>, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008).

[6] Pursuant to this Court's directives (and consistent with Plaintiffs' own previous representations), Plaintiffs must identify which individuals belong in which of the subclasses.  While Defendants assert that this is not a task Plaintiffs can (or have even attempted to) complete, this verdict form presumes that Plaintiffs have done so, and that the subclass members will be listed in the Exhibits discussed herein.

**Question No. 2:**

(a) Have the plaintiffs proven through direct or representative evidence that <u>all</u> of the persons in this subclass (listed on Exhibit D), in fact, in fact, performed work on each day of every week that they worked for Defendants (other than time spent working during lunch) between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">Circle one:     YES          NO</div>

(b) If you answered "NO" to Question 2(a), go to Question 3.  If you answered "YES" to Question 2(a), have the plaintiffs proven the number of minutes in each workweek that each technician spent working between their first and last jobs of the day that they did not record on their timesheets.

<div align="center">Circle one:     YES          NO</div>

(c) If you answered "NO" to Question 2(b), go to Question 3.  If you answered "YES" to Question 2(b), how many minutes in each week did each technician spend working between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">_____</div>

(d) Have plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in of this subclass were, in fact, performing work between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">Circle one:     YES          NO</div>

**Question No. 3:**

If you answered "NO" to any subpart of Questions 1 or 2, go to the next interrogatory.  If you answered "YES" to all subparts of Questions 1 or 2, have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

<div align="center">Circle one:     YES          NO</div>

## V.    WISCONSIN SUBCLASS 2 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative evidence that all members of this subclass (listed in Exhibit E) performed one or more of the following tasks on a daily basis during each week worked for Defendants[7]:

    1.   Loading tools into the van in the morning.      YES _____ NO _____

    2.   Loading equipment into the van in the morning.    YES _____ NO _____

    3.   Unloading tools from the van at night.      YES _____ NO _____

    4.   Unloading equipment from the van at night.    YES _____ NO _____

    5.   Calling customers from home.      YES _____ NO _____

    6.   Attending meetings.      YES _____ NO _____

    7.   Picking up equipment from the field office.    YES _____ NO _____

    8.   Performing paperwork at home (aside from routing).  YES _____ NO _____

(b) If you answered "NO" to any of the above tasks, do not address any further questions involving that particular task or tasks.  If you answered "YES" to any of tasks listed in Question 1(a)(1)-(8), have the plaintiffs proven through direct or representative evidence that all members of this subclass did not, in fact, record the time spent performing one or more of these tasks on their timesheets on a daily basis during each week worked for Defendants:

    1.   Loading tools into the van in the morning.      YES _____ NO _____

    2.   Loading equipment into the van in the morning.    YES _____ NO _____

    3.   Unloading tools from the van at night.      YES _____ NO _____

---

[7] The Court has permitted individuals to join this class even if they did not perform all of the listed tasks.  However, the question of which tasks were performed by which individuals and for how long bear directly on, inter alia, (1) the number of hours worked per technician each week and (2) Defendants' de minimis defense—two defenses that are critical to Defendants opposing the claims in subclass two.  If Plaintiffs do not identify which tasks they perform and the amount of time spent performing such tasks, Defendants' right to defend against the allegations of subclass 2 will be eviscerated.  The only alternative is to provide the jury with a spreadsheet with the names of class members and eight tasks, and have the jury fill in which plaintiff performed which tasks, an "option" which is no alternative at all.

4. Unloading equipment from the van at night.     YES _____ NO _____

5. Calling customers from home.     YES _____ NO _____

6. Attending meetings.     YES _____ NO _____

7. Picking up equipment from the field office.     YES _____ NO _____

8. Performing paperwork at home (aside from routing).     YES _____ NO _____

(c) If you answered "NO" to any task listed in Question 1(b)(1)-(8), do not address any further questions involving that particular task or tasks. If you answered "YES" to any of the tasks listed in Question 1(b), have plaintiffs proven how many total minutes in each week each technician spent performing the identified tasks?

Circle one:     YES          NO

(d) If you answered "YES" to Question 1(c), how many minutes in each week have the plaintiffs proven that each technician spent performing the following tasks:

1. Loading tools into the van in the morning.     _____

2. Loading equipment into the van in the morning.     _____

3. Unloading tools from the van at night.     _____

4. Unloading equipment from the van at night.     _____

5. Calling customers from home.     _____

6. Attending meetings.     _____

7. Picking up equipment from the field office.     _____

8. Performing paperwork at home (aside from routing).     _____

(e) If you did not provide an answer for any of the tasks listed in Question 1(d), go to the next interrogatory. If you did prove an answer for one or more of the tasks listed in 1(d), have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that all members of this subclass were spending the amount of time identified in Question 1(d) performing tasks and that the all members of this subclass were omitting this time from their timesheets?

