## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
_____

AARON ESPENSCHEID,
GARY IDLER, and
MICHAEL CLAY,
on behalf of themselves and a class
of employees and/or former employees
similarly situated,

        Plaintiffs,

v.                                   Case No.  09-cv-625

DIRECTSAT USA, LLC,
and
UNITEK USA, LLC,

        Defendants.

_____

### PLAINTIFFS' RESPONSE TO MAY 12, 2011 ORDER
_____

NOW COME Plaintiffs Aaron Espenscheid, Gary Idler and Michael Clay, on behalf of themselves and a class of similarly situated employees, by their attorneys Gingras Cates & Luebke and Axley Brynelson, LLP, and respectfully submit the following response to this Court's May 12, 2011 Order.

### I.      Introduction.

This is a collective action under the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the wage and overtime laws of Wisconsin, Minnesota and Pennsylvania.  This case is scheduled for trial on June 6, 2011.  On February 10, 2011, this Court created and certified twelve subclasses that are defined, in large measure, by specific descriptions of liability that Plaintiffs had identified earlier, i.e., (1) plaintiffs

who were denied overtime because they recorded a lunch break that they did not take or otherwise underreported hours they worked between their first and last installation or service job of the day; (2) plaintiffs who were denied overtime because they were not compensated for work performed before their first installation or service job of the day or after their last installation or service job of the day, and (3) plaintiffs whose overtime wages for nonproductive work were calculated improperly. (Dckt. # 595, pp. 1-2). Defendants argued that individual differences as to what work specific technicians performed should bar certification. This Court, consistent with applicable law, rejected Defendants' individualized differences arguments.

In opposing Plaintiffs' Rule 23 Class Certification Motion and supporting Defendants' decertification of the FLSA collection action, Defendants again raised the issue of individual differences. In response, and to categorize Defendants' unlawful conduct, Plaintiffs identified specific work tasks for which class members were not compensated. Plaintiffs never intended for these descriptions to be used as class definitions. Plaintiffs have never claimed that every class member worked through unpaid lunches, unloaded and loaded their vehicles each day or performed particular uncompensated work tasks. Rather, Plaintiffs have always asserted that technicians performed work of which Defendants were aware and for which the technicians were not compensated. Plaintiffs' liability "theories" were simply intended as one way to examine Defendants' violations of federal and state wage and hour law. Liability could have been examined by focusing on non-productive versus productive time or in other ways.

Certification, liability and damages are three distinct issues that have become unnecessarily intertwined in this case. This Court certified the national and state law

classes because the class members were paid on a piece-rate basis and subject to Defendants' uniform national pay policies and practices. Plaintiffs can establish liability on a class-wide basis with representative proof as described in the Amended Trial Plan. Plaintiffs can establish liability by showing that Defendants knowingly failed to compensate technicians for work they performed. Whether the work was done at a technician's home or at a customer's residence is not relevant to liability or certification. Defendants would be liable under federal and state wage and law hour law, regardless of where and when the work was performed if Defendants knew the work was being performed and they did not compensate Plaintiff class members. It is only for purposes of damages where it may make a difference as to whether uncompensated work was productive or non-productive time. Even then, it does not matter whether the work was performed at a technician's home or at a customer's residence, or elsewhere. If the jury determines that there was no agreement that compensation for productive time was intended to cover all hours worked, it will be necessary to calculate productive and nonproductive time.

This Court has expressed concern that the Class may include members that possibly are not entitled to recovery. The Court focused on this as a certification issue. By definition, class actions are not a perfect system for allocating damages. Damage awards frequently are based upon averages, so there will always be individuals who receive a more favorable result and those who receive a less favorable result than they are entitled to. A defendant is not treated unfairly because it can present evidence that some individuals in the Class are not entitled to recovery and a jury can adjust damages accordingly. This is not a certification issue, but a damages issue.

Issues of liability and certification overlap considerably in this case, resulting in substantial prejudice to the technicians.  For purposes of establishing liability, Plaintiffs are only required to prove that the technicians performed compensable work, with Defendants' knowledge, that they were not paid for.  Even so, descriptions of liability that were never intended to provide the boundaries for specific class definitions are now woven into the definition for each subclass.  Despite the Court's instruction to the contrary, it will be difficult for Plaintiffs to provide an objective framework for identifying each class member within the current class definitions without making individualized findings of liability.  *See Ostler v. Level 3 Commc'ns, Inc.*, 2002 WL 31040337, at *2 (S.D. Ind. Aug. 27, 2002)("Where such a determination on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class is unmanageable virtually by definition.").[1]  Moreover, the *only* reason why Plaintiffs may be unable to identify class members who have been "denied overtime" on a class-wide basis is because Defendants failed to keep accurate records, in violation of state and federal wage and hour laws.  Defendants stand poised to benefit from this misconduct, leaving Plaintiffs behind to clean up their mess.