Circle one:     YES          NO

(f) If you answered "NO" to Question 2(e), proceed to the next Interrogatory.  If you answered "YES" to Question 1(e), have Defendants proven that the uncompensated work (identified in Question 1(d)) was <u>de minimis</u>?[8]

Circle one:     YES          NO

**<u>Question No. 2</u>:**

Have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

Circle one:     YES          NO

---

[8] While Defendants have expended considerable efforts attempting to do so, Defendants submit that it is not possible or practical to draft a jury interrogatory concerning the de minimis doctrine in a manner that comports with Defendants' due process rights.  Some individuals allege to have performed many tasks at home at night, and if proven, those tasks in the aggregate may avoid the de minimis doctrine.  However, even those individuals who claim to have performed multiple tasks at night vary as to the amount of time it took to perform the tasks, and they vary on whether they claim to have performed all of the alleged tasks every night.  Thus, even among individuals who claim to have performed multiple tasks, the de minimis doctrine will apply in many circumstances.  Aside from these individuals, many technicians testified that they did not perform many tasks at home in the morning or at night.  For instance, many technicians testified that they would simply bring their handheld birddog inside at night, an activity which is clearly de minimis.  Those individuals would be subject to a de minimis argument.  Put simply, this is not a case where individuals performed the same or similar tasks on a regular basis for the same amount of time, such that a defendant can fairly raise a <u>de minimis</u> defense as to the entire class.

## VI.   WISCONSIN SUBCLASS 3 INTERROGATORY[9]

**Question 1:**

Do you find plaintiffs have proven that there was no express or implicit agreement or understanding between <u>all</u> of the individuals listed on Exhibit F and defendants that the piece rate payments they received each week for their daily work from defendants would compensate plaintiffs for productive and non-productive time worked?

<div align="center">

Circle one:       YES             NO

</div>

---

[9] Defendants object to the inclusion of the third Wisconsin class.  Unlike the FLSA, the Wisconsin Payments, Claims and Collections Law and Employment Regulations provide no distinction between productive and non-productive work: the Wisconsin regulation defines the workday as "the time on any particular workday at which such employee commences their principal activity or activities and the time on any particular workday at which they cease such principal activity or activities."  Wis. Adm. Code § DWD 272.12(1).  It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time.  The regulation acknowledges that employees may be paid by a piece rate, and that piece rate employees are entitled to overtime, § 272.12(30, but does not provide any distinction between productive and non-productive work for purposes of piece-rate employees.  Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time <u>cannot</u> be engrafted onto the Wisconsin regulation: much of the Wisconsin regulation is derived verbatim from the FLSA regulations, <u>Frank v. Gold'n Plump Poultry, Inc.</u>, 2007 WL 2780504, *10 (D. Minn. Sept. 24, 2007); where the Wisconsin regulations omit regulations provided under the FLSA, rules of statutory construction provide that the omission indicates a different intention, <u>Wis. Cit. Concerned for Cranes and Doves v. Wis. Dept. of Nat'l Resources</u>, 677 N.W. 2d 612, 627 (Wis. 2004).

## PROPOSED SPECIAL VERDICT FORM AND INTERROGATORIES

### VII.   MINNESOTA SUBCLASS 1 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative[10] evidence that <u>all</u> of the persons in this subclass (listed on Exhibit G),[11] in fact, worked through their lunch every day of every week worked for Defendants, with no break, but recorded a lunch break on their timesheets?

<div align="center">

Circle one:      YES           NO

</div>

(b) If you answered "NO" to Question 1(a), go to Question 2.  If you answered "YES" to Question 1(a), have the plaintiffs proven the number of minutes in each week that each technician spent working during a recorded lunch break.

<div align="center">

Circle one:      YES           NO

</div>

(c) If you answered "NO" to Question 1(b), go to Question 2.  If you answered "YES" to Question 1(b), how many minutes in each week did each technician spend working during a recorded lunch break?  _____

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in this subclass were, in fact, performing work during a recorded lunch breaks?