Plaintiffs would respectfully submit that the overlap between certification and liability, as expressed in the twelve subclasses, has created significant problems in this case.  At the present time, a finding of liability is a condition precedent to membership in the class.  Under the Court's proposed subclasses, a technician is a class member if he can show, as a threshold matter, that he has a claim.  If a technician cannot meet this

---

[1]   Plaintiffs still believe that this case could be tried with the existing subclasses, provided that all of the technicians are in each subclass (with an opportunity for Defendants to show if a certain class member or set of class members are not entitled to damages).  However, Plaintiffs never anticipated that it would be necessary to first identify each class member through individualized inquiries and would respectfully object to such a process.

threshold showing, he will not be bound by a resultant judgment because he is not a class member.  Such an approach creates uncertainty and undermines the goals of efficiency, fairness and finality that are contemplated by Rule 23 and the collective action procedure.

As the Court is aware, there are wage and hour cases from other jurisdictions in which technicians have made similar, if not identical, claims against DirectSat/Unitek. For example, the United States District Court for the Northern District of Illinois certified a Rule 23 class against DirectSat on behalf of "all individuals who were employed by DirectSat as service technicians or production technicians in the state of Illinois between December 3, 2006 and June 11, 2008."  *Farmer v. DirectSat USA LLC,* Case 1:08-cv-03962 (N.D. Ill. 2008).  As is the case here, the technicians in *Farmer* were deprived of compensation for hours worked pursuant to uniform national policies.  In addressing DirectSat's argument that the proposed class included individuals who "may not have suffered any of the alleged damages," the Court noted that such "slight overbreadth is necessary to avoid the rule that a class definition cannot require a threshold finding of liability."  *Farmer* at p. 3.

In another Unitek wage and hour case, the United States District Court for the Western District of Tennessee recently addressed the role of representative proof in a collective action involving a class of "all FTS technicians."  *Monroe v. FTS USA, LLC et al.*, 2011 WL 442050 (W.D. Tenn. 2011)(*See also* Dckt. # 74, p. 2).  According to the Complaint in *Monroe,* the class definition was, "individuals who were, or are, employed by Defendants as 'technicians' at Defendants' numerous locations across the country during the last three years." (Complaint in Case No. 2:08-cv-02100-BBD-cgc ¶ 7 (W.D. Tenn.)).  In rejecting Defendants' familiar mantra regarding "individualized inquiries,"

the court explained that "a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23 precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of non-testifying plaintiffs and thereby arrive at an approximation of damages." *Monroe* at 2011 WL 442050 at *14 (collecting cases). Notably, *Monroe* did not state or imply that expert testimony was required to prove damages under the FLSA.

Both *Monroe* and *Farmer* are instructive with respect to the appropriate class definition and the use of representative proof.  Notably, both courts employ class definitions that are objective and definitive.  Each definition includes technicians, including technicians who may not have a claim, with no threshold finding of liability. This observation is critical, as it illustrates that a class definition does not require mathematical precision or a precedent finding of liability but, rather, sufficient objective criteria that capture similarly situated claimants.   Indeed, there is nothing in Rule 23 or the collective action procedure that requires all members of a class to have a viable claim for the class to go forward.  To the extent that Defendants contend that a specific Plaintiff, or set of Plaintiffs, were compensated for all time worked, "the more appropriate procedural vehicle is a motion for summary judgment seeking dismissal of such plaintiff(s), not a motion to decertify the entire collective action." *Andrako v. U.S. Steel Corp.*, 2011 WL 855341 at *6, n. 2 (W.D. Pa. 2011); *see also Bradford v. Bed Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1351 (N.D. Ga. 2002)(the fact that some plaintiffs may have already received compensation for overtime worked does not preclude collective adjudication; if that happens, "some individual damages hearings may be required."); s*ee also Segar v. Smith*, 738 F.2d 1249, 1291 (D.C. 1984)("[i]f effective

6

relief for victims of discrimination necessarily entails the risk that a few nonvictims might also benefit from relief, then the employer, as a proven discriminator, must bear that risk.").[2]