<div align="center">

Circle one:      YES           NO

</div>

---

[10] While Plaintiffs have referenced the notion of representative proof in the abstract, they have not shown how or why representative proof is applicable here, nor have they identified which individuals are allegedly representative of which absent class members or non-testifying opt-ins.  Defendants, therefore, object to representative proof.  Given the disparity in claims, theories, and alleged employment experiences, Defendants maintain that (as opposed to representative proof), Plaintiffs must produce "direct" evidence for each class member.  <u>See</u> <u>Roussell v. Brinker Intern., Inc.</u>, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008).

[11] Pursuant to this Court's directives (and consistent with Plaintiffs' own previous representations), Plaintiffs must identify which individuals belong in which of the subclasses.  While Defendants assert that this is not a task Plaintiffs can (or have even attempted to) complete, this verdict form presumes that Plaintiffs have done so, and that the subclass members will be listed in the Exhibits discussed herein.

**Question No. 2:**

(a) Have the plaintiffs proven through direct or representative evidence that <u>all</u> of the persons in this subclass (listed on Exhibit G), in fact, in fact, performed work on each day of every week that they worked for Defendants (other than time spent working during lunch) between their first and last jobs of the day that they did not record on their timesheets?

<p style="text-align:center">Circle one:      YES           NO</p>

(b) If you answered "NO" to Question 2(a), go to Question 3.  If you answered "YES" to Question 2(a), have the plaintiffs proven the number of minutes in each workweek that each technician spent working between their first and last jobs of the day that they did not record on their timesheets.

<p style="text-align:center">Circle one:      YES           NO</p>

(c) If you answered "NO" to Question 2(b), go to Question 3.  If you answered "YES" to Question 2(b), how many minutes in each week did each technician spend working between their first and last jobs of the day that they did not record on their timesheets?

_____

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in of this subclass were, in fact, performing work between their first and last jobs of the day that they did not record on their timesheets?

<p style="text-align:center">Circle one:      YES           NO</p>

**Question No. 3:**

   If you answered "NO" to any subpart of Questions 1 or 2, go to the next interrogatory.  If you answered "YES" to all subparts of Questions 1 or 2, have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 48 for each week of their employments for which they did not receive overtime compensation?

<p style="text-align:center">Circle one:      YES           NO</p>

**Question No. 4:**

  If your answer to Question 3 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the Minnesota FLSA by not paying all members of this subclass overtime compensation they were owed.

       Circle one:  YES   NO

## VIII.   MINNESOTA SUBCLASS 2 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative evidence that all members of this subclass (listed in Exhibit H) performed one or more of the following tasks on a daily basis during every week worked for Defendants [12]:

   9.   Loading tools into the van in the morning.          YES _____   NO _____

   10. Loading equipment into the van in the morning.       YES _____   NO _____

   11. Unloading tools from the van at night.               YES _____   NO _____

   12. Unloading equipment from the van at night.           YES _____   NO _____

   13. Calling customers from home.                         YES _____   NO _____

   14. Attending meetings.                                  YES _____   NO _____

   15. Picking up equipment from the field office.          YES _____   NO _____

   16. Performing paperwork at home (aside from routing).   YES _____   NO _____

(b) If you answered "NO" to any of the above tasks, do not address any further questions involving that particular task or tasks.  If you answered "YES" to any of tasks listed in Question 1(a)(1)-(8), have the plaintiffs proven through direct or representative evidence that all members of this subclass did not, in fact, record the time spent performing one or more of these tasks on their timesheets on a daily basis during every week worked for Defendants:

   17. Loading tools into the van in the morning.           YES _____   NO _____

   18. Loading equipment into the van in the morning.       YES _____   NO _____

   19. Unloading tools from the van at night.               YES _____   NO _____

_____

   [12] The Court has permitted individuals to join this class even if they did not perform all of the listed tasks.  However, the question of which tasks were performed by which individuals and for how long bear directly on, <u>inter alia</u>, (1) the number of hours worked per technician each week and (2) Defendants' de minimis defense—two defenses that are critical to Defendants opposing the claims in subclass two.  If Plaintiffs do not identify which tasks they perform and the amount of time spent performing such tasks, Defendants' right to defend against the allegations of subclass 2 will be eviscerated.  The only alternative is to provide the jury with a spreadsheet with the names of class members and eight tasks, and have the jury fill in which plaintiff performed which tasks, an "option" which is no alternative at all.