Plaintiffs now submit this response to the Court's May 12, 2011 Order.  (Dckt. # 595).  In so doing, Plaintiffs respectfully request that this Court reconsider its earlier denial of Plaintiffs' proposed class definition, as modified, which provides an objective mechanism for the identification of class members whose claims can later be decided on a representative basis when questions of liability are submitted to a jury.  In support of this request, Plaintiffs present three primary reasons why the Court should not decertify the national FLSA class or any of the state law wage and hour classes, including subclasses.  First, as stated above, the Court has incorrectly focused on liability theories in defining subclasses.  Second, although the Court's subclasses may work for purposes of liability, as the Court recognized in its Certification Order, "[i]t may become necessary to modify these classes and subclasses for purposes of trial and damages calculations in particular."  (Dkt # 387, p. 54).  Here, the damages issues are interconnected and the subclasses created by the Court are unmanageable.  For example, on liability, the jury will determine whether or not the parties agreed that compensation for productive time was intended to cover all time worked.  If the jury finds no such agreement, the method for calculating damages will differ significantly from how damages would be calculated if an agreement existed.  There is not, per se, a miscalculation subclass.  If the jury finds no agreement, on a company-wide basis, it follows that Defendants miscalculated

---

[2]   *Segar* illustrates that damages calculations may, at times, result in payment to class members that do not have viable claims.  The Court recognized this possibility and concluded that the policies that underscore the anti-discrimination laws would allow for such a result.  The same result should follow here in light of the Defendants' violations of Federal wage and hour laws.

overtime pay. The proper calculation of damages will require the consideration of productive and non-productive time (time worked "outside the window" and time worked "inside the window").

The Court should modify the class definition(s) for purposes of damages. If necessary, Defendants can present proof that identifies technicians who are not in the respective classes or subclasses and the jury can reduce damages accordingly.

Finally, the Court can permit the case to proceed to trial using the subclasses defined by the Court and pursuant to the Plaintiffs' Amended Trial Plan. If the jury finds there is no agreement, all technicians will have overtime calculated based upon the average uncompensated non-productive and productive hours worked for each technician during the relevant time period. As for uncompensated time outside the window and inside the window, Plaintiffs will present representative proof of uncompensated hours in each category. There is no reason to believe that there are any class members who are not part of the "outside the window" sub-class. Defendants can present proof which establishes that there are class members who are not in any respective subclass and, if warranted, damages can be reduced accordingly.

In addition to relief with request to the class definitions, Plaintiffs request that the Court reconsider its assertion that Plaintiffs cannot prove damages without an expert report, as such a finding is contrary to the law and the use of representative proof contemplated by *Mt. Clemens* and its progeny. If the Court decides that its subclasses are necessary to manage this trial, Plaintiffs are prepared to proceed with representative proof on both liability and damages, as permitted by well-settled authority from across the country. Expert testimony should not be necessary to sustain Plaintiffs' burden.

8

Plaintiffs also urge the Court to reconsider its approach to Defendants' failed, illegal recordkeeping efforts. If Defendants had complied with the law and kept adequate records, it would be relatively easy to identify the class members. If Defendants had complied with the law and kept adequate records, it would be relatively easy to create a proper class definition. If Defendants had complied with the law and kept adequate records, Plaintiffs would not be forced to recreate history with representational proof or fading memories, nor would they be required to establish liability and damages without sufficient, contemporaneous records. While Plaintiffs understand that *Mt. Clemens* goes to damages, representational proof will be necessary to cure Defendants' illegal conduct, which has made it difficult to prove liability and virtually impossible to objectively define these classes. Under well-settled precedent from the Seventh Circuit, Defendants should not be rewarded for their illegal conduct through a decertification order that would not have followed if they had kept adequate records in the first instance.

## II.     Plaintiffs' Proposed Class Definition is Proper.

On February 10, 2011, this Court created and certified twelve specific subclasses based, in large part, on the technicians' "varying employment experiences" and divergent theories of liability. (Dckt. # 387). Even though "the inquiry at the heart of this case is whether defendants' nationwide policies and practices, which applied to *all* installation technicians, caused violations of federal and state wage and hour laws," the Court conditioned membership in every single subclass on a precedent showing of *individualized* liability (i.e., that the technician was "denied overtime" or his wages were "calculated improperly") (Id., p. 2). The Court noted, in its certification order, that "it may become necessary to modify these classes and subclasses for purposes of trial and

9

damages calculations in particular."  (<u>Id.</u> at p. 54).  The Court also indicated that the parties would be expected to submit proposed trial plans "describing how and whether the FLSA subclasses and state law classes should be modified further . . ."  (<u>Id.</u>).