20. Unloading equipment from the van at night.    YES _____   NO _____

21. Calling customers from home.    YES _____   NO _____

22. Attending meetings.    YES _____   NO _____

23. Picking up equipment from the field office.    YES _____   NO _____

24. Performing paperwork at home (aside from routing).   YES _____   NO _____

(c) If you answered "NO" to any task listed in Question 1(b)(1)-(8), do not address any further questions involving that particular task or tasks.  If you answered "YES" to any of the tasks listed in Question 1(b), have plaintiffs proven how many total minutes in each week each technician spent performing the identified tasks?

Circle one:    YES    NO

(d) If you answered "YES" to Question 1(c), how many minutes in each week have the plaintiffs proven that each technician spent performing the following tasks:

25. Loading tools into the van in the morning.    _____

26. Loading equipment into the van in the morning.    _____

27. Unloading tools from the van at night.    _____

28. Unloading equipment from the van in the night.    _____

29. Calling customers from home.    _____

30. Attending meetings.    _____

31. Picking up equipment from the field office.    _____

32. Performing paperwork at home (aside from routing).    _____

(e) If you did not provide an answer for any of the tasks listed in Question 1(d), go to the next interrogatory.  If you did provide an answer for one or more of the tasks listed in 1(d), have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that all members of this subclass were spending the amount of time identified in Question 1(d) performing tasks and that the all members of this subclass were omitting this time from their timesheets?

Circle one:    YES    NO

(f) If you answered "NO" to Question 2(e), proceed to the next Interrogatory.  If you answered "YES" to Question 1(e), have Defendants proven that the uncompensated work (identified in Question 1(d)) was de minimis?[13]

<div align="center">Circle one:      YES           NO</div>

**Question No. 2:**

Have plaintiffs proven that all persons in this subclass did, in fact, perform work hours in excess of 48 for each week of their employments for which they did not receive overtime compensation?

<div align="center">Circle one:      YES           NO</div>

**Question No. 3:**

If your answer to Question 2 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the Minnesota FLSA by not paying all members of this subclass all of the overtime compensation they were owed.

<div align="center">Circle one:      YES           NO</div>

---

[13] While Defendants have expended considerable efforts attempting to do so, Defendants submit that it is not possible or practical to draft a jury interrogatory concerning the de minimis doctrine in a manner that comports with Defendants' due process rights.  Some individuals allege to have performed many tasks at home at night, and if proven, those tasks in the aggregate may avoid the de minimis doctrine.  However, even those individuals who claim to have performed multiple tasks at night vary as to the amount of time it took to perform the tasks, and they vary on whether they claim to have performed all of the alleged tasks every night.  Thus, even among individuals who claim to have performed multiple tasks, the de minimis doctrine will apply in many circumstances.  Aside from these individuals, many technicians testified that they did not perform many tasks at home in the morning or at night.  For instance, many technicians testified that they would simply bring their handheld birddog inside at night, an activity which is clearly de minimis.  Those individuals would be subject to a de minimis argument.  Put simply, this is not a case where individuals performed the same or similar tasks on a regular basis for the same amount of time, such that a defendant can fairly raise a de minimis defense as to the entire class.

## IX.   MINNESOTA SUBCLASS 3 INTERROGATORY[14]

**Question 1:**

Do you find plaintiffs have proven that there was no express or implicit agreement or understanding between <u>all</u> of the individuals listed on Exhibit I and defendants that the piece rate payments they received each week for their daily work from defendants would compensate plaintiffs for productive and non-productive time worked each day?

<div align="center">Circle one:      YES           NO</div>

**Question 2:**

If your answer to Question 1 is "NO," go to the next Interrogatory.  If your answer to Question 1 is "YES," do you find that plaintiffs have proven that defendants showed reckless disregard for whether they were violating the Minnesota FLSA by incorrectly calculating the plaintiffs' overtime pay.

<div align="center">Circle one:      YES           NO</div>

---

[14] Defendants object to the inclusion of the third Minnesota class. Unlike the FLSA, the Minnesota Payment of Wages Act and Fair Labor Standards Act provide no distinction between productive and non-productive work: the MFLSA regulation defines work to "training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available."  Minn. R. 5200.0120.  It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time.  The statute does not provide any distinction between productive and non-productive work for purposes of piece-rate employees.  Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time <u>cannot</u> be engrafted onto the MFLSA: the Minnesota Supreme Court has expressly declined to consider the FLSA in construing the MFLSA, "as it is structured differently from the MFLSA."  <u>Milner v. Farmers Ins. Exch.</u>, 748 N.W.2d 608, 617 (Minn. 2008) (also holding that the MFLSA and MPWA should be interpreted in light of each other).