In compliance with this Court's specific instructions, Plaintiffs proposed timely modifications to the class definitions.  (Dckt. # 521).  There, Plaintiffs accurately noted that their previous descriptions of liability were never intended to serve as the basis for class definitions, including the subclasses that this Court created.  On May 6, 2011, this Court denied Plaintiffs' motion to modify the class definition.  There, the Court criticized Plaintiffs for the timing of their motion and suggested that Plaintiffs were somehow retreating from earlier efforts to define the class by reference to precedent findings of liability.  (<u>Id.</u> at pp. 2-4).  In so doing, the Court denied Plaintiffs' motion, leaving in place twelve subclasses that fail to satisfy the implicit requirements of Rule 23 and set the stage for significant management problems at trial, particularly in the damages phase.

Plaintiffs would respectfully submit that Plaintiffs' proposed class definitions, or variances thereof, should be strongly considered at this stage of the proceeding.  The class definitions proposed by Plaintiffs recognize, as this Court has, that the inquiry at the *heart* of this case is whether Defendants' nationwide policies and practices, which applied to *all* technicians, caused violations of applicable wage and hour laws. Unfortunately, the Court's sub-classes elevate concerns regarding factual variances over the need for an objective class definition that captures these predominant questions.   To make matters more difficult, the Court now requires Plaintiffs to create an objective framework for identifying the technicians that fit within each subclass—a task that will require individual findings of liability to identify class membership.

There are a number of flawed assumptions that appear to have generated the problems referenced above.  These assumptions originate from a previous order, where the Court stated that Plaintiffs were "asserting different theories of liability" and that each theory "raised distinct issues as to liability, damages and possible defenses …"  (Dckt. # 549).  Ultimately, Plaintiffs' *only* theory of liability is that technicians were not paid in accordance with the law for all of the time that they worked with Defendants' knowledge. This theory is supported by a number of basic explanations, including (1) plaintiffs were not allowed to record time spent performing certain tasks, (2) plaintiffs were encouraged to underreport hours, (3) plaintiffs were discouraged from recording all of their hours. The mere fact that Defendants used different methods to deprive technicians of overtime does not mean that Plaintiffs are asserting different legal theories, or that there are there distinct legal defenses that make one class unmanageable.  With minor exceptions, every technician is asserting the same theory of liability in this case.

With respect, there are other incorrect statements in the Court's recent orders.  For example, the Court stated: "Not all plaintiffs contend that they performed tasks outside the work window for which they were not compensated. Some plaintiffs contend only that they underreported the hours they spent performing installation and service jobs during the official work window."  (Dkt # 549 at p. 5).  This assertion finds no support in the record.  Every Plaintiff who has testified in deposition or in a declaration has described at least some uncompensated work outside the window.  No technician has testified that he only underreported hours within the official work window.  When coupled with Defendants' uniform policies and practices, which apply to all technicians,

it necessarily follows that every technician performed nonproductive work that he or she was not paid for.

Is such a finding necessary for a proper class definition?  Are Plaintiffs required to identify every class member with a valid claim to ensure that he or she satisfies the class definition?  The Court suggests that the answer is *yes* by stating that the class members "should know whether *they* performed work activities outside the window, whether *they* were underreported the time they spent performing installations and whether *they* received overtime compensation."  (Dckt. # 595, p. 11).  This suggests that Plaintiffs must demonstrate that every single class member has a claim that can be objectively verified as a prerequisite to certification and class membership.  (Dckt. #595, p. 5) (noting Lewin's failure to identify "objective criteria or other method used at trial to determine which absent class members belonged in which class, if any.").  This, of course, is a very difficult task, particularly when the class definitions are based on a precedent finding of liability without supporting records.

Identifying absent class members is particularly difficult here because the twelve class definitions do not comport with the implicit requirements of Rule 23 or well-settled law that prohibits individualized findings of liability as a prerequisite to class membership.  *See John v. Nat'l Sec. Fire and Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007) (noting that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23"); *Crosby v. Social Sec. Admin.,* 796 F.2d 576, 580 (1st Cir. 1986) (a class definition should be based on objective criteria so that class members may be identified without individualized fact finding); 5 James Wm. Moore et al., Moore's Federal Practice

12

¶ 23.21[3][c] (3d ed. 2007) ("[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class").