## X.      PENNSYLVANIA SUBCLASS 1 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative[15] evidence that <u>all</u> of the persons in this subclass (listed on Exhibit J),[16] in fact, worked through their lunch every day of every week worked for Defendants, with no break, but recorded a lunch break on their timesheets?

<div align="center">Circle one:      YES            NO</div>

(b) If you answered "NO" to Question 1(a), go to Question 2.  If you answered "YES" to Question 1(a), have the plaintiffs proven the number of minutes in each week that each technician spent working during a recorded lunch break.

<div align="center">Circle one:      YES            NO</div>

(c) If you answered "NO" to Question 1(b), go to Question 2.  If you answered "YES" to Question 1(b), how many minutes in each week did each technician spend working during a recorded lunch break? _____

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in this subclass were, in fact, performing work during a recorded lunch breaks?

<div align="center">Circle one:      YES            NO</div>

---

[15] While Plaintiffs have referenced the notion of representative proof in the abstract, they have not shown how or why representative proof is applicable here, nor have they identified which individuals are allegedly representative of which absent class members or non-testifying opt-ins.  Defendants, therefore, object to representative proof.  Given the disparity in claims, theories, and alleged employment experiences, Defendants maintain that (as opposed to representative proof), Plaintiffs must produce "direct" evidence for each class member.  <u>See</u> <u>Roussell v. Brinker Intern., Inc.</u>, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008).

[16] Pursuant to this Court's directives (and consistent with Plaintiffs' own previous representations), Plaintiffs must identify which individuals belong in which of the subclasses.  While Defendants assert that this is not a task Plaintiffs can (or have even attempted to) complete, this verdict form presumes that Plaintiffs have done so, and that the subclass members will be listed in the Exhibits discussed herein.

**Question No. 2:**

(a) Have the plaintiffs proven through direct or representative evidence that <u>all</u> of the persons in this subclass (listed on Exhibit J), in fact, in fact, performed work on each day of every week that they worked for Defendants (other than time spent working during lunch) between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">Circle one:     YES          NO</div>

(b) If you answered "NO" to Question 2(a), go to Question 3.  If you answered "YES" to Question 2(a), have the plaintiffs proven the number of minutes in each workweek that each technician spent working between their first and last jobs of the day that they did not record on their timesheets.

<div align="center">Circle one:     YES          NO</div>

(c) If you answered "NO" to Question 2(b), go to Question 3.  If you answered "YES" to Question 2(b), how many minutes in each week did each technician spend working between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">_____</div>

(d) Have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that <u>all</u> of the persons in of this subclass were, in fact, performing work between their first and last jobs of the day that they did not record on their timesheets?

<div align="center">Circle one:     YES          NO</div>

**Question No. 3:**

If you answered "NO" to any subpart of Questions 1 or 2, go to the next interrogatory.  If you answered "YES" to all subparts of Questions 1 or 2, have plaintiffs proven that <u>all</u> persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

<div align="center">Circle one:     YES          NO</div>

**Question No. 4:**

If your answer to Question 3 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that plaintiffs have proven that plaintiffs were contractually entitled to this overtime compensation?

<div align="center">Circle one:     YES          NO</div>

**Question No. 5:**

If your answer to Question 4 is "NO," go to the next Interrogatory.  If your answer to Question 4 is "YES," do you find that Plaintiff's unpaid overtime wages were unpaid for 30 days beyond the regular pay day or that the wage shortages exceed 5% of gross wages payable on any two regularly scheduled paydays within the same calendar quarter?

Circle one:      YES           NO

**Question No. 6:**

If your answer to Question 5 is "NO," go to the next Interrogatory.  If your answer to Question 5 is "YES," do you find that Defendants demonstrated a contest or dispute of their obligation to pay overtime wages that was based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due?

Circle one:      YES           NO

## XI.   PENNSYLVANIA SUBCLASS 2 INTERROGATORY

**Question No. 1:**

(a) Have the plaintiffs proven through direct or representative evidence that all members of this subclass (listed in Exhibit K) performed one or more of the following tasks on a daily basis during each week worked for Defendants[17]:

    33. Loading tools into the van in the morning.     YES _____   NO _____

    34. Loading equipment into the van in the morning.     YES _____   NO _____

    35. Unloading tools from the van at night.     YES _____   NO _____

    36. Unloading equipment from the van at night.     YES _____   NO _____

    37. Calling customers from home.     YES _____   NO _____

    38. Attending meetings.     YES _____   NO _____

    39. Picking up equipment from the field office.     YES _____   NO _____

    40. Performing paperwork at home (aside from routing).   YES _____   NO _____

(b) If you answered "NO" to any of the above tasks, do not address any further questions involving that particular task or tasks. If you answered "YES" to any of tasks listed in Question 1(a)(1)-(8), have the plaintiffs proven through direct or representative evidence that all members of this subclass did not, in fact, record the time spent performing one or more of these tasks on their timesheets on a daily basis during each week worked for Defendants:

    41. Loading tools into the van in the morning.     YES _____   NO _____

    42. Loading equipment into the van in the morning.     YES _____   NO _____

    43. Unloading tools from the van at night.     YES _____   NO _____

---

[17] The Court has permitted individuals to join this class even if they did not perform all of the listed tasks. However, the question of which tasks were performed by which individuals and for how long bear directly on, <u>inter alia</u>, (1) the number of hours worked per technician each week and (2) Defendants' de minimis defense—two defenses that are critical to Defendants opposing the claims in subclass two. If Plaintiffs do not identify which tasks they perform and the amount of time spent performing such tasks, Defendants' right to defend against the allegations of subclass 2 will be eviscerated. The only alternative is to provide the jury with a spreadsheet with the names of class members and eight tasks, and have the jury fill in which plaintiff performed which tasks, an "option" which is no alternative at all.

44. Unloading equipment from the van at night.     YES _____   NO _____

45. Calling customers from home.                   YES _____   NO _____

46. Attending meetings.                            YES _____   NO _____

47. Picking up equipment from the field office.    YES _____   NO _____

48. Performing paperwork at home (aside from routing).  YES _____   NO _____

(c) If you answered "NO" to any task listed in Question 1(b)(1)-(8), do not address any further questions involving that particular task or tasks. If you answered "YES" to any of the tasks listed in Question 1(b), have plaintiffs proven how many total minutes in each week each technician spent performing the identified tasks?

        Circle one:     YES          NO

(d) If you answered "YES" to Question 1(c), how many minutes in each week have the plaintiffs proven that each technician spent performing the following tasks:

49. Loading tools into the van in the morning.          _____

50. Loading equipment into the van in the morning.      _____

51. Unloading tools from the van at night.              _____

52. Unloading equipment from the van in the night.      _____

53. Calling customers from home.                        _____

54. Attending meetings.                                 _____

55. Picking up equipment from the field office.         _____

56. Performing paperwork at home (aside from routing).  _____

(e) If you did not provide an answer for any of the tasks listed in Question 1(d), go to the next interrogatory. If you did provide an answer for one or more of the tasks listed in 1(d), have Plaintiffs proven through direct or representative evidence that Defendants had actual or constructive knowledge that all members of this subclass were spending the amount of time identified in Question 1(d) performing tasks and that the all members of this subclass were omitting this time from their timesheets?

        Circle one:     YES          NO

(f) If you answered "NO" to Question 2(e), proceed to the next Interrogatory.  If you answered "YES" to Question 1(e), have Defendants proven that the uncompensated work (identified in Question 1(d)) was de minimis?[18]

<div align="center">Circle one:      YES            NO</div>

**Question No. 2:**

Have plaintiffs proven that all persons in this subclass did, in fact, perform work hours in excess of 40 for each week of their employments for which they did not receive overtime compensation?

<div align="center">Circle one:      YES            NO</div>

**Question No. 3:**

If your answer to Question 2 is "NO," go to the next Interrogatory.  If your answer to Question 2 is "YES," do you find that plaintiffs have proven that plaintiffs were contractually entitled to this overtime compensation?

<div align="center">Circle one:      YES            NO</div>

**Question No. 4:**

If your answer to Question 3 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that Plaintiff's unpaid overtime wages were unpaid for 30 days beyond the regular pay day or that the wage shortages exceed 5% of gross wages payable on any two regularly scheduled paydays within the same calendar quarter?

<div align="center">Circle one:      YES            NO</div>

---

[18] While Defendants have expended considerable efforts attempting to do so, Defendants submit that it is not possible or practical to draft a jury interrogatory concerning the de minimis doctrine in a manner that comports with Defendants' due process rights.  Some individuals allege to have performed many tasks at home at night, and if proven, those tasks in the aggregate may avoid the de minimis doctrine.  However, even those individuals who claim to have performed multiple tasks at night vary as to the amount of time it took to perform the tasks, and they vary on whether they claim to have performed all of the alleged tasks every night.  Thus, even among individuals who claim to have performed multiple tasks, the de minimis doctrine will apply in many circumstances.  Aside from these individuals, many technicians testified that they did not perform many tasks at home in the morning or at night.  For instance, many technicians testified that they would simply bring their handheld birddog inside at night, an activity which is clearly de minimis.  Those individuals would be subject to a de minimis argument.  Put simply, this is not a case where individuals performed the same or similar tasks on a regular basis for the same amount of time, such that a defendant can fairly raise a de minimis defense as to the entire class.