As noted above, a class definition "must be definite enough that the class can be ascertained." *Oshana,* 472 F.3d at 513.  Class membership must be ascertainable through "objective criteria," *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 624 (N.D. Ill. 2007), with the determination made through "ministerial review" rather than "arduous individual inquiry," *Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366, 370 (N.D. Ill. 2008); *Duchardt v. Midland Nat'l Life Ins. Co.,* 265 F.R.D. 436, 443 (S. D. Iowa 2009) ("The Court should not have to engage in lengthy, individualized inquiries in order to identify members of the class.") (*citing Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981)); *see also Adashunas,* 626 F.2d at 603–04; *Jimenez v. Weinberger,* 523 F.2d 689, 698 n. 17 (7th Cir. 1975) (Stevens, J.) ("The 1966 amendments [to Rule 23] were designed, in part, specifically ... to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.").  For these reasons, a class definition will be rejected when it "requires addressing the central issue of liability in a case" and therefore the inquiry into whether a person is a class member "essentially require[s] a mini hearing on the merits of each [plaintiff's] case." *Selby v. Principal Mut. Life Ins. Co.,* 197 F.R.D. 48, 55 (S.D.N.Y. 2000).

For similar reasons, class definitions that are predicated upon a finding of liability are improper "fail safe classes" in which the class members win or, by virtue of losing, are not in the class and, therefore, not bound by the judgment. *See Genenbacher v. Centurytel Fiber Co. II, LLC,* 244 F.R.D. 485, 488 (C.D. Ill. 2007); *see also Campbell v.*

*First Am. Title Ins. Co.,* 269 F.R.D. 68, 73–74 (D. Me. 2010) (revising the class definition to avoid "the 'fail safe' issue"); *Slapikas v. First Am. Title Ins. Co.,* 250 F.R.D. 232, 25–51 (W.D. Pa. 2008) (same). A fail-safe class is "defined by the merits of [the plaintiffs] legal claims, and [is] therefore unascertainable prior to a finding of liability in the plaintiffs' favor." *Velazquez v. HSBC Finance Corp.,* No. 08‑4592, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009). Once it is established that a potential class member will not prevail against the defendant, the member drops from the class. *Kamar v. RadioShack Corp.,* 375 F. App'x 734, 735 (9th Cir. 2010). A fail-safe class is inherently deficient in that it "precludes membership unless the liability of the defendant is established." *Id.* at 736.

The twelve sub-classes set forth by the Court fail to satisfy these fundamental, intrinsic requirements in a number of critical respects.  First, and most obviously, the class definitions are not objective, or based on objective criteria.  Instead, membership in each sub-class is conditioned on a precedent, individualized showing of liability.  Such a definition is inherently deficient because it precludes membership in the class unless the Defendants' liability is established beforehand.   Such an approach is acutely unmanageable because liability and certification are, and should be, separate questions. This is why Plaintiffs have offered an alternative class definition pursuant to the Court's earlier invitation to do so.  Plaintiffs continue to consider appropriate class definitions that will assist in the efficient adjudication of this matter.

For the reasons stated above, Plaintiffs respectfully request this Court adopt the class definitions set forth in their original trial plan, as modified below.  In previous orders, the Court has expressed concerns about this approach because class members

14

might recover under different theories of liability.  (Dckt. # 595 at p. 13).  As noted above, the technicians are all claiming compensation for work that was performed with Defendants' knowledge.  The heart of these claims is a set of uniform, national policies that apply to every single technician.  The fact that these policies may have been used differently to create different unlawful results is irrelevant, and it is not necessary to create subclasses that account for every imaginable variance when uniform national policies drive the unlawful conduct alleged in the Amended Complaint.  For these reasons, Plaintiffs would respectfully request that this Court certify the following four classes for trial:

> **FLSA National Class:**  All installation or service technicians who were employed by DirectSat and compensated on a piece-rate basis from three years prior to the date of each individual class members' opt-in until the present date.

> **Minnesota Class:**  All installation or service technicians who were employed by DirectSat and compensated on a piece-rate basis from February 3, 2007 until the present date.

> **Pennsylvania Class:**  All installation or service technicians who were employed by DirectSat and compensated on a piece-rate basis from February 3, 2007 until the present date.

> **Wisconsin National Class:**  All installation or service technicians who were employed by DirectSat and compensated on a piece-rate basis from October 13, 2007 until the present date.

Plaintiffs understand that the Court has already expressed skepticism regarding such an approach.  This Court suggested that if one class definition is used, a jury could find for Defendants because it would be difficult to establish that all absent class members had similar employment experiences and were affected by Defendants' policies and practices in the same way.  This concern, however, assumes that Plaintiffs need to show that all class members were affected in the same way.  Under the FLSA, Plaintiffs

only need to show that they are similarly situated.  Under state wage and hour laws, Plaintiffs only need to show commonality and predominance.  As this Court has previously recognized, wage and hour class actions will always contain differing damages experiences and those varying damages experiences are not sufficient to defeat certification.  This is particularly true where, as here, representative proof will be used in support of Plaintiffs' claim.