<div align="center">27</div>

**<u>Question No. 5</u>:**

      If your answer to Question 4 is "NO," go to the next Interrogatory.  If your answer to Question 4 is "YES," do you find that Defendants demonstrated a contest or dispute of their obligation to pay overtime wages that was based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due?

                  Circle one:     YES          NO

## XII.   PENNSYLVANIA SUBCLASS 3 INTERROGATORY[19]

**Question 1:**

Do you find plaintiffs have proven that there was no express or implicit agreement or understanding between all of the individuals listed on Exhibit L and defendants that the piece rate payments they received each week for their daily work from defendants would compensate plaintiffs for productive and non-productive time worked each day?

Circle one:      YES              NO

**Question No. 2:**

If your answer to Question 1 is "NO," go to the next Interrogatory.  If your answer to Question 1 is "YES," do you find that plaintiffs have proven that plaintiffs were contractually entitled to this overtime compensation?

Circle one:      YES              NO

**Question No. 3:**

If your answer to Question 4 is "NO," go to the next Interrogatory.  If your answer to Question 4 is "YES," do you find that Plaintiff's unpaid overtime wages were unpaid for 30 days beyond the regular pay day or that the wage shortages exceed 5% of gross wages payable on any two regularly scheduled paydays within the same calendar quarter?

Circle one:      YES              NO

---

[19] Plaintiffs object to the inclusion of the third Pennsylvania class. Unlike the FLSA, the Pennsylvania WPCL and MWA provide no distinction between productive and non-productive work: the MWA regulation defines work to include certain non-productive tasks by defining work as including time during which an employee is required to be "at the prescribed work place, time spent traveling as part of the duties of the employee during normal working hours." It is undisputed that under the piece rate system a computed hourly rate was generated for each plaintiff accounting for every hour recorded, including productive and non-productive time.  The statutes do not provide any distinction between productive and non-productive work for purposes of piece-rate employees, despite the fact that the MWA does expressly define how minimum wages are to be paid to piece-rate workers.  34 Pa. Code § 231.43(b).  Moreover, the FLSA regulation requiring payment for non-productive work where there is no agreement that the piece-rate payment will compensate for productive and non-productive time cannot be engrafted onto the MWA: where, as here, the relevant provisions of the MWA and FLSA are substantially different, "it is inappropriate to look to federal administrative agency interpretation for guidance" in determining the scope and terms of the MWA.  Bayada Nurses, Inc. v. Comm. Dept. of Labor and Ind., 958 A.2d 1050, 1059 (Pa. Cmwlth. 2008).  Accordingly, the third class, those "plaintiffs whose regular and overtime wages for *nonproductive* work were calculated improperly" does not apply under Pennsylvania law.

**<u>Question No. 4</u>:**

If your answer to Question 3 is "NO," go to the next Interrogatory.  If your answer to Question 3 is "YES," do you find that Defendants demonstrated a contest or dispute of their obligation to pay overtime wages that was based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due?

<div align="center">Circle one:     YES          NO</div>

## XIII.  DAMAGES

**Question No. 1:**

If you answered YES to Question I.3, but NO to Question I.4, indicate the damages for plaintiffs in the FLSA Subclass I from the date of when each plaintiff opted in with a two year statute of limitations.

Amount:  _____

If you answered YES to to Question I.3, and YES to Question I.4, indicate the damages for plaintiffs in the FLSA Subclass I from the date of when each plaintiff opted in with a three year statute of limitations.

Amount:  _____

**Question No. 2:**

If you answered YES to Question II.2 but NO to Question II.3, indicate the damages for plaintiffs in the FLSA Subclass II from the date of when each plaintiff opted in with a two year statute of limitations.

Amount:  _____

If you answered YES to to Question II.2, and YES to Question II.3, indicate the damages for plaintiffs in the FLSA Subclass II from the date of when each plaintiff opted in with a three year statute of limitations.

Amount:  _____

**Question No. 3:**

If you answered YES to Question III.1 but NO to Question III.2, indicate the damages for plaintiffs in the FLSA Subclass III from the date of when each plaintiff opted in with a two year statute of limitations.