This Court also suggested that it may be unfair to Defendants if they are found liable to the entire class when all class members were not undercompensated in the same manner.  It is unclear what the unfairness is in this hypothetical.  As this Court has recognized, *Mt. Clemens* allows for representative proof to arrive at an approximation of damages as a matter of inference when Defendants do not keep accurate time records.  That being said, the hypothetical incorrectly assumes that not all members of the class were "undercompensated in the same manner."  All class members were not paid for some time that they worked, be that work at home, at meetings, driving between jobs, or working on customer jobs.  They did not record all of their time worked on their timesheets and they were not paid for all of their time.  They were not paid properly for productive and nonproductive time based on DirectSat's illegal calculation.  In each situation, the technicians were undercompensated as a result of Defendants' uniform national policies.  To the extent that there are variances in the amount of time each technician worked, such variances can be dealt with at the damages phase of the trial.

In sum, Plaintiffs did not plead the current subclasses.  Plaintiffs can and will make those subclasses work if the Court allows this case to go forward, but would respectfully suggest that Plaintiffs' proposed class definition(s) satisfy the implicit

requirements of Rule 23, avoid impermissible overlap between liability and certification, and provide the best chance of managing this case in a fair and efficient manner.

### III.   If Necessary, Plaintiffs Will Try The Case With The Subclasses Through The Use of Representative Proof.

If this Court requires the use of the current subclasses, Plaintiffs will proceed with representative proof.  In so doing, Plaintiffs are not required to show that all class members were deprived of overtime compensation.  In the unlikely event that Defendants identify class members that were not deprived of compensable overtime, the Court can omit them from the class and prohibit them from sharing in a damages award.  *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir. 1973)(omitting 10 employees from class after employer showed that they were paid overtime). Thus, if 60 technicians testify at trial regarding the underreporting of time inside the window, and 56 of those technicians testify that they underreported hours inside the window while 4 claim they did not underreport any hours, then the total damages awarded to the "inside the window" subclass would be reduced by an appropriate amount.  As for the "outside the window" subclass, there are not any class members who have testified that they did not do any uncompensated work outside the window.  However, for purposes of illustration, if 1 technician out of 70 technicians testifies that he did not perform any uncompensated work outside the window, then the total damages for that subclass would be modified as appropriate.

As for the subclass relating to the improper overtime calculation, every technician would have been victimized by the same miscalculation, so there is no issue of determining who is or is not subject to the miscalculation.   The factual question that the

17

jury must decide is whether there was an agreement regarding payment of nonproductive time.

**V.      Plaintiffs Do Not Need Expert Testimony To Prove Liability or Damages.**

In its May 12th Opinion and Order (Dkt # 595), the Court stated, "Without an expert damages report, plaintiffs cannot establish damages in this case." (Id. at p. 10). Plaintiffs respectfully disagree.

Expert testimony is not necessary to calculate damages in a wage and hour case. Dozens of cases have endorsed the holding of *Mt. Clemens*, which allows a class to prove damages as a matter of just and reasonable inference, based on the testimony of a representative group of employees.  In this regard, it is well-settled that the testimony of fairly representative employees may be the basis for an award of back wages to non-testifying employees. *See Reich v. Southern Maryland Hosp., Inc.,* 43 F.3d 949, 951 (4th Cir. 1995); *Martin v. Tony and Susan Alamo Found.,* 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1297 (3d Cir. 1991); *Secretary of Labor v. DeSisto,* 929 F.2d 789, 792 (1st Cir. 1991); *Brock v. Norman's Country Market, Inc.,* 835 F.2d 823, 828 (11th Cir. 1988); *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1331 (5th Cir. 1985);  *Dept. of Labor v. Cole Enter., Inc.,* 62 F.3d 775, 781 (6th Cir. 1995) (citing *Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58 (2nd Cir. 1997); *Reich v. S. Md. Hosp., Inc.,* 43 F.3d 949, 951 (4th Cir. 1995); *Martin v. Tony and Susan Alamo Found.,* 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1297 (3d Cir. 1991); *Sec'y of Labor v. DeSisto,* 929 F.2d 789, 792 (1st Cir. 1991); *McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir. 1988); *Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 828 (11th Cir. 1988).