Amount:  _____

If you answered YES to to Question III.1, and YES to Question III.2, indicate the damages for plaintiffs in the FLSA Subclass III from the date of when each plaintiff opted in with a three year statute of limitations.

Amount:  _____

**Question No. 4:**

      If you answered YES to Question IV.3, indicate the damages for plaintiffs in the Wisconsin Subclass I from October 13, 2007 to October 13, 2009.

                    Amount: _____

**Question No. 5:**

      If you answered YES to Question V.2, indicate the damages for plaintiffs in the Wisconsin Subclass II from October 13, 2007 to October 13, 2009.

                    Amount: _____

**Question No. 6:**

      If you answered YES to Question VI.1, indicate the damages for plaintiffs in the Wisconsin Subclass III from October 13, 2007 to October 13, 2009.

                    Amount: _____

**Question No. 7:**

      If you answered YES to Question VII.3, but NO to Question VII.4, indicate the damages for plaintiffs in the Minnesota Subclass I from October 13, 2007 to October 13, 2009.

                    Amount: _____

      If you answered YES to Question VII.3, and YES to Question VII.4, indicate the damages for plaintiffs in the Minnesota Subclass I from October 13, 2006 to October 13, 2009.

                    Amount: _____

**Question No. 8:**

      If you answered YES to Question VIII.2 but NO to Question II.3, indicate the damages for plaintiffs in the Minnesota Subclass II from October 13, 2007 to October 13, 2009.

                    Amount: _____

      If you answered YES to to Question VIII.2, and YES to Question VIII.3, indicate the damages for plaintiffs in the Minnesota Subclass II from October 13, 2006 to October 13, 2009.

Amount: _____

## Question No. 9:

If you answered YES to Question IX.1 but NO to Question IX.2, indicate the damages for plaintiffs in the Minnesota Subclass III from October 13, 2007 to October 13, 2009.

Amount: _____

If you answered YES to to Question IX.1, and YES to Question IX.2, indicate the damages for plaintiffs in the Minnesota Subclass III from October 13, 2006 to October 13, 2009.

Amount: _____

## Question No. 10:

If you answered YES to Question X.4, but NO to Questions X.5 or X.6, indicate the damages for plaintiffs in the Pennsylvania Subclass I from October 13, 2007 to October 13, 2009.

Amount: _____

If you answered YES to Question X.4, and YES to Questions X.5 or X.6, indicate the damages for plaintiffs in the Pennsylvania Subclass I from October 13, 2007 to October 13, 2009 with an additional 25% of the wages awarded in liquidated damages or $500 per plaintiff, whichever is greater.

Amount: _____

## Question No. 11:

If you answered YES to Question XI.3 but NO to Questions XI.4 and XI.5, indicate the damages for plaintiffs in the Pennsylvania Subclass II from October 13, 2007 to October 13, 2009.

Amount: _____

If you answered YES to Question XI.3, and YES to Questions XI.4 and XI.5, indicate the damages for plaintiffs in the Pennsylvania Subclass II from October 13, 2007 to October 13, 2009 with an additional 25% of the wages awarded in liquidated damages or $500 per plaintiff, whichever is greater.

Amount: _____

**Question No. 12:**

If you answered YES to Question XII.2 but NO to Questions XII.3 and XII.4, indicate the damages for plaintiffs in the Pennsylvania Subclass III from October 13, 2007 to October 13, 2009.

Amount:   _____

If you answered YES to Question XII.2, and YES to Questions XII.3 and XII.4, indicate the damages for plaintiffs in the Pennsylvania Subclass III from October 13, 2007 to October 13, 2009 with an additional 25% of the wages awarded in liquidated damages or $500 per plaintiff, whichever is greater.

Amount:   _____

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Colin D. Dougherty*

</div>

OF COUNSEL:                    Frederick P. Santarelli
                              Eric J. Bronstein
                              John P. Elliott
ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.    Colin D. Dougherty
                              Gregory S. Voshell
                              Union Meeting Corp. Ctr.
                              925 Harvest Dr., Suite 300
                              Blue Bell, PA 19422
                              (215) 977-1000

                              Laura Skilton Verhoff
                              Drew J. Cochrane
STAFFORD ROSENBAUM LLP        222 W. Washington Ave., Suite 900
                              Madison, Wisconsin 53701-1784
                              (608) 256-0226

DATED:  May 19, 2011          *Counsel for Defendants*