Here, Defendants did not keep accurate time records. Plaintiffs can prove damages by just and reasonable inference, with or without expert testimony. Defendants then have the burden to prove the *precise* amount of damages suffered (which cannot be done because adequate records do not exist), or to negate the "just and reasonable inference" that Plaintiffs set forth. If Defendants do not meet this exacting burden, Plaintiffs' calculation will control.

This process does not require an expert opinion. In fact, the calculation is a simply a matter of basic arithmetic. While an expert may be helpful in summarizing and compiling the number of hours or weeks, there is no reason why an expert is required to complete such a calculation. Accordingly, Plaintiffs would respectfully request that this Court recognize that they are not required to submit expert testimony to prove damages in this case. (For further details regarding Plaintiffs' proposed model for assessing damages, please see Plaintiff's Amended Trial Plan).

**VI.     Defendants' Should Not Benefit, In Any Way, From Their Failure to Keep and Maintain Adequate Records as Required by Law.**

As this Court has acknowledged, DirectSat has not maintained records of time that technicians spent working at home. (Dckt. # 595, p. 11.) In addition, DirectSat has not kept adequate records of the time technicians failed to report (underreporting), mainly because DirectSat has done nothing to prevent this practice, which it has known about for many years. If DirectSat had kept such records, it would be easier to objectively establish damages. Moreover, Plaintiffs would have sufficient information necessary to provide a more precise class definition.

Defendants' record keeping failures constitute violations of state and federal law. The FLSA requires employers to maintain records showing the "hours worked each

workday" during each seven day workweek for three years.   29 C.F.R. §§ 516.2(7),
516.5(a).   Under Wis. Admin. Code. § DWD 274.06, each employer in the State of
Wisconsin "shall keep permanent records for at least 3 years . . . showing the name and
address of each employee, the hours of employment and wages of each and such other
records as the department may require."   Under Minn. Stat. § 177.30, every employer
must make and keep a record of:   (A) the name, address, and occupation of each
employee; (B) the rate of pay, and the amount paid each pay period to each employee;
and (C) the hours worked each day and each workweek by the employee.   Under 43
Penn. Stat. § 333.108, each employer "shall keep a true and accurate record of hours
worked by each employee and wages paid to each."

In its latest ruling, the Court addressed Plaintiffs' reliance on *Anderson v. Mt.
Clemens Pottery, Inc.*, 328 U.S. 680, 687-688 (1946), in which the Supreme Court
created a relaxed burden of proof for plaintiffs who seek to prove damages in the face of
insufficient record keeping.   (Dckt. # 595, p. 11).   Plaintiffs understand that *Mt. Clemens*
applies to damage calculations.   Even so, the underlying principle that supports *Mt.
Clemens*—that an employer cannot benefit from its own record keeping violations—
carries over into many settings, including class certification.   For example, in *Brick
Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988),
a union fringe benefit trust fund brought an action against an employer seeking to recover
contributions for hours worked by union brick masons.   The district court awarded
damages to plaintiffs but refused to award damages to a group of 35 masons on the
grounds that there was insufficient evidence to support a damages award.   Id. at 1336.
The district court concluded that any damages awarded to the 35 masons would be "based

20

on speculation or guesswork" because "there is no evidence of the extent of such work." Id. at 1337.

On appeal to the Ninth Circuit Court of Appeals, plaintiffs argued that the 35 masons had made an adequate showing as to their entitlement to damages, chiefly relying on the fact that the employer failed to maintain adequate records of hours worked pursuant to ERISA.  Id. at 1337-38 (citing 29 U.S.C. § 1059(a)(1) ("[E]very employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees").

The court agreed with plaintiffs, holding that under the burden-shifting framework set forth in Mt. Clemens Pottery Co., plaintiffs had made an adequate showing that they had in fact performed work for which they were improperly compensated and had produced "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id. at 1338 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)).  In reaching this conclusion, the court repeated the well-established principal that an employer cannot benefit from its failure to maintain adequate records.  According to the court:

> The reasoning of [Mt. Clemens] applies with equal force to cases arising under ERISA.  The records that employers are required to keep by the FLSA and by ERISA may be the only evidence available to employees to prove that their employers have failed to compensate them in accordance with the statute.  *An employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required.*

Id. at 1338 (emphasis added).

The burden-shifting framework under Mt. Clemens applies even in situations where an employee underreports hours.  The Second Circuit Court of Appeals recently

21

made this clear in *Kuebel v. Black & Decker*, 2011 WL 1677737 (2d Cir., May 5, 2011). There, sales representatives of Black & Decker brought a collective action against their employer for failing to compensate them for a variety of tasks which they performed at home. <u>Id.</u> at *1. Plaintiffs also sought recovery for overtime hours which they worked but intentionally did not record on their timesheets. <u>Id</u>. The class representative testified that when he worked more than 40 hours in a week, he would shave his time entries so that his recorded hours for the week added up to only 40. <u>Id</u>. at *3. He testified that he did so with the knowledge and acquiescence of managers, many of whom instructed him not to record more than 40 hours per week. <u>Id</u>. at *3-4.

In response, defendant filed a motion for summary judgment as to the underreporting claim, arguing that Plaintiffs had failed to raise a genuine issue of material fact to demonstrate that they had worked the hours they claim to have underreported. The district court agreed, and determined that plaintiffs were not entitled to *Mt. Clemens'* lenient standard of proof. Specifically, the district court held that because plaintiffs had intentionally underreported hours, the absence of accurate records reflecting time worked was a "self-created" problem, and as such, a heightened standard should apply. <u>Id</u>. at *8.

The Second Circuit Court of Appeals reversed. In so doing, it held that even in circumstances in which employees underreport hours, *Mt. Clemens* permits the employees to meet their burden of proving damages as a matter of just and reasonable inference. <u>Id</u>. at *8-9. With respect to the duty to maintain records, the court noted that "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." <u>Id.</u> at *8. "Once an employer knows or has reasons to know that an employee is working overtime, it cannot deny compensation simply because the

employee failed to properly record or claim his overtime hours." Id.  Thus, "the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *[Mt. Clemens']* standard where these records appear to be incomplete or inaccurate. Id. (*citing Skelton v. Am. Intercontinental Univ. Online,* 382 F.Supp.2d 1068, 1071 (N.D. Ill. 2005) ("The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees.")

The principles referenced above also apply in the class certification context.  In this respect, the Seventh Circuit has clearly held that a defendant in a class action lawsuit cannot benefit from its failure to keep records when challenging the class definition offered by plaintiffs.  According to the Court:  "[t]he difficulties defendants complain of are of their own making.... Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify . . . Class actions cannot be defeated by destroying records." *Appleton Electric Co. v. Advance-United Expressways,* 494 F.2d 126, 135, 139 (7th Cir. 1974); *see also Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721, n. 2 (7th Cir. 1969)("We would view it as unjust to permit Colgate to profit from its own voluntary destruction [of records].").

These cases illustrate a longstanding principle, namely, that a party cannot (and should not) benefit from its failure to keep records that could be relevant to the disposition of a lawsuit.  That failure is heightened where, as here, Defendants have knowingly violated the law by failing to keep such records.  While *Mt. Clemens* limits this principle to the proof of damages in an FLSA case, other courts have applied this

23

fundamental idea by recognizing that plaintiffs should not be punished when records are unavailable due to the defendants' wrongdoing.  In this respect, *Mt. Clemens* "essentially estops a party from failing to keep employment records in contravention of law and then later relying on the absence of those same records to defeat a FLSA claim." *Antenor v. D & S Farms,* 39 F.Supp.2d 1372, 1379, n. 8 (S.D. Fla. 1999).  Even so, Plaintiffs in this case are now required to provide objective support for a class definition that they did not create, all without records that Defendants were required to maintain and preserve. Defendants should not benefit from this wrongdoing, nor should Plaintiffs be expected to compensate for Defendants' unlawful record keeping procedures.

**VI.    Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) adopt Plaintiffs' proposed class definitions, (2) permit Plaintiffs to introduce representative testimony at trial for purposes of liability and damages, (3) permit Plaintiffs to proceed at trial with the existing subclasses for liability, but modified subclasses that allow for the proper presentation of evidence regarding damages or, if necessary, (4) permit Plaintiffs to proceed at trial with reference to the Court's twelve subclasses.

Dated this 19th day of May, 2011.

GINGRAS, CATES & LUEBKE                 AXLEY BRYNELSON, LLP

/s/ Robert J. Gingras                                /s/ Michael J. Modl
Robert J. Gingras                                     Michael J. Modl
Michael J. Luebke                                    Timothy D. Edwards
Attorneys for Plaintiff                             Attorneys for Plaintiff
8150 Excelsior Drive                                2 E. Mifflin Street, Ste. 200
Madison, WI   53701-1808                       Madison, WI   53703
(608) 833-2632                                         (608) 257-5661
gingras@gcllawyers.com                         mmodl@axley.com
luebke@gcllawyers.com                          tedwards@axley.